IN THE UNITED STATES
DISTRICT COURT

ANDREW JODDIE WILLIAMS
3886 CHRISTINE ELIZABETH CURVE
APT#101
MONTGOMERY ALABAMA 35116

VERSES

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON P.C.
MONTGOMERY ALABAMA 36103-4128
   334-215-8585
   DEFENDENT



LOWER COURT CASE # 2030145

---

NOTICE OF APPEAL

NOW COMES ANDREW WILLIAMS TO APPEAL A DECISION FROM THE ALABAMA S
TATE SUPREME COUT DATED SEPTEMBER 3,2004. the judge orgered a dis
missal of case for untimely filing. APPELLENT PRAYS FOR AN APPEA
L ON GROUNDS CLAIMING FEDERAL 315 GROUNDS FOR EXTENTION. PLEASE S
EE NXXT PAGE.

*Andrew g. Williams*
11-7-05

TABLE OF CONTENT

PAGE

1. UNITED STATES DISTRICT COURT LEAD SHEET

2. RELIEF REQUESTED

3. MOTION TO PROCEED IN FORMA PAUPERIS

4. APP:ICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVI

5. FEES AFFIDAVIT CONTINUE

6. APPELLENT,S COMPLIANT

7. REGULATION GOVERNING WRECKAGE PUNITIVE DAMAGES

8. punitive damages regulation continues

9, PUNITIVE DAMAGES REGULATION CONTINUES

10.PUNITIVE DAMAGES REGULATION CONTINUES

11 PUNITIVE DAMAGES REGULATION CONTINUES

12 MEDICAL REPORT FOR THE JACKSON HOSPITAL

13 UNIFIRM TRAFFIC ACCIDENT REPORT

14 TRAFFIC ACCIDENT REPORT CONTINUES

15 PLAINTIFF NOTICE OF APPEAL

16 REASON FOR DELAY OF APPEAL

17 PROOFS FOR DELAY OF APPEAL

18 PROOFS FOR DELAY OF APPEAL CONTINUES

19 GROUND FOR EXTENTION ON TIME FOR APPEAL

20 plaintiff proofs of serve

21 FEDERAL RULE 509 GOVERNING LEAVE TO PRECEED

22 ALABAMA SUPREME COURT DOCKET SHEET

23 PETITION FOR A WRIT OF CERTIORARI TO A COURT OF APPEAL

TABLE OF CONTENT
CONTINUES

PAGE

24. PETITION FOR A WRIT OF CERTIORARI CONTINUES

25.MOTION IN SUPPORT CALLED BURDEN OF PROOFS

26. BURDEN OF PROOFS GROUND REGULATION 28102

26. GROUNDS CONTINUES

28. PROOF OF SERVE INTO LOWER COURT

28. BRIEFS IN SUPPORT OF CLIAM.

I, ANDERW WILLIAMS HEREBY CERTIFY THAT I SERVE A COPY OF THE FORE
GOING BY PLACING THE SAME, POSTAGE PREPAID TO.

NIX HOLTSFORD GILLILAND P.C.
HIGGINS HITSON P,C,
P.O. 4128
MONTGOMERY ALABAMA 36103-4128

Andrew Williams
11-9-2005

APPELLENT,S COMPLIANT

ON MARCH 11,2003 PLAINTIFF WAS DRIVING ON HWY. GOING WEST DIRECTI
ON, APPROXAMATELY ONE MILE WEST OF THE OLD HAYNE VILLIE ROAD WHEN
A LONG CAME THE DEFENDENT DRIVING ABOUT 90 TO 100 miles per hour
AND CRASH INTO THE REAR END OF MY AUTOMOBILE, THE DEFENDENT WAS D
RIVING IN THE SAME RIGHT SIDE LANE AS PLAINTIFF, HIS AUTOMOBILE C
RASHED DIRECTLY INTO MY REAR END. THE DEFENDENT DID NOT APPLY BRA
KES AT ANY TIME BEFORE THE COLLISION IMPACTED. THE CRASH KNOCK MY
VEHICLE FORWARD ABOUT FIFTY FIEET AND SPINNED MY AUTOMOBILE AROUN
D TO THE EAST DIRECTION. THE DEFENDENT WAS DRIVING A FORD MINI VA
N THAT WEIGHT 7000 POUNDS. PLAINTIFF REPORTED TO THE JACKSON HOSP
ITAL ON MARCH12th. A CERTIFIED COPY OF THESE RECORD SHOULD BE ORD
ERED BY THE APPEALS COURT. A COPY OF THE POLICEMAN REPORT OF THE
ACCIDENT ARE ATTACHED. MY AUTOMOBILE WAS TOWED TO THE WALDRIF WRE
CKER SERVICE INC: LOCATED AT 1540 NORTH RIPLEY STREET. PLAINTIFF
ARE SUFFERING FROM NECK BONE PROBLEM, DRIVING PARANOIA, KNEE BONE
PROBLEM, AND LOWER BACK BONE PROBLEMS, WITH LOSS OF MEMORY. MY AU
TOMOBILE WAS TOTALLLY WRECKAGE.

Andrew Williams
11-9-05

### § 6-11-6. Damages not affected.

Nothing in this article shall be construed to alter or affect the nature, elements, form, or amount of damages recoverable in any action. (Acts 1987, No. 87-183, p. 245, § 6.)

### § 6-11-7. Prior rights not affected.

This article shall not affect the rights of any person if such rights accrued prior to June 11, 1987. (Acts 1987, No. 87-183, p. 245, § 8.)

ARTICLE 2.

PUNITIVE DAMAGES.

### § 6-11-20. Punitive damages not to be awarded other than where clear and convincing evidence proven; definitions.

(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.

(b) As used in this article, the following definitions shall apply:

(1) FRAUD. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

(2) MALICE. The intentional doing of a wrongful act without just cause or excuse, either:

   a. With an intent to injure the person or property of another person or entity, or

   b. Under such circumstances that the law will imply an evil intent.

(3) WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.

(4) CLEAR AND CONVINCING EVIDENCE. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.

(5) OPPRESSION. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights. (Acts 1987, No. 87-185, p. 251, § 1.)


§ 6-11-20                    CIVIL PRACTICE                    § 6-11-20

"Conscious" is defined as "perceiving, apprehending, or noticing with a degree of controlled thought or observation; capable of or marked by thought, will, design, or perception," "having an awareness of one's own existence, sensations, and thoughts, and of one's environment; capable of complex response to environment; deliberate." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

The word "deliberate" is defined as "well-advised; carefully considered, not sudden or rash; circumspect; slow in determining; formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; careful in considering the consequences of a step," "characterized by or resulting from careful and thorough consideration; characterized by awareness of the consequences; slow, unhurried, and steady as though allowing time for decision on each individual action involved," "careful and slow in deciding or determining; not rashly or hastily determined." This must be proven by "clear and convincing evidence." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

"Reckless" is defined as "careless, heedless, inattentive; indifferent to consequences," "marked by lack of proper caution; careless of consequence," "having no regard for consequences; uncontrolled; wild." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

Wanton conduct is the conscious doing of some act or the omission of some duty by one who has knowledge of the existing conditions, and who is conscious that from the doing of such act or omission of such duty injury will likely or probably result. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct and negligence. — A finding of wanton conduct depends upon circumstances, and must be based upon facts beyond mere negligence. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness are qualitatively different tort concepts of actionable culpability. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

When a party alleges wanton conduct and seeks only compensatory damages, the conduct, in all cases filed after June 11, 1987, must be proved by "substantial evidence" which is evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct by car dealer. — Evidence, that an automobile sales manager, who approved the sale of the automobile to plaintiff, actually saw a truck hit the automobile, yet failed to disclose this information to plaintiff or to the salesman who sold the car and that car dealer had failed to disclose prior damages to other purchasers, was sufficient to support an inference by the jury that car dealer "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to" plaintiff. King Motor Co. v. Wilson, 612 So. 2d 1153 (Ala. 1992).

An award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Punitive damages may be awarded by the jury in a fraud action if the plaintiff makes a sufficient evidentiary showing that he has been injured as a result of the fraud and that the defendant's conduct warrants punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Assault and battery claim. — A plaintiff may be awarded punitive damages on an assault and battery claim only where the plaintiff shows by clear and convincing evidence that the assault and battery was coupled with an insult or other circumstances of aggravation or shows by clear and convincing evidence that the defendant consciously or deliberately engaged in the kind of activity mentioned in this section. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

Particularized circumstances of aggravation or insult must appear in cases of assault and battery if punitive damages are to be properly awarded. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

When presented with a motion to set aside a verdict awarding punitive damages only, the appropriate inquiry for the trial court in a fraud case is not whether there has been an award of compensatory or nominal damages but, instead, whether the evidence is sufficient to support a finding by the jury that the plaintiff was injured, at least nominally, by the defendant's wrongful actions and that the defendant's conduct is deserving of punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

For an expansive discussion of punitive damages, focusing on procedural applications, state constitutional implications, and recent case history, see Fuller v. Preferred Risk Life Ins. Co., 577 So. 2d 878 (Ala. 1991).

Cited in Shoals Ford, Inc. v. Clardy, 588 So. 2d 879 (Ala. 1991); Tombrello v. USX Corp., 763 F. Supp. 541 (N.D. Ala. 1991); Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992);

Reserve Nat'l Ins. Co. v. Crowell. 614 So. 2d 1005 (Ala. 1993).

Collateral references. — Punitive damages: power of equity court to award. 58 ALR4th 844.

Standard of proof as to conduct underlying punitive damage awards — modern status. 58 ALR4th 878.

Punitive damages: relationship to defendant's wealth as factor in determining propriety of award. 87 ALR4th 141.

Plaintiff's rights to punitive or multiple damages when cause of action renders both available. 2 ALR5th 449.

## § 6-11-21. Punitive damages not to exceed $250,000; exceptions.

An award of punitive damages shall not exceed $250,000, unless it is based upon one or more of the following:

(1) A pattern or practice of intentional wrongful conduct, even though the damage or injury was inflicted only on the plaintiff; or,

(2) Conduct involving actual malice other than fraud or bad faith not a part of a pattern or practice; or,

(3) Libel, slander, or defamation. (Acts 1987, No. 87-185, p. 251, § 2.)

Cap does not represent apportionment of damages among joint tort-feasors. — The punitive damages cap under this section does not represent an apportionment of damages among joint tort-feasors. The purpose of punitive damages is to deter wrongful conduct and to punish those who may profit by such conduct. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Intent of legislature. — In adopting the term "pattern" the Alabama Legislature intended for the courts to draw upon the interpretation of that term as set forth by the federal courts in the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961(5), litigation. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

Cap not intended to fall by wayside in joint tort-feasors situation. — The legislature did not intend for the statutory cap to fall by the wayside in the situation of joint tort-feasors, when one joint tort-feasor fits beneath the statutory cap and the other does not. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are inter-related by distinguishing characteristics and are not isolated events. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds, 923 F.2d 161 (11th Cir. 1991).

The acts which form a pattern need not occur in separate schemes, but can occur in one scheme if they are temporally separate within that scheme; that is to say, if the acts are distinct and separate. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds, 923 F.2d 161 (11th Cir. 1991).

Where joint tort-feasors act with differing degrees of culpability. — In the situation where joint tort-feasors act with differing degrees of culpability, so that one tort-feasor's conduct falls within the statutory exception to the cap on punitive damages under this section and the other's does not, then the statutory cap may apply to one tort-feasor and not to the other, without violating the rule against apportionment between joint tort-feasors. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Cited in Toole v. McClintock, 778 F. Supp. 1543 (M.D. Ala. 1991).

Collateral references. — Right to prejudgment interest on punitive or multiple damages awards. 9 ALR5th 63.

## Comparative Negligence Standards

Comparative Negligence: In states that utilize comparative negligence theories, individuals may sue another motorist whether or not their own negligence played any role in the accident. However, recovery for damages will be reduced by the percentage of fault attributable to them. This situation is often referred to as "apportionment of fault" or "allocation of fault." For example, in the above example, assume that the turning driver sues the speeding motorist for $100,000 in damages. At trial, a jury will be asked to determine what percentage of the accident was caused by the speeding and what percentage of the accident was caused by the turning driver's failure to operate the turn signal. Assume further that the jury finds that the turning driver's own negligence contributed to the accident by 30 percent and the negligence of the other motorist contributed to the accident by 70 percent. If the jury agrees that damages are worth $100,000 the turning driver would only be able to recover $70,000 in damages (or $100,000 reduced by 30 percent caused by that driver's own negligence). If, conversely, the negligence was found to have contributed 70 percent to the accident, the driver could only recover $30,000 for the 30 percent fault for which the other tortfeasor was responsible. Again, this is true in states that apply a "pure" theory of comparative negligence. Other states have modified comparative negligence principles to permit a lawsuit only if a person is were less than 50 percent negligent.

### No-Fault Liability Systems

No-Fault Systems: In states that have statutorily established a "no-fault" system of liability for negligence, each person's own insurance company pays for his or her injury or damage, regardless of who is at fault. No-fault insurance liability coverage does not apportion damages or fault. However, it usually does not cover damage to the automobile, and separate collision coverage is needed. In states with NO FAULT systems, individuals may file suit only if certain threshold injuries have occurred or damages exceed insurance coverages.

### Components of an Automobile Insurance Policy

Depending on the state, automobile liability insurance policy may contain some or all of the following:

- Bodily Injury Liability: The insurer will pay damages when other persons are injured or killed in an accident for which the insured are at fault.

- PERSONAL INJURY Protection (PIP): The insurer will pay for the insured's injuries and other related damages to the insured and to passengers.

- Property Damage Liability: The insurer will pay damages when the property of other persons has been harmed or destroyed by the insured's vehicle and the insured is at fault.

- Collision Coverage: The insurer will pay for damages to the insured's own vehicle, when the insured is at fault. If the insured's vehicle is financed, the loaner may require the insured to maintain collision coverage on the vehicle.

- Comprehensive Coverage: The insurer will pay for damages to the insured's automobile caused by fire, theft, VANDALISM, acts of God, riots, and certain other perils. If the insured's vehicle is financed, the loaner may require the insured to maintain comprehensive coverage on the vehicle.

- Uninsured/Underinsured Motorist (UM/UIM) Coverage: The insurer will pay for injury or death to the insured and the insured's passengers if caused by an uninsured or underinsured tortfeasor or a hit-and-run motorist. In some states, the insurer will also pay for damage to the insured's vehicle. An uninsured at-fault tortfeasor may be sued and his or her personal assets attached to satisfy any judgment.

## When Accidents Occur

The following points may assist individuals in the event that they are involved in a motor vehicle accident:

### In a Rental or Leased Vehicle

In a Rental or Leased Vehicle: In most states, individuals' own insurance policy will protect them for any automobile that they are driving. There is no need to purchase additional insurance from the automobile rental or leasing company unless they wish to increase their coverage, e.g., add collision coverage.

### When a Pedestrian or Bicyclist is Hit

When a Pedestrian or Bicyclist is Hit: In some states, there is a presumption of fault if drivers strike a pedestrian or bicyclist, for want of care and defen-

mind and indicates a particular reason why the person has failed to perform a duty—namely, because the person has not kept the duty in mind. See J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 108 n.1 (16th ed. 1952). See **negligence (A).**

**neglectful; neglective.** The latter is a NEEDLESS VARIANT that is rare or obsolete.

**negligible; negligeable.** The latter spelling should be avoided.

**negligence. A. Senses.** In general usage, *negligence* means "carelessness." But in legal usage, *negligence* = (1) the failure to exercise the standard of care that the doer as a reasonable person should have exercised in the circumstances; (2) undue indifference toward the consequences of one's act; or (3) a tort that includes the notions of duty, breach of that duty (unreasonable conduct), and resultant damage.

The term has various gradations: "Negligence in law ranges from inadvertence that is hardly more than accidental to sinful disregard of the safety of others." Patrick Devlin, *The Enforcement of Morals* 36 (1968). *Ordinary* or *simple negligence* is usu. sufficient to establish liability in a tort action. *Criminal* or *gross negligence* is usu. required before the court will impose a penalty. The phrase *gross negligence* has the disadvantage of applying both in civil actions (to increase damages) and in criminal actions (to establish criminal liability); many criminal lawyers therefore prefer *criminal negligence* in criminal-law contexts.

**B. And** *neglect.* See **neglect.**

**C. And** *negligency.* The word *negligency* is a NEEDLESS VARIANT of *negligence.*

**negligent neglect.** See **neglect.**

**negotiability; assignability.** These two terms are related but distinct. The two major ways in which *negotiability* differs from *assignability* are: (1) no notice need be given of the transfer of a negotiable instrument; and (2) the transfer of such an instrument is not subject to equitable remedies (i.e., from a claimant who might assert a right to or under the instrument). See **assignment & negotiable instrument.**

**negotiable instrument; commercial paper.** These terms are not interchangeable. *Commercial paper* is now the more widely used term in the U.S. because of its use in article three of the Uniform Commercial Code. As to the precise dis-

tinction, *commercial paper* is the broader term: it may include nonnegotiable as well as negotiable paper, whereas *negotiable instruments* are by definition negotiable ones only.

Generally, a writing is *negotiable* when it is signed by the maker or drawer; contains an unconditional promise or order to pay a sum certain in money, and no other promise, obligation, or power given by the maker or drawer; is payable on demand or at a definite time; and is payable to order or to bearer. The absence of any one of these elements makes commercial paper nonnegotiable.

**negotiate** = (1) to discuss or conduct a business transaction, such as a contract or sale; or (2) to transfer (a negotiable instrument [q.v.], such as a note or bond) in a way that makes the transferee the legal owner of the instrument. E.g., sense (2): "When a cheque is transferred, whether by delivery or endorsement, it is said to be negotiated, and negotiation is a kind of transfer [that] differs in important respects from the ordinary assignment of a contractual right." William Geldart, *Introduction to English Law* 124 (D.C.M. Yardley ed., 9th ed. 1984).

**neither . . . nor. A. Singular or Plural Verb.** When one of the two subjects is singular, and the other is plural, the verb takes its number from the closer subject. Thus, the verb is invariably singular if the second alternative is singular—e.g.: "*Neither the speed at which the car was traveling* [read *Neither the car's speed*] nor its operation through a red light *are* [read *is*] enough to make out a case against appellants provided there was no reckless disregard for the *safety* of others."/ "Neither of these views *are* [read *is*] acceptable." H.L.A. Hart, "Negligence, *Mens Rea,* and Criminal Responsibility," in *Punishment and Responsibility: Essays in the Philosophy of Law* 136, 150 (1968)./ "Neither hanging the governor in effigy nor hanging the governor *are* [read *is*] speech . . . ." Steven J. Burton, *An Introduction to Law and Legal Reasoning* 70 (1985). See SUBJECT-VERB AGREEMENT (E).

Moreover, the verb should match the nearest subject in number and person. Sometimes the correct form is admittedly awkward—e.g.: "Neither you nor I *is* [read *am*] likely to change the world . . . ." Jefferson D. Bates, *Writing with Precision* 82 (rev. ed. 1988).

**B. Number of Elements.** These CORRELATIVE CONJUNCTIONS should frame only two elements, not more; though it is possible to find modern and historical examples of *neither . . . nor* with more than two members, such constructions are, in Wilson Follett's words, "short of punctilious." E.g.,



**EMERGENCY DEPARTMENT NURSING RECORD**

DATE: 3/13/03
TIME: 1327

**JACKSON HOSPITAL**

ACCOUNT# 10532029    M/R # 17-23-47
WILLIAMS, ANDREW
SEX - M   BORN 12/06/1949  F/C M EDM
G ARRISON, NORMAN A.    ROOM

---

### PRE TX
- IV ☐ N/A
- SITE _____ cc/hr ☐ 02 @ _____
- PCR
- ☐ ETT SIZE _____
- ☐ CPR
- ☐ BACKBOARD  ☐ SPLINT
- ☐ COLLAR  ☐ BANDAGES
- ☐ SANDBAGS  ☐ FOLEY SIZE
- ☐ Other _____

### MEDICAL / SOCIAL / HX

**MEDICAL:**
- ☐ ASTHMA
- ☑ HTN
- ☐ CANCER
- ☐ RENAL DISEASE
- ☐ CARDIAC
- ☐ NONE
- ☐ COPD
- ☐ CVA
- ☐ DIABETES
- ☐ FAMILY CARDIAC HISTORY

**MUSCULOSKELETAL:**
Status to problems / arthritic disease / decrease in strength / diminished mobility

**PSYCHIATRIC:**
Prior psychiatric history / bipolar disorder / depression / suicidal / lives alone / family support

**SCREENINGS:**
Nutritional:
States no problems / Normal nutrition / recent weight loss / weight gain / appears well nourished / Appears under nourished.

**SOCIAL:**
- ☐ ALCOHOL  nearly
- ☐ DRUGS
- ☐ SMOKES

### CARDIOVASCULAR

MONITOR ☐ YES ☑ NO   RHYTHM _____   SEE STRIP

**SKIN CONDITION**
- ☐ INTACT  ☐ BROKEN
- ☑ WARM  ☐ COOL
- ☐ HOT  ☐ CLAMMY
- ☐ MOIST  ☑ DRY
- ☐ DIAPHORETIC  ☐ DECUBITUS
- ☐ RASH

**EDEMA**
- ☐ LEGS  ☐ ANKLES
- ☐ OTHER  ☐ FEET

PULSES
PEDAL
POST TIBIAL
RADIAL

**SKIN COLOR**
- ☐ NORMAL
- ☐ DUSKY  ☐ PINK
- ☐ FLUSHED  ☐ CYANOTIC
- ☐ PALE  ☐ JAUNDICED
- CAPILLARY REFILL <3 SEC ☐ >3 SEC.

**SKIN TURGOR**
- ☐ GOOD  ☐ DECREASED
- ☐ POOR  ☐ OTHER

### AFFECTED AREA
1. N/A
2. ABRASIONS
3. BURNS
4. CONTUSION
5. DECUBITUS
6. LACERATION
7. PAIN
8. PUNCTURE
9. RASH
10. OTHER

### RESPIRATORY

**RESPIRATIONS**
- ☑ NON-LABORED
- ☐ LABORED
- ☐ HYPERVENTILATION
- ☐ OTHER

**COUGH**
- ☑ NONE
- ☐ NON-PRODUCTIVE
- ☐ PRODUCTIVE
- ☐ HIGH RISK TB

**BREATH SOUNDS**
- R L ☐ CLEAR/EQUAL
- ☐ ☐ WHEEZES
- ☐ ☐ DIMINISHED
- R L ☐ ABSENT
- ☐ ☐ RALES/CRACKLES
- ☐ ☐ RHONCHI

### NEUROLOGICAL

**LOC**
- ☐ ALERT
- ☐ DROWSY
- ☐ UNRESPONSIVE
- ☑ N/A
- ☐ ORIENTED
  - ☐ PERSON  ☐ TIME
  - ☐ PLACE  ☐ EVENT

**SPEECH**
- ☐ CLEAR
- ☐ SLURRED
- ☐ OTHER

**RESPONSE TO STIMULI**
- ☐ VERBAL
- ☐ TACTILE
- ☐ PAIN
- ☐ UNRESPONSIVE

**MOTOR/SENSORY**
- GOOD
- ☐ DECREASED
- ☐ ABSENT

**PUPILS**

### GASTROINTESTINAL

**BOWEL SOUNDS**
- ☐ NORMAL
- ☐ HYPOACTIVE
- ☑ N/A
- ☐ HYPERACTIVE
- ☐ ABSENT

**ABDOMEN**
- ☐ SOFT
- ☐ FIRM
- ☐ DISTENDED
- ☐ TENDER
- ☐ NON-TENDER

**PAIN LOCATION**
- ☐ RUQ
- ☐ RLQ
- ☐ LUQ
- ☐ LLQ

**BOWEL ACTIVITY**
- ☐ BM/STOOL COMPLAINT
- ☐ DIARRHEA
- ☐ CONSTIPATION

**URINATION**
- ☐ SUDENESS COMPLAINT
- ☐ PAIN/BURNING
- ☐ FREQUENCY
- ☐ HEMATURIA
- ☐ INCONTINENCE
- ☑ N/A

**GENITAL**
- ☐ DENIES COMPLAINT
- ☐ DISCHARGE
- ☐ LESION

### COMMENTS
COMMENTS: _____

☐ N/A

### GLASGOW COMA SCALE

| Areas of Response | Points |
|---|---|
| **Eye Opening** | |
| Opens spontaneously | 4 |
| Eyes open in response to voice | 3 |
| Eyes open in response to pain | 2 |
| Eyes open in response to pain | 1 |
| **Best verbal response** | |
| Oriented, e.g., to person, place, time | 5 |
| Confused, speaks but is disoriented | 4 |
| Inappropriate, but comprehensible words | 3 |
| Incomprehensible sounds but no words are spoken | 2 |
| None | 1 |
| **Best Motor Response** | |
| Obeys command to move | 6 |
| Localizes painful stimulus | 5 |
| Withdraws from painful stimulus | 4 |
| Flexion, abnormal decorticate posturing | 3 |
| Extension, abnormal decerebrate posturing | 2 |
| No movement or posturing | 1 |
| Total Possible Points | 3-15 |
| Major Head Injury | ≤8 |
| Moderate Head Injury | 9-12 |
| Minor Head Injury | 13-15 |

| | TIME | SCORE |
|---|---|---|
| | TIME | SCORE |
| N/A | TIME | SCORE |
| | TIME | SCORE |

### SAFETY
- ☐ ALERT  ☐ UNCOOPERATIVE
- ☐ ORIENTED  ☐ COMBATIVE
- ☐ CALM  ☐ OTHER
- ☐ COOPERATIVE
- ☐ CONFUSED
- ☐ ANXIOUS
- INTERVALS
  - ☐ RESTRAINTS (Skin & Extremities)
  - ☐ BED POSITION LOW
  - ☐ FAMILY AT BEDSIDE
  - ☐ OTHER

### PLAN OF CARE

**NURSING DIAGNOSES**
- ☐ ANXIETY/FEAR
- ☐ BODY TEMP, ALT OF
- ☐ IMPAIRED GAS EXCHANGE
- ☐ FLUID VOLUME DEFICIT/EXCESS
- ☐ FLUID VOLUME EXCESS/DEFICIT
- ☐ INEFFECTIVE BREATHING PATTERN
- ☐ INFECTION, POTENTIAL FOR
- ☐ INJURY TO SELF/OTHERS
- POTENTIAL FOR
- ☐ KNOWLEDGE DEFICIT
- ☐ DISTURBANCE IN SELF

**NEURO STATUS**
- ALL OF
- ☐ NON-COMPLIANCE
- ☐ PAIN, ACUTE/CHRONIC
- ☐ SENSORY PERCEPTUAL ALT
- ☐ TISSUE PERFUSION
- ALT ORIENTATION

**INTERVENTIONS**
- ☐ ACCU-CHECK
- ☐ ANTIPYRETICS
- ☐ ASPIRATION PRECAUTIONS
- ☐ BLEEDING CONTROL
- ☐ COMFORT MEASURES
- ☐ COMMUNICATION METHODS

**SEIZURE PRECAUTION**
- ☐ SPLINTING
- ☐ SUICIDE PRECAUTION
- ☐ TEACHING PREPARED
- ☐ VISUAL ACUITY

**VISUAL MONITORS/CONTINUOUS**
- ☐ REFERRAL
- ☐ CHAPLAIN
- ☐ MENTAL HEALTH
- ☐ PHYSICAL THERAPY
- ☐ STAFF COUNSELOR
- ☐ SOCIAL SERVICES

FORM # 6-27-A (Rev 6/02)

# ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT

AR 1 82003

| | | | Accident No. 3001007 |
|---|---|---|---|
| Sheet 1 of 1 Sheets | Microfilm No. | Local Case No. | |

| Date | Time | Day of Week | County | City | Rural | Highway Classification | Local Zone |
|---|---|---|---|---|---|---|---|
| 03/11/2003 | 12:32 | M W TH F S S | 03 | | X 00 | 1—Interstate  S—State<br>F—Federal  C—County | |

On Street, Road or Highway: **US 80**  At Intersection or Between (Node 1): **Felder Road**  And (Node 2): **Mitchell Young Rd.**

| Street or Road Code | 7320 | Node Code | 7319 | US 80 | Feet From (Circle One) | |
|---|---|---|---|---|---|---|

First Harmful Event: **20**  Event Location: **1**  Distance to Fixed Object: **N/A FT.**  No. of Vehicles: **2**  No. Pedestrians: **0**  No. Injured: **0**  No. Fatalities: **0**  Unit 1 Type: **4**  Unit 2 Type: **1**

Driver Full Name: **Hubert Braden**  Street Address: **873 Lynwood Place**  City and State: **Forest Park, GA**  ZIP: **30297**  Telephone No. (770) **961-6447**

DOB: **10 05 1936**  Race: **W**  Sex: **M**  DL State: **GA**  Driver License No.: **049327149**

Place of Employment: **Retired**  Liability Insurance Co.: **None**  Social Security No.: **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**

| Year | Make | Model | Body | V.I.N. |
|---|---|---|---|---|
| 1992 | FORD | AER | | 1FMDA31X4NZB61753 |

License Tag Number: **432 SSF**  State: **GA**  Year: **2003**

Owner's Name: **Same**

Speed Limit: **65 MPH**  Est. Speed: **505 MPH**  Citation Offense Charged: **NO Liability Insurance**

Driver/Pedestrian Full Name: **Andrew Jeddie Williams**  Street Address: **1259 Soth Johnson Drive**  City and State: **Montgomery AL**  ZIP: **36116**  Telephone No.: **None**

DOB: **12 06 1944**  Race: **B**  Sex: **M**  DL State: **AL**  Driver License No.: **6241776**

Place of Employment: **Retired**  Liability Insurance Co.: **None**  Social Security No.: **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**

| Year | Make | Model | Body | V.I.N. |
|---|---|---|---|---|
| 1973 | FORD | FE5 | 2D | KNJPT06H8P6100449 |

License Tag Number: **3B2540A**  State: **AL**  Year: **2003**

Owner's Name: **Same**

Speed Limit: **65 MPH**  Est. Speed: **30 MPH**  Citation Offense Charged: **No Liability Insurance**

Vehicle Towed By Whom: **Weldip's Wrecker Service**  To Where: **Montgomery, Al**

| Unit 1 | Other Involved Unit (Circle One) | Unit 2 | Other Involved Unit (Circle One) | CODES |
|---|---|---|---|---|

**CODES**

**SAFETY EQUIPMENT**

Other Involved Unit (Circle One)
- 12 - Pedestrian
- 13 - Rider of Domestic Animal
- 14 - Occ. of Non-Motorized Vehicle
- 15 - Victim of Other Circumstance / Codes Not Applicable

Other Involved Safety Equipment

Other Involved Unit (Circle One)
- 12 - Pedestrian
- 13 - Rider of Domestic Animal
- 14 - Occ. of Non-Motorized Vehicle
- 15 - Victim of Other Circumstance / Codes Not Applicable

Other Involved Safety Equipment

**SAFETY EQUIPMENT**
- 01 - Not Installed
- 09 - Not Applicable
- 99 - Unknown if Any Type

Lap Belt Only
- 11 - Fastened
- 12 - Not Fastened

Lap/Shoulder Harness
- 21 - Lap Only Used
- 22 - Neither Used
- 23 - Shoulder Only Used
- 24 - Both Used

Motorcycle Helmet
- 31 - None Used
- 37 - Used

Air Bags
- 41 - Deployed, Belts Used
- 42 - Not Deployed, Belts Used
- 43 - Deployed, Belts Not Used
- 44 - Not Deployed, Belts Not Used

Child Restraints
- 81 - Child Restraint Used
- 82 - Child Restraint Not Used
- 83 - Other Used

Panel Type/Pedestrian
- 51 - Contrasting Clothing
- 52 - Non-contrasting Clothing

| | | | Unit No | Seat Pos | Injury Type | Age | Sex | Ejection | Ejec- tion | First Aid By |
|---|---|---|---|---|---|---|---|---|---|---|
| Name | | Address | | | | | | | | |
| Taken To | | Taken By | | | | | | | | |
| Name | | Address | | | | | | | | |
| Taken To | | Taken By | | | | | | | | |

**Injury Type**
- K - Killed
- I - Bruise/Abrasion/Swelling
- A - Visible or Carried from Scene
- C - Not Visible—Has Pain/Faint

**Ejected**
- N - No
- Y - Trapped
- E - Fully
- U - Unknown
- P - Partially
- A - Not Applicable

**First Aid By**
- A - Ambulance Attended
- D - Doctor
- M - Paramedic
- O - Other
- P - Police
- U - Unknown
- N - None



Grassy Median

US 80 - Westbound Lanes - 230

Diagram Not To Scale

'er's Opinion of What Happened: Unit 1 and 2 were traveling west on US 80 in the right lane, when Unit 1 misjudged his stopping distance and struck Unit 2 in the rear, causing Unit 2 to spin around and stop in the left lane, facing east, Unit 2 driver stated, "Going about 25, going west came up from behind and hit me." Unit 1 driver stated, "We were driving two cars in front and behind me, I looked back, there he was, I got on my brakes, caught con[...]

| Contributing Road Defects | Surface Construction | Condition | Accident Is On Related To Road Construction Zone? | Material in Roadway (Contributing) | Material Source | Character |
|---|---|---|---|---|---|---|
| 0 - None | 1 - Asphalt | 1 - Dry | None | 1 - None | 0 - Not Applicable | 1 - Straight—Level |
| 1 - Shoulders Low | 2 - Concrete | 2 - Wet | | 2 - Rocks | 1 - Natural Environment | 2 - Straight—Down Grade |
| 2 - Shoulders High | 3 - Brick | 3 - Icy | | 3 - Trees/Limbs | 2 - Dropped From Vehicle | 3 - Straight—Up Grade |
| 3 - Holes, Bumps, Etc | 4 - Unpaved | 4 - Snowy/Slushy | | 4 - Dirt | 3 - Already in Road, But Fell From Vehicle | 4 - Straight—Hillcrest |
| 8 - Other | 8 - Other | 5 - Muddy | Yes | 6 - Oil/Petro | 4 - Other | 5 - Curve—Level |
| | | 8 - Muddy | Yes | 8 - Other | 8 - Other | 6 - Curve—Down Grade |
| | | | | | 9 - Unknown | 7 - Curve—Up Grade |
| | | | | | | 8 - Curve—Hillcrest |

| Vision Obscured By: | Traffic Control | Opposing Lanes Separated By: | Trafficway Lanes |
|---|---|---|---|
| 0 - Not Obscured    10 - Blinded by Sunlight | 1 - Police Officer    11 - Flagger | 0 - Not Applicable | 1 - One Lane |
| 1 - Buildings    11 - Fire/Smoke | 2 - R.R. Crossing Gates    12 - No Passing Zone | 1 - Paved Surface | 2 - Two Lanes |
| 2 - Signboard    12 - Dust | 3 - R.R. Flashing Lights    98 - None | 2 - Unpaved Surface | 3 - Three Lanes |
| 3 - Trees, Crops, Bushes    13 - Blinded by Headlights | 4 - R.R. Cross Bucks/Pave Mark    98 - Other | 3 - Broken Painted Line | 4 - Four Lanes |
| 4 - Blowing Snow/Sand    14 - Embankment | 5 - Pedestrian Control | 4 - Solid Painted Line | 5 - Five Lanes |
| 5 - Hillcrest    15 - Rain on Windshield | 6 - Traffic Signal | 5 - Concrete Barrier | 6 - Six Lanes or More |
| 6 - Curve in Road    16 - Snow on Windshield | 7 - Flashing Beacon | 6 - Metal Guard Rail | |
| 7 - Fog    98 - Other | 8 - Stop Sign | 7 - Fence | One-Way Street |
| 8 - Parked Vehicle    99 - Unknown | 9 - Yield Sign | 98 - Other Barrier | Yes |
| 9 - Moving Vehicle(s) | 10 - Lane Control Device | | |

Traffic Control Functioning: Yes / No

DOT Railroad Crossing No

| Light | Weather | Locale | Non-Vehicular Property Damage | Property Damage Description |
|---|---|---|---|---|
| Daylight    4 - Darkness—Road Not Lit | 1 - Clear    5 - Sleet/Hail | 1 - Open Country    5 - School | None Visible    3 - Moderate | N/A |
| Dawn | 2 - Cloudy    6 - Crosswind | 2 - Residential    6 - Playground | Light    4 - Severe | |
| Dusk    5 - Darkness—Road Lit | 3 - Rain    7 - Fog | 3 - Shop'g or Business    8 - Other | | |
| | 4 - Snow    8 - Other | 4 - Mfg. or Industrial | Owner | |

| Police Notified    AM | Time Police Arrived    AM | Time EMS Arrived    AM | Name of Photographer | Address | |
|---|---|---|---|---|---|
| 12:39 MT | 12:55 MT | MT | N/A | | |

| ...s Full Name | Address | | Telephone |
|---|---|---|---|
| N/A | | | |

| ...s Full Name | Address | | Telephone |
|---|---|---|---|
| N/A | | | |

| ...f Investigating Officer | Officer ID | Agency ORI | Supervisor Reviewed |
|---|---|---|---|
| D. Adams | 360 | AL AST0300 | |
| ...f Other Investigating Officer(s) at Scene | Officer ID | Agency ORI | 58² |

...as this report reflects my best knowledge, opinion and belief governing the accident, but no warrant is made as to the factual accuracy thereof.

...ture of Investigating Officer: [signature]    Date: 03/11/2003

REASON FOR DELAY OF APPEAL

ON OCTOBER 26,2005 APPELLENT INQUIRY THE STATUS ON THE ABOVE CAPT
IONED CASE : PLEASE SEE ATTACHED DOCKET SHEET FROM CIVIL APPEAL C
OURT; AND LEARNED THAT MY CASE ARE DISMISSED FROM THE STATE SUPRE
ME COURT CLAIMING UNTIMELY FILING. IN ACCORDANCE WITH FEDERAL RUL
E 315 FROM THE AMERICAN JURISPRUDENCE APPELLENT CAN REGULATION GR
OUNDS FOR AN EXTENTION ON TIME FOR FILING AN APPEAL INTO ANY APPE
AL COURT.( WITH EXCUSABLE REASON). THE CIVIL APPEAL ORDER ARE DAT
ED FOR JUNE 18,2004 APPELLENT REASONS ARE A CIRCUMSTANCES OF STRA
NDED IN WASHINGTO D.C. WITHOUT ANY MONEY FROM THE RESULT OF A STO
LEN GRAYHOUND BUS TICKET. APPELLENT WAS THERE FROM 1-15-04 to 6-2
2-04 SEE PROOFS ON PAGE 10 AND 11.NOW WHEN APPELLENT RETURNED TO
MY HOME IN MONTGOMERY AT !@ 1259 SETH JOHNSON, MY HOME WAS FORECL
OSURE WITH EVICTION NOTICE THEREFORE I WAS FORCE TO LOCATE ANOTHE
R PLACE TO LIVE.THEREFORE APPELLENT SHOWS GOOD GROUNDS FOR GRANTE
D EXTENTION ON TIME FOR THIS APPEAL. THE STATE SUPREME COURT ACCE
PTED A MOTION IN SUPPORT IN THIS CASE AFTER MAILING A ORDER OF DI
SMISSAL ALSO A ORDER SUBSTAIATED WAS FILED ON 4X 9-04-04 THE MOTI
ON IN SOPPORT IS CALLED BURDEN OF PROOF.



**CATHOLIC CHARITIES OF THE ARCHDIOCESE OF WASHINGTON**

CATHOLIC
CHARITIES

F A I T H.
WORKS.
WONDERS.

The James Cardinal Hickey Center
924 G Street, NW
Washington, DC 20001
Telephone: (202) 772-4300
Facsimile: (202) 772-4408

**DC Family Services**
Northeast Family Center
Southeast Family Center
Foster Care
Model Cities Day Care Center
St. Joseph's Day Care Center
Teen Life Choices

**DC Homeless Services**
Downtown Family Center
Martin Luther King Center
McKenna House
Mount Carmel House
Randall Center
St. Martin's House
St. Matthias Mulumba House
Tenants Empowerment Network

**Montgomery County**
ontgomery County Family Center
Bethesda House
Carroll House
Dorothy Day Place

**Prince George's County**
nce George's Co. Family Center
al Care Community Partnership
Prince George's House

**Southern Maryland**
Calvert County Family Center
Charles County Family Center
St. Clements Family Center
ngel's Watch Regional Shelter
Southern Maryland Food Bank
St. Sebastian Town Homes

**alized Service Networks**
iocesan Health Care Network
Archdiocesan Legal Network
Immigration Legal Services
Parenting Program
nancy and Adoption Services
Refugee Service Center
SHARE Food Network
Substance Abuse Network

Date: 6/29/04

To Whom It May Concern:

This letter is to verify that _Andrew Williams_ is homeless and has been residing at our facility since _1-15-04 to 6/23/04_. If further information is needed, please call (202)832-2359 between the hours of 8:00am and 4:00pm, Monday through Friday.

Additional Comments: _Mr. Williams was at our facility during the above-mentioned dates_

_Thank You_

Thank you,

_Willie Mobley_
_RCI_
_2/823-2359_



A United Way Member Agency

SUBPOENA

# Superior Court of the District of Columbia
## CIVIL DIVISION — SMALL CLAIMS AND CONCILIATION BRANCH
### Bldg. B, 409 E Street, N.W., Room 120
### Washington, D. C. 20001    (202) 879-1120

_Andrew Joddie Williams_
**Plaintiff**

**SUBPOENA FOR CASES IN SMALL CLAIMS COURT:**

V.

_Greyhound Lines_
**Defendant**

**SC CASE NUMBER:** _3453-04_

_ORAL EXAM._

To: _MR. RUTH ANN COSTA_
_1005 FIRST ST, N.E. WASHINGTON D.C. 20005_

☐ **YOU ARE COMMANDED** to appear in this Court at the place, date, and time specified below to testify in the above case.

| SMALL CLAIMS AND CONCILIATION COURTROOM _# 119_ | DATE _6/23/04_ | TIME _9:00 AM_ |
|---|---|---|

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE | TIME |
|---|---|---|
| | | |

☐ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (*list documents or objects*):

| DOCUMENTS OF OBJECTS | | |
|---|---|---|
| PLACE OF PRODUCTION | DATE | TIME |
| | | |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE | TIME |
|---|---|---|
| | | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. SCR-CIV 30(b)(6).

| ISSUING PERSON'S SIGNATURE AND TITLE (indicate if attorney for plaintiff or defendant) | DATE |
|---|---|
| _An Andrew Joddie Williams_    _PLAINTIFF_ | _MAY 24 04_ |

| ISSUING PERSON'S NAME, ADDRESS AND PHONE NUMBER |
|---|
| _1355 New York Ave. Washington D.C. 20005    Montgomery AL_ |
| _Andrew Joddie Williams_    _1357 S.W. Johnson Dr._    _36116_ |

**(SEE RULE 45, SUPERIOR COURT RULES OF CIVIL PROCEDURE ON REVERSE)**

**WHITE—ORIGINAL    YELLOW—FOR RETURN SERVICE    PINK—OFFICE COPY**

Form CVS-433/Nov. 93

4-0263-1 wd-413

FEDREAL RULE z509 FROM THE AMERICAN JURISPRUDENCE
FACTORS AND MERCHANT COMMISSION
FEDERAL RULE BOOK 1-664

x509
GENERALLY
 AN APPLICATION FOR LEAVE TO PRECEED IN FORMA PAUPERIS MUST BE AC
COMPANIED BY AN AFFIDVVIT SHOWING (1) THE APPLICANTS INABILITY TO
PAY FEES AND COST, OR GIVE SECURITY THEREFORE: (20 A STATEMENT OF
THE NATURE OF THE ACTION , DEFENSE OR APPEAL: AND (30 A STATEMENT
OF THE APPLLICANTS BELIEF THAT HE IS ENTITLED TO REDRESS. WHERE N
O AFFIDAVIT IS MADE LEAVE TO PRECEED IN FORME PAUPERIS WILL BE DE
NIED: ONE WHO MAKE AN AFFIDAVIT EXPOSES HIMSELF TO THE PAINS OF P
ERJURY IN THE CASE OF BAD FAITH: THEREFORE IT IS ESSENTIAL THAT T
HE AFFIDAVIT STATE THE FACT AS TO THE APPLICANTS POVERTY WITH SOM
E PARTICULARITY DEFINITENETS, AND CERTAINTY.

GROUNDS FOR EXTENTION
REGULATION (315-322)
FROM THE AMERICAN JURIS PRUDENCE

z315 AN EXTENTION OF TIME TO FILE A NOTICE OF APPEALFROM A
DISTRICT COURT TO A FEDERAL COURT OF APPEAL IN A CIVIL
CASE MAY BE GRANTED UPON A SHOWLNG OF EXCUSABLE NEGLEC
T OR GOOD CAUSE, WHILE SOME STATE JURISDICTION HAVE AD
OPTION THE GOOD CAUSE STANDARD FOR EXTENDING THE TIME
FOR APPEAL, OTHER PREMIT EXTENTION ONLY UPON A SHOWING
OF EXCUSABLE NEGLECT, THE STANDARD FOR DETERMING, EXCU
SABLE NEGLECT IN A CIVIL CASE IS STRICT ONES, REQUIRIN
G THE PARTY REQUESTING THE EXTENTING OF TIME IN WHICH
TO FILE A NOTICE OF APPEAL TO MAKE A CLEAR SHOWING THE
E CIRCUMSTANCE CUSING THE DELAY WHERE UNIQUE OR EXTRON
ORDINARY AND THAT THE NEGLECT WAS EXCUSABLE, IN DETERN
MING WHEATHER TO EXTEND TIME FOR FILING A NOTICE OF AP
PEAL ON GROUNDS OF EXCUSABLENEGLECT. A COURT SHOULD CO
NSIDER ALL REVEELENT FACTORS, INCLUDING THE DANGER OF
PREJUDICE. THE LENGHT OF DELAY AND ITS POTENTIAL IMPAC
T ON JUDICIAL PRECEEDING, THE REASON FOR THE DELAY AND
WEATHER IT WAS WITHIN THE REASONABLE CONTROL OR THE MO
VANT, AND WEATHER THE MOVANT ACTED ON GOOD FAITH.
  EXCUSABLE NEGLECT MUST BE EZSTABILISHED NOT ONLY WITH
REPECT TO THE INITIAL PERIOD FOR FILING A NOTICE OF AP
PEAL, BUT ALSO WITH REPECT TO THE GRACE PERIOD FOLLOWI
NG EXSPRIRATION OF SUCH INITIAL PERIOD, UP TO THE TIME
WHEN A MOTION TO EXTEND IS FILING. THUS IT IS THE APPE
LLANT BURDEN TO DEMONSTRATE EXCUSABLE NEGLECT AS TO AN
Y DELAY BETWEEN THE EXSPRIRATION OF THE INITIAL PERIOD
FOR APPEAL AND THE FILING OF THE MOTION TO EXTENTION.
THE GOOD CAUSE STANDARD GENERALLY IS APPLICABLE EXCLUS
IVEABLE TO MOTION FOR EXTENTION MADE DURING THE INITI
AL 30 DAYS PERIOD FOR TAKING AN APPEAL AS A MATTER OF
RIGHT HOWEVER AT LEASE ONE CIRCUIT HAS RECONIZE GOOD C
AUSE AS A BASIS FOR EXTENSION BOTH BEFORE AND AFTER TH
E 30 DAYS APPEALS PERIOD. BUT ONLY IN CIRCUMSTANCE WHE
RE THEIR WAS NO NEGLECT EXCUSABLE OR OTHERWISE ON THE
PART OF THE WOULD BE APPELLENT AND WHERE THE NEED FOR
THE EXTENSION RESULTED ENTIRELY FROM FORCES BEYOUND T
CONTROL OF THE WOULD BE APPELLENT. WHERE THE NEED FOR
AN EXTENTSION OF TIME TO FILE A NOTICE OF APPEAL RESUL
T ENTIRELY FROM NEGLECT ATTRIBUTABLE TO THE WOULD BE A
PPEALLENT AS A DISTINQUISHED FROM FORCES BEYOUND THE A
PPEALLENT CONTROL.. EXCUSABLE NEGLECT MUST BE SHOW.
CASE BFIEF: AVIATION V. UNITED STATES, 22cl.ct.260,

I, ANDREW J. WILLIAMS HEREBY CERTIFY THAT I SERVE A COPY OF THE F
OREGING BY MAILING THE SAME, POSTAGE PREPAID TO.

NIX HOLTSFORD GILLILAND
HIGGIN & HITSON P.C.
P.O. BOX 4128
MONTGOMERY ALABAMA 36103-4128

*Andrew J. Williams*
11-7-05

**1031843**     # Alabama Supreme Court Docket Sheet     **1031843**

## CVC : Petition for Writ of Certiorari to the Court of Civil Appeals

Ex parte Andrew Williams.  PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CIVIL APPEALS  (In re: Andrew Williams v. Hubert Brandon).

(Montgomery Circuit Court: CV 03-804; Civil Appeals : 2030145).

## Indigent

---

**Classification**

Other

**Petition Filed : 09/02/2004**

Docketed 09/02/2004  AG
Last Updated  / /     AG

**Judges**

Circuit Judge Reese, Eugene W.; Civil Appeals Judge Crawley

**Case Actions / Postings**

| | |
|---|---|
| 09/02/2004 | Cert Petition and Brief Filed 10 copies.   amg/jcd |
| 09/02/2004 | Motion to accept out of time appeal filed on 09/02/2004. (Included in Cert)  Dismissed on 09/03/04. |
| 09/02/2004 | Notified Lower Appellate Court that Cert. petition filed w/Sup.Ct. |
| 09/02/2004 | Notice of Docketing |
| 09/03/2004 | Dismissed pursuant to Rule 39(b), Alabama Rules of Appellate Procedure, as untimely filed. See Rules 2(b) and 26(b), Alabama Rules of Appellate Procedure. |
| 11/02/2004 | "Burden of Proof" filed 1 copy.  amg/jcd |

### Attorneys & Officials

| | | |
|---|---|---|
| **Civil Appeals Clerk** | John H. Wilkerson, Jr. | Montgomery, AL  (334) 242-4093 |
| **Circuit Judge** | Eugene W. Reese | Montgomery, AL  (334) 832-1360 |
| **Circuit Clerk** | Montgomery County Circuit Clerk's Office | Montgomery, AL  (334) 832-1260 |
| **Pro Se Pet.** | Andrew J. Williams, | Montgomery, AL  ( ) - |
| **Atty. for Resp.** | Jeffrey G. Hunter | Montgomery, AL  (334) 215-8585 |
| | H. E. Nix, Jr. | Montgomery, AL  (334) 215-8585 |

*END OF DOCKETING INFORMATION*

PETITION FOR WRIT OF
CERTIORARI TO A COURT OF
APPEALS



ANDREW J. WILLIAMS

V.

HUBERT BRANDON

CIRCUIT COURT OF MONTGOMERY COUNTY

SC NO.

(To be inserted by Clerk of Supreme Court)

Petition for Writ of Certiorari

TO THE SUPREME COURT OF ALABAMA

Comes your Petitioner Andrew Williams and petition this
Court for a writ of Certiorari to issue to the Court of
(Criminal, Civil) Appeals in the above-style cause under
Rule 39, ARAP, and shows the following.
    1. Petitioner (was convicted of the charge of dismissa
l, or secured or suffered a judgement) in the circuit co
urt of montgomery county,ALABAMA, ON jun 18,2004.

The Court of (Criminal, Civil) Appeals (affirmed, revers
ed) the judgement on jun 18,2004. An application for reh
earing was filed on none and overruled on none.

    2. A copy of the opinon of of the appellate court is a
ttached to this petition which shows the court of (Crimi
nal, Civil) Appeals case to be no. 2030145.

    3. Petitioner alleges as grounds for the issuance of t
he writ the following.

    (1) The basis of this petition for the writ is that th
e appellate court (held valid[or invalid] a city ordinan
ce, state or federal statute or treaty) or(incorrectly i
nitially construed a controlling provision of the alabam
a or federal Constitution). The issue is whether the app
ellate court erred in holding thata peniure settlement w
hich invalidates state constitutional regulation 6-11-20
and 6-11-21, when affirming lower court order.

(2). The basis of this petition for the writ is that
the decision affects a class of (Constitutional, st
ate or county officers) namely, the office of refer
ee. The issue is weather the appellate court erred
in holding that a peniure settlement is sufficient
money in cases where intentional negligence are inv
olve, also where defendent admitts that cases of th
is magnitude could settlement well over 250,000. do
llars.

(3). Tbasis of this petition for the writ is that a
a material question requring decision was one of fi
rst impression in the appellate courts of alabama a
nd was incorrectly decided, The issue is weather th
e appellate court erred in holding that a affirmiti
ve, no opinon decision upholding lower court decisi
on of peniure settlement are sufficient money in th
is case.

(4). The basis of this petition for the writ is that
the decision is in conflict with a prior decision o
f the supreme court on the same point of law. In it
s opinion, the appellate court held. no opinion. In
the case of andrew williams v. hubert brandon, the
supreme court held supreme court rule 6-11-20 and 6
-11-21. These statement of the law or the substance
of the opinion are in conflict and the appellate co
urt erred in failing to following the decision of t
he Supreme Court on the same point of law.


Petitipner respectfully requests that after a preli
minary examination, the writ of certiopari be grant
ed and that yhis court proceed under its rules to re
eviewthe matters complained of, and to reverse the
judgementof the court of (Criminal, Civil) Appeals,
and for such other relief as Petitioner may be enti
tleed.
   I certify that i have this day served copies of th
s petition and the birefs on all other parties to t
he appeal in the court of appeal and the court of (
(Criminal, Civil Appeals.

*Andrew Williams*

IN PRO SE
ANDREW J. WILLIAMS
3886 CHRISTINE ELIZABETH
CURVE APT. NO. 101
montgomery alabama 36116

STATE OF ALABAMA
SUPREME COURT

FILED

NOV 2 2004

CLERK
SUPREME COURT OF ALABAMA

ANDREW JODDIE WILLIAMS
3886 CHRISTINE ELIZABETH
APT.#101
MONTGOMERY ALABAMA 36116

VERSES                          CASE # 2030145

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON P. C.
P. O. 4128
MONTGOMERY ALABAMA 36103-4128
   334-215-8585
   DEFENDENT

---

### BURDEN OF PROOF

COMES NOW ANDREW JODDIE WILLIAMS TO FILE INTO THE ALABAMA S
TATE SUPREME COURT THE BURDEN OF PROOF IN THE ABOVE CAPTION
ED CASE, THE UNITED STATES CODES FOR PASSENGER PENUTIVE DAM
AGES. PLEASE SEE ATTACHED PAGES.

jurisdiction" are placed before clause (1) rather than at the end of clause (4), as in the source provision, to reflect the probable intent of Congress.

AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26101 of this title as this section.

### § 28102. Limit on certain accident or incident liability

(a) GENERAL.—When a publicly financed commuter transportation authority established under Virginia law makes a contract to indemnify Amtrak for liability for operations conducted by or for the authority or to indemnify a rail carrier over whose tracks those operations are conducted, liability against Amtrak, the authority, or the carrier for all claims (including punitive damages) arising from an accident or incident in the District of Columbia related to those operations may not be more than the limits of the liability coverage the authority maintains to indemnify Amtrak or the carrier.

(b) MINIMUM REQUIRED LIABILITY COVERAGE.—A publicly financed commuter transportation authority referred to in subsection (a) of this section must maintain a total minimum liability coverage of at least $200,000,000.

(c) EFFECTIVENESS.—This section is effective only after Amtrak or a rail carrier seeking an indemnification contract under this section makes an operating agreement with a publicly financed commuter transportation authority established under Virginia law to provide access to its property for revenue transportation related to the operations of the authority.

(Pub. L. 103–272, §1(e), July 5, 1994, 108 Stat. 940, § 26102; renumbered §28102, Pub. L. 103–440, title I, §103(a)(1), Nov. 2, 1994, 108 Stat. 4616.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
| --- | --- | --- |
| 26102(a) ...... | 45:649(a) (1st sentence). | Oct. 30, 1970, Pub. L. 91–518, 84 Stat. 1327, §810; added July 6, 1990, Pub. L. 101–322, §3, 104 Stat. 295. |
| 26102(b) ...... | 45:649(a) (last sentence). | |
| 26102(c) ...... | 45:649(b). | |

In subsection (a), the words "Notwithstanding any other provision of law", "whether for compensatory or", and "occurring" are omitted as surplus.

In subsection (c), the words "an indemnification contract" are substituted for "coverage" for clarity.

AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26102 of this title as this section.

### § 28103. Limitations on rail passenger transportation liability

(a) LIMITATIONS.—(1) Notwithstanding any other statutory or common law or public policy, or the nature of the conduct giving rise to damages or liability, in a claim for personal injury to a passenger, death of a passenger, or damage to property of a passenger arising from or in connection with the provision of rail passenger transportation, or from or in connection with any rail passenger transportation operations over or rail passenger transportation use of right-of-way or facilities owned, leased, or maintained by any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State, punitive damages, to the extent permitted by applicable State law, may be awarded in connection with any such claim only if the plaintiff establishes by clear and convincing evidence that the harm that is the subject of the action was the result of conduct carried out by the defendant with a conscious, flagrant indifference to the rights or safety of others. If, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, this paragraph shall not apply.

(2) The aggregate allowable awards to all rail passengers, against all defendants, for all claims, including claims for punitive damages, arising from a single accident or incident, shall not exceed $200,000,000.

(b) CONTRACTUAL OBLIGATIONS.—A provider of rail passenger transportation may enter into contracts that allocate financial responsibility for claims.

(c) MANDATORY COVERAGE.—Amtrak shall maintain a total minimum liability coverage for claims through insurance and self-insurance of at least $200,000,000 per accident or incident.

(d) EFFECT ON OTHER LAWS.—This section shall not affect the damages that may be recovered under the Act of April 27, 1908 (45 U.S.C. 51 et seq.; popularly known as the "Federal Employers' Liability Act") or under any workers compensation Act.

(e) DEFINITION.—For purposes of this section—
(1) the term "claim" means a claim made—
(A) against Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State; or
(B) against an officer, employee, affiliate engaged in railroad operations, or agent, of Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State;

(2) the term "punitive damages" means damages awarded against any person or entity to punish or deter such person or entity, or others, from engaging in similar behavior in the future; and
(3) the term "rail carrier" includes a person providing excursion, scenic, or museum train service, and an owner or operator of a privately owned rail passenger car.

(Added Pub. L. 105–134, title I, §161(a), Dec. 2, 1997, 111 Stat. 2577.)

REFERENCES IN TEXT

The Federal Employers' Liability Act, referred to in subsec. (d), is act Apr. 22, 1908, ch. 149, 35 Stat. 65, as amended, which is classified generally to chapter 2 (§51 et seq.) of Title 45, Railroads. For complete classification of this Act to the Code, see Short Title note set out under section 51 of Title 45 and Tables.

## CHAPTER 283—STANDARD WORK DAY

Sec.
28301.      General.
28302.      Penalties.

## § 28301. General

(a) EIGHT HOUR DAY.—In contracts for labor and service, 8 hours shall be a day's work and the standard day's work for determining the compensation for services of an employee employed by a common carrier by railroad subject to subtitle IV of this title and actually engaged in any capacity in operating trains used for transporting passengers or property on railroads from—

(1) a State of the United States or the District of Columbia to any other State or the District of Columbia;

(2) one place in a territory or possession of the United States to another place in the same territory or possession;

(3) a place in the United States to an adjacent foreign country; or

(4) a place in the United States through a foreign country to any other place in the United States.

(b) APPLICATION.—Subsection (a) of this section—

(1) does not apply to—

(A) an independently owned and operated railroad not exceeding one hundred miles in length;

(B) an electric street railroad; and

(C) an electric interurban railroad; but

(2) does apply to an independently owned and operated railroad less than one hundred miles in length—

(A) whose principal business is leasing or providing terminal or transfer facilities to other railroads; or

(B) engaged in transfers of freight between railroads or between railroads and industrial plants.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28301 | 45:65. | Sept. 3, 5, 1916, ch. 436, § 1, 39 Stat. 721. |
| | (uncodified). | Sept. 3, 5, 1916, ch. 436, § 2, 3, 39 Stat. 721. |

In subsection (a), the word "determining" is substituted for "reckoning" for clarity. The words "who are not or may hereafter be employed" are omitted as surplus. In clause (1), the words "or territory" are omitted because the existing territories of the United States are now connected to the United States by rail. In clause (2), the words "or possession of the United States" are added for consistency in the revised title and with other titles of the United States Code.

The text of sections 2 and 3 of the Act of September 3, 5, 1916 (ch. 436, 39 Stat. 721), is omitted to eliminate executed provisions.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 28302 of this title.

## § 28302. Penalties

A person violating section 28301 of this title shall be fined under title 18, imprisoned not more than one year, or both.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28302 | 45:66. | Sept. 3, 5, 1916, ch. 436, § 4, 39 Stat. 722. |

The words "shall be guilty of a misdemeanor" are omitted, and the words "shall be fined under title 18" are substituted for "shall be fined not less than $100 and not more than $1,000", for consistency with title 18. The words "upon conviction" are omitted as surplus.

# SUBTITLE VI—MOTOR VEHICLE AND DRIVER PROGRAMS

### PART A—GENERAL

| Chapter | | Sec. |
|---|---|---|
| 301. | Motor Vehicle Safety | 30101 |
| 303. | National Driver Register | 30301 |
| 305. | National Motor Vehicle Title Information System | 30501 |

PART B—COMMERCIAL

| 311. | Commercial Motor Vehicle Safety | 31101 |
| 313. | Commercial Motor Vehicle Operators | 31301 |
| 315. | Motor Carrier Safety | 31501 |
| 317. | Participation in International Registration Plan and International Fuel Tax Agreement | 31701 |

PART C—INFORMATION, STANDARDS, AND REQUIREMENTS

| 321. | General | 32101 |
| 323. | Consumer Information | 32301 |
| 325. | Bumper Standards | 32501 |
| 327. | Odometers | 32701 |
| 329. | Automobile Fuel Economy | 32901 |
| 331. | Theft Prevention | 33101 |

AMENDMENTS

1997—Pub. L. 105–102, § 2(17), Nov. 20, 1997, 111 Stat. 2205, substituted "National Motor Vehicle Title Information System" for "National Automobile Title Information System" in item for chapter 305.

### PART A—GENERAL

### CHAPTER 301—MOTOR VEHICLE SAFETY

SUBCHAPTER I—GENERAL

| Sec. | |
|---|---|
| 30101. | Purpose and policy. |
| 30102. | Definitions. |
| 30103. | Relationship to other laws. |
| 30104. | Authorization of appropriations. |
| 30105. | Restriction on lobbying activities. |

SUBCHAPTER II—STANDARDS AND COMPLIANCE

| 30111. | Standards. |
| 30112. | Prohibitions on manufacturing, selling, and importing noncomplying motor vehicles and equipment. |
| 30113. | General exemptions. |
| 30114. | Special exemptions. |
| 30115. | Certification of compliance. |
| 30116. | Defects and noncompliance found before sale to purchaser. |
| 30117. | Providing information to, and maintaining records on, purchasers. |
| 30118. | Notification of defects and noncompliance. |
| 30119. | Notification procedures. |
| 30120. | Remedies for defects and noncompliance. |
| 30121. | Provisional notification and civil actions to enforce. |



I, ANDREW WILLIAMS HEREBY CERTIFY THAT I SERVE A COPY OF TH
E FOREGOING BY MAILING THE SAME, POSTAGE PREPAID TO.

NIX HOLTEFORD GILLILAND P. C.
HIGGIN $ HITSON P.C.
P. O. BOX 4128
montgomery alabama 36103-4128

Andrew Joddie Williams
11-2-2004

STATE OF ALABAMA
SUPREME COURT

ANDREW J. WILLIAMS
3886 CHRISTINE ELIZABETH APT 101
MONTGOMERY ALABAMA 36116
     APPELLENT

VERSES

NIX HOLTSFORD
HIGGINS & HITSON,P.C.
P.O. BOX 4128
MONTGOMERY,ALABAMA 36103-4128
     DEFENDENT

LOWER COURT CASE NO.
2030145

---

NOTICE OF APPEAL

  COMES NOW ANDREW J. WILLIAMS TO FILE FOR AN APPEAL TO A AL
ABAMA STATE COURT OF APPEAL DECISION DATED JUN 18,2004. ple
ase find attached reasons for late appeal

*Andrew Williams*
*September 1, 2004*

REASONS FOR LATE APPEAL

THE REASON APPELLENT FILE FOR A LATE APPEAL ARE A DESPUTE W
ITH THE GREYHOUND BUS COMPANY CONCERNING A STOLEN TRAVERLER
S BUS TICKETS. APPELLANT PURCHASED A ROUND TRIP TICKET HERE
 IN MONTGOMERY FROM THE GREYHOUND BUS COMPANY ENROUTE TO WI
LMINGTON DELEWARE, AND WHEN I REACHED BALTIMORE MARYLAND TE
RMINAL SOMEONE STOLEN MY TRAVERLERS AND PROVOKED ME STRANDE
D IN WASHINGTON D.C.. APPELLANT WAS FORCED TO FILE A SMALL
CLAIMS COURT PRECEEDING IN THE UNITED STATES SUPERIOR COURT
TO RESOLVE THE DISPUTE. THE ATTACHED STATEMENT FROM THE HOM
LESS SHELTER IN WASHINGTON D.C. MARYLAND PROVES MY STAY DOI
NG COURT PRECEEDING. ALSO WHEN I RETURNED HERE IN MONTGOMER
Y MY HOUSE WAS PADLOCKED FOR EVICTION. THEREFORE A LATR APP
EAL ARE NECESSARY.

Andrew Williams
September 21, 2004



# IN THE SUPREME COURT OF ALABAMA

September 3, 2004

**1031843**

Ex parte Andrew Williams.  PETITION FOR WRIT OF CERTIORARI TO THE
COURT OF CIVIL APPEALS  (In re: Andrew Williams v. Hubert Brandon)
(Montgomery Circuit Court: CV 03-804; Civil Appeals : 2030145).

## ORDER

IT IS ORDERED that the petition for writ of certiorari
filed on September 2, 2004, is dismissed pursuant to Rule
39(b), Alabama Rules of Appellate Procedure, as untimely filed.
See Rules 2(b) and 26(b), Alabama Rules of Appellate Procedure.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court
of Alabama, do hereby certify that the foregoing is
a full, true and correct copy of the instrument(s)
herewith set out as same appear(s) of record in said
Court.
Witness my hand this _3rd_ day of _September  2004_

_Robert G. Esdale Sr._

**Clerk, Supreme Court of Alabama**

/ag

STATE OF ALABAMA -- JUDICIAL DEPARTMENT
THE COURT OF CIVIL APPEALS
OCTOBER TERM, 2003-2004

2030145

Andrew Williams v. Hubert Brandon
Appeal from Montgomery Circuit Court (CV-03-804).

CRAWLEY, Judge.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R. App. P.; Rule
28, Ala. R. App. P.; Asam v. Devereaux, 686 So. 2d 1222, 1224
(Ala. Civ. App. 1996); and Bishop v. Robinson, 516 So. 2d 723
(Ala. Civ. App. 1987).

Yates, P.J., and Thompson, Pittman, and Murdock, JJ.,
concur.

| State of Alabama<br>Unified Judicial System<br>Form C-10 (front)   Rev. 8/92 | # AFFIDAVIT of SUBSTANTIAL<br>HARDSHIP and ORDER | Case Number |
|---|---|---|

IN THE _UNITED STATES DISTRICT_ COURT OF _MONTGOMERY_ COUNTY

☒ STATE OF ALABAMA   ☐ MUNICIPALITY OF _ANDREW Joddie Williams_

v. _Nix HOLTSFORD GILLILAND, Higgins PHitson P.C._ , Defendant

TYPE OF PROCEEDING: _Civil Action_   CHARGE: _Assault With Battery_

☒ CIVIL CASE- I, because of substantial hardship, am unable to pay the docket fee and service fees in this case. I request that payment of these fees be waived initially and taxed as costs at the conclusion of the case.

☐ CIVIL CASE (such as paternity, support, termination of parental rights, dependency) - I request an attorney be appointed for me.

☐ CRIMINAL CASE--I am financially unable to hire an attorney and request that the Court appoint one for me.

☐ DELINQUENCY/NEED OF SUPERVISION - I am financially unable to hire an attorney and request that the Court appoint one for my child.

## AFFIDAVIT

**INCOME / EMPLOYMENT**

A. Do you have a job or work for yourself?   ☐ Yes  ☒ No

Employer's name and address _____

How much money do you take home each week?   + $ _NONE_

B. If unemployed, give month and year of last employment and amount earned per month _JUNE 1984_   $ _2,000._

C. Does your husband or wife have a job?   _NONE_   ☐ Yes  ☒ No

Employer's name and address _____

How much money does he/she take home each week?   + $ _NONE_

D. Do you receive money or benefits from any other source?   ☐ Yes  ☐ No

(Example: retirement pay, social security, workmen's compensation, unemployment compensation, food stamps, rent payments, interest, dividends, etc.) How much do you receive each month?   + $ _1110.00_

**ASSETS**

A. Do you have any money in any bank, savings and loan, credit union, or any other place, including cash on hand?   ☐ Yes  ☒ No

Where? _NONE_   How much?  + $ _____

B. Do you own anything else of value? (Land, house, boat, television, stereo, jewelry, car, truck, van, stocks, bonds, etc.)   ☐ Yes  ☒ No

What? _NONE_

Total Value  + $ _1110.00_

**DEPENDENTS**

A. Are you: ☒ Single  ☐ Married  ☐ Widowed  ☐ Divorced  ☐ Separated?

B. Do you have any dependents?   ☐ Yes  ☐ No

Who and what relationship?   _NONE_

SOCIAL SECURITY ADMINISTRATION

Date: July 14, 2005
Claim Number: 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A
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DI

ANDREW WILLIAMS
P O BOX 4363
MONTGOMERY AL 36103-4363

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

Information About Current Social Security Benefits

  Beginning February 2005, the full monthly
  Social Security benefit before any deductions is......$ 1110.60

    We deduct $0.00 for medical insurance premiums each month.

  The regular monthly Social Security payment is........$ 1110.00
  (We must round down to the whole dollar.)

  Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

  Your Social Security benefits are paid on or about the third of each month.

Information About Supplemental Security Income Payments

  Beginning October 1991, the current
  Supplemental Security Income payment is..............$ 0.00

  This payment amount may change from month to month if income or living situation changes.

  Supplemental Security Income Payments are paid the month they are due. (For example, Supplemental Security Income Payments for March are paid in March.)

  Payments were stopped beginning July 1992.

Medicare Information

STATE OF ALABAMA
COURT OF CIVIL APPEALS

ANDREW J. WILLIAMS

   PLAINTIFF/APPELLANT

VERSES                                    CASE NO. 2030145

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON,P.C.
P.O. 4128
MONTGOMERY ALABAMA 36103-4128
    334-215-8585

   DEFENDENT/RESPONDENT



FILED

DEC 16 2003

COURT OF
CIVIL APPEALS

      APPELLENT; S BRIEF IN SUPPORT

ON APPEAL FROM THE STATE CIRCUIT COURT

THE STATE OF ALABAMA

ANDREW J. WILLIAMS
1259 SETH JOHNSON DRIVE
MONTGOMERY ALABAMA 36116

    IN PRO SE.

*Andrew Williams*
*December 5, 2003*
*September 1, 2004*

TABLE OF CONTENT

CERTIFICATE OF INTERESTED PERSON                                      1.

APPELLANT,S STATEMENT REGARDING ORAL AUG.                            2.

CERTIFICATE OF TYPE SIZE AND SIZE                                     3.

STATEMENT OF JURISDITION                                             4.

STATEMENT OF THE ISSUES                                              5.

STATEMENT OF THE CASE                                                6.

SUMMARY OF ARGUMENT                                                  7.

ARGUMENT                                                            8.

  A. STANDARD OF REVEIW

  B. THE STATE COURT ERRORS WHEN CONSTRUING
    ALABAMA STATE LAW GOVERNING PUNITIVE D
    AMAGES AND VEHICULAR NEGLIGENCE, WHICH
    IS STATUTORY AT CIVIL APPEAL PROCUDURE
    RULE 6-11-20 AND 6-11-21.

  C. THE STATE CIRCIUT COURT ERRORS WHEN DE
    CREE A PENIURE SETTLEMENT AWARD IN THI
    S CASE

  D. THE STATE CIRCUIT COURT JUDGE HAS NOT
    ANY GOOD GROUNDS FOR THE RENDER OF THI
    S DECISION

CONCLUDSION                                                         9.

CERTIFICATE OF SERVICE                                             10.

ANDREW J. WILLIAMS V. NIX HOLTSFORD GILLILAND,  CASE NO.

2030145

## CERTIFICATE OF INTERESTED PERSONS

JUDGE EUGENE REESE

MONTGOMERY COUNTY CIRCUIT COURT JUDGE

# CERTIFICATE OF TYPE SIZE STYLE

APPELLANT'S BRIEF UTILIZES A STANDARD TYPE SIZE NEW ROMAN FONT.

ANDREW J. WILLIAMS V. NIX HOLTSFORD GILLILAND, CASE NO. 2030145
APPELLENT's STATEMENT REGARDING ORAL ARGUMENT

THE APPELLENT MR. ANDREW WILLIAMS, REQUEST ORAL ARGUMENT ON JUD

MENT BY COURT OF CIVIL APPEAL CLAIMING THE JUDGEMENT WAS AN ABS

OLUTE ERROR BECAUSE THE CIRCUIT COURT INVALIDATED THE PUNITIVE

DAMAGES LAWS BY DECREEING A PENIURE SETTLEMENT AWARD IN THIS CA

SE. THE DEFENDENT TESTIMONY OF GUILT IN HIS DEPOSITION CALLED A

FFIRMATIVE ANWSERS DATED APRIL 17,2003 AVERS THAT THIS CASE COU

LD AWARD WELL OVER 250,000 DOLLARS. PLAINTIFF ALSO CLAIMS THAT

THE CIRCUIT COURT FAIL TO REVIEW A CERTIFIED COPY OF MEDICAL E

VALUATION FROM THE JACKSON HOSPITAL SHOWING DAMAGES OCCURRED.

STATEMENT OF JURISDITION

ENCYCLOPEDIA OF THE AMERICAN JUDICIAL SYSTEM BY ROBERT J. JANOSIK

JUSTIFACTION FOR APPELLATE

THE MOST BASIC JUSTIFOCATION FOR APPELLATE REVEIW IS STATED IN TE RMS OF THE DESIRE FOR UNIFORMITY OF DECISIONS AMONG THE TRIAL COU RTS. CHIEF JOHN J. PARKER EXPRESSED THIS POSITION IN THE FOLLOWIN G TERMS. THE JUDICIAL FUNCTION IN ITS ESSENCE IS THE APPLICATIONS OF THE RULES AND STANDREDS OF ORGANIZED SOCIETY TO THE SETTLEMENT OF CONTROVERSIES, AND FOR THERE TO BE ANY PROPER ADMINISTRATION O F JUSTICE THESE RULES AND STANDARD MUST BE APPLIED. NOT ONLY IMPA RTIALLY, BUT ALSO OBJECTIVELY AND UNIFORMILY THROUGH THE TERRITOR Y OF THE STATE. THIS REQUIRE THAT DECISION OF THE TRIAL COURT BE SUBJECT TO REVEIW BY A PANEL OF JUDGES WHO ARE REMOVED FROM THE H EAT ENGERDERED BY THE TRIAL AND ARE CONSEQUENTLY IN A POSITION T O TAKE A MORE OBJECTIVE VEIW OF THE QUESTION THERE RISE TO MAINT AIN UNIFORMITY OF DECISION THROUGOUT THE TERRITORY.

## STATEMENT OF THE ISSUES

A. WHY DO THIS CASE LINGERS IN PRECEEDING WHEN THE DEFENDEN T DID NOT ANWSER THE NOTICE OF APPEAL FILED INTO THE CIV IL COURT OF APPEAL, WHICH CLEARLY SHOWS A VIOLATION OF F EDERAL RULE 37 (B) (2) (B).

B. WHY DID THE CIRCUIT COURT JUDGE ISSUE A DECREE THAT INVA LIDATE SEVERAL IMPORTANT LAWS THAT PRETAIN TO INTENTIONA L NEGLIGENCE, SOME LAWS INCLUDE 6-11-20- AND 6-11-21 CIV IL PROCEDURE. ( PLEASE SEE ATTACHED COPY OF THE RULE)

C. WHY DID DEFENDENT ENTIRE TESTIMONY AT A HEARING SET ON O TOBER !6,2003 WAS A FALSE ACCOUNT OF THE ACCIDENT WHICH OCCURRED ON MARCH 11,2003. PLEASE REFER TO APPAELLANTS C OPLIANT FOR A MORE ACCURATE ACCOUNT OF THE ACCIDENT LOCA TED AT STATEMENT OF THE CASE ALSO CONSULT WITH THE EYE W ITNESS TO THE ACCIDENT NAMELY THE MONTGOMERY COUNTY ROAD DEPARTMENT WHOM WAS PERFORMING ROAD WORK ON THE SCENE.

D. WHY DID THE HONORABLE JUDGE CONSIDER A TOTAL WRECKAGE OF MY AUTOMOBILE AND DAMAGES TO MY BODY SUBSTANTIATE SUCH P ENIURE SETTLEMENT.

REASON FOR APPEAL

1. THE MONTGOMERY COUNTY CIRCUIT COURT ERRED IN RENDERING T HE DISMISSAL WITHOUT GROUND.

2. THE MONTGOMERY COUNTY CIRCUIT COURT ERRED TO RENDERED A DECISION THAT INVILIDATE ALABAMA STATE REGULATION 6-11- 20 AND 6-11-21.

3. THE MONTGOMERY COUNTY COURT ERRED WHEN CONSTRUING THE E FFECTIVENESS OF THE LAW. THE LAW GOVERNING PUNITIVE DAMA GES STATE THAT PUNITIVE DAMAGES MAY EXCEED 250,000. DOLL ARS WHEN A PATTERN OR PRATICE OF INTENTIONAL WRONGFUL CO NDUCT, EVEN THOUGH THE DAMAGE OR INJURY WAS INFLICTED ON LY ON PLAINTIFF.

4. PLAINTIFF CANNOT ACCEPT PENIURE AMOUNT FOR SETTLEMENT.

5. THE DEFENDENT HAS ENGAGAED A TOTAL WRECKAGA OF PLAINTIFF AUTOMOBILE.

6. THE DEFENDENT WEARS GLASSES.

7. IT IS UNPREDICTED THE MEDICAL THE IMPAIRMENT THAT PLAIN TIFF MAY OCCUR IN THE FUTURE.

8. THE DEFENDENT IN HIS AFFIRMATIVE ANWSERS DATED APRIL 17, 03, AVERS THAT AN AWARD OF PUNITIVE DAMAGES, IF ANY, IN IN THIS CASE MAY EXCEED TWO HUNDRED FIFTY THOUSAND DOLLA RS UNDER ALABAMA CODE 6-11-21.

## CONCLUSION

MR. ANDREW WILLIAMS REQUEST THIS COURT TO REVERSE THE ORDER
OF THE CIRCUIT COURT GRANTING THE PENIURE JUDGEMENT AND GRA
NT THE PLAINTIFF SUFFICIENT AMONT FOR PUNITIVE DAMAGES INCU
RRED AS STATUTORY BY LAWS SET FORTH.

# CERTIFICATE OF COMPLETION OF
# RECORD ON APPEAL BY TRIAL CLERK

TO THE CLERK OF THE: Court of Civil Appeals

DATE OF NOTICE OF APPEAL: **November 5, 2003**

APPELLANT: **Andrew Williams**

APPELLEE: **Nix Holtsford Gilliland & Huggins & Hitson, P.C.**

APPELLATE CASE NUMBER: 2030145

CIVIL ACTION NUMBER: CV-03-804

I certify that I have this date completed the record on appeal by assembling in 1 volume of 136 pages, the clerk's record, and that the record on appeal will be made available to the parties for the preparation of briefs.

I certify that a copy of this certificate will this date be served on counsel for each party[1] to the appeal.

DATED this 3rd day of December, 2003.

_____
Circuit Clerk
Montgomery County

_____

[1]Counsel for appellant is reminded that the appellant's brief is due to be filed with the clerk of the appellate court within 28 days from the date of this certificate.