IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

RECEIVED

2005 NOV -9  A 10: 45

_____

ANDREW JODDIE WILLIAMS            )
3886 CHRISTINE E. CURVE APT. 101  )
MONTGOMERY ALABAMA 36116          )
            Plaintiff(s),          )
                                   )          CIVIL ACTION NO.
            v.                     )
NIX HOLTSFORD GILLILAND            )
P.O. 4128 BOX                      )
MONTGOMERY ALABAMA 36103-4128      )
            Defendant(s).          )
                                   )

## COMPLAINT

1.    Plaintiff(s)' address and telephone number: # 3886 CHRISTINE E. CURVE
APARTMENT 101, MONTGOMERY ALABAMA 36116.  NO TELEPHONE NUMBER

2.    Name and address of defendant(s): NIX HOLTSFORD GILLILAND, HIGGINS
& HITSON P.C. P. O. BOX 4128 MONTGOMERY ALABAMA 36103-4128
334-215-8585

3.    Place of alleged violation of civil rights: 80 ROAD WEST, ONE MILE WEST OF
HAYNEVILLIE ROAD, HAYNEVILLIE ALABAMA.  AUTOMOBILE WREKAGE, A

4.    Date of alleged violation of civil rights: MARCH 11,2003

5.    State the facts on which you base your allegation that your constitutional rights have been
violated: NOT ANY RELIEF SOUGHT AFTER FILING THIS CASE INTO THRE
E LOWER COURT. PLAINTIFF PETITIONS THAT HIM RIGHTS WAS VIOLATED
WHEN DEFENDENT CRASHED INTO THE REAR END OF HIS AUTOMOBILE AND
KNOCKED IT 50 FT. FORWARD DAMAGEING NECK LOWER BACKBONE AND KNEES
ALSO LOSS OF MEMORY AND DRIVING PARANOIA. 9 PLEASE SEE APPELLENT
COMPLIANT)

1

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

RECEIVED

2005 NOV -9  A 10: 45

[stamp illegible]

ANDREW WILLIAMS                    )
3886 CHRISTINE E. CURVE            )
MONTGOMERY ALA. 36116 APT 101      )
                                   )
          Plaintiff(s)             )
                                   )
             v.                    )
                                   )
NIX HOLTSFORDS GILLILAND           )
P.O. BOX 4128                      )
MONTGOMERY ALABAMA 36103-4128      )
                                   )
          Defendant(s)             )

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff(s) _____ ANDREW WILLIAMS _____

moves this Honorable Court for an order allowing her/him to proceed in this case without

prepayment of fees, costs, or security therefor, and for grounds therefor submits the attached

sworn affidavit in support of the motion.

_Andrew Williams_
_____
Plaintiff(s) signature

6.   Relief requested:   ONE HUNDRED MILLIOM DOLLARS

Date: _November 9,2005_

_Andrew Williams_

_Andrew Williams_
**Plaintiff(s) Signature**

2

IN THE UNITED STATES
DISTRICT COURT

ANDREW WILLIAMS
3886 CHRISTINE ELIZABETH CURVE
MONTGOMERY ALABAMA 36116
APT 101
   APPELLENT

VERSES                                  CASE NO. 2"05cv1080-MEF-DRB

NIX HOLTSFORD GILLILAND,P.C.
HIGGINS & HITSON,P.C.
P.O. BOX 4128
MONTGOMERY ALABAMA 36103-4128
   DEFENDENT

---

### APPELLENT COMPLIANT

ON MARCH 11,2003 PLAINTIFF WAS DRIVING ON HIGHWAY 80 GOING WEST D
IRECTION, APPROXAMATLY ONE MILE WEST OF THE OLD HAYNEVILLIE ROAD
WHEN A LONG CAME THE DEFENDENT DRIVING ABOUT 90 TO 100 MILES PER
HOUR AND CRASHED INTO THE REAR END OF MY VEHICLES, THE DEFENDENT
WAS DRIVING IN THE SAME RIGH SIDE LANE AS PLAINTIFF, HIS AUTOMOBI
LE CRASHED DIRECTLY INTO MY REAR END. THE DEFENDENT DID APPLY BRA
KES AT ANY TIME BEFORE THE COLLISION IMPACT. THE CRASHED KNOCK MY
VEHICLE FORWARD ABOUT FIFTY FEET AND SPINNED IT AROUND TO THE EAS
T DIRECTION. THE DEFENDENT WAS DRIVING A FORD NINI VAN THAT WEIGH
T 7000 POUNDS. PLAINTIFF CAR WEIGHT ONLY 4300 POUNDS. PLAINTIFF R
EPORTED TO THE JACKSON HOSPITAL ON MARCH 12th,2003. A CERTIFIED C
OPY OF THESE RECORD SHOULD BE ORDERED. MY AUTOMOBILE WAS TOTALLY
WRECKAGE. A COPY OF THE POLICE MAN REPORT OF THE ACCIDENT ARE ATT
ACHED. MY AUTOMOBILE WAS TOWED TO THE WALDRIF WRECKAGE SERVICE IN
C" LOCATED AT 1540 NORTH RIPLEY STREET. PLAINTIFF ARE SUFFERING F
ROM NECK BONE PROBLEMS, BACKBONE PROBLEM, KNEE BONE PROBLEMS, DRI
VING PARANOIIS, WITH LOSS OF MEMOMORY.

*Andrew Williams*
*11-29-2005*

PAGE 6.

.Q 240  (Rev. 10/03)

# UNITED STATES DISTRICT COURT    RECEIVED

___ALABAMA___          **District of**     ~~OF UNITED STATES~~ 2005 NOV -9  A 10: 45

ANDREW WILLIAMS
    Plaintiff

**APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT**

        **V.**

NIX HOLTSFORDS GILLILAND

    **CASE NUMBER:**

    Defendant

_ANdREW WiLLiAMS_ _____ declare that I am the (check appropriate box)

⊠ petitioner/plaintiff/movant        ☐ other _____

n the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs
nder 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief
ought in the complaint/petition/motion.

n support of this application, I answer the following questions under penalty of perjury:

1.  Are you currently incarcerated?        ☐ Yes        ⊠ No        (If "No," go to Part 2)

    If "Yes," state the place of your incarceration _____ _NoNE_ _____

    Are you employed at the institution? _NO_  Do you receive any payment from the institution? _NO_

    Attach a ledger sheet from the institution(s) of your incarceration showing at least the past six months'
    transactions.

2.  Are you currently employed?        ☐ Yes        ⊠ No

    a.  If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name
        and address of your employer.  _NONE_

    b.  If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages
        and pay period and the name and address of your last employer.
        _JuNE 1984    2000 MoNtHly_

3.  In the past 12 twelve months have you received any money from any of the following sources?

    | | | Yes | No |
    |---|---|---|---|
    | a. | Business, profession or other self-employment | ☐ Yes | ⊠ No |
    | b. | Rent payments, interest or dividends | ☐ Yes | ⊠ No |
    | c. | Pensions, annuities or life insurance payments | ☐ Yes | ⊠ No |
    | d. | Disability or workers compensation payments | ⊠ Yes | ☐ No |
    | e. | Gifts or inheritances | ☐ Yes | ⊠ No |
    | f. | Any other sources | ☐ Yes | ⊠ No |

    If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the
    amount received and what you expect you will continue to receive.

240 Reverse (Rev. 10/03)

1110. DOllARS A MONTH
SOCIAl SECURITY DISABILITY

Do you have any cash or checking or savings accounts?        ☐ Yes        ☒ No

If "Yes," state the total amount.    NONE

Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value?        ☐ Yes        ☒ No

If "Yes," describe the property and state its value.

NONE

5.   List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

NONE

I declare under penalty of perjury that the above information is true and correct.

NOVEMBER 9 -05
Date

Andrew Williams
Signature of Applicant

**NOTICE TO PRISONER:** A Prisoner seeking to proceed without prepayment of fees shall submit an affidavit stating all assets. In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

PROOF OF SERVE

I ANDREW WILLIAMS DO CERTIFY THAT ON NOVEMBER 29,2005 I SERVED A
COPY OF THE ENCLOSED DOCUMENT TO THE ADDRESS BELOW.

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON, P.C.
P.O. BOX 4128
MONTGOMERY ALABAMA 36103-4128

*Andrew Williams*

11-29-2005

a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub. L. 98–353, title I, §104(a), July 10, 1984, 98 Stat. 340; amended Pub. L. 99–554, title I, §§143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 103–394. title I, §112, Oct. 22, 1994, 108 Stat. 4117.)

### AMENDMENTS

1994—Subsec. (e). Pub. L. 103–394 added subsec. (e).

1986—Subsec. (b)(2). Pub. L. 99–554, in subpar. (B) substituted "interests" for "interest" and inserted reference to chapter 12, and in subpar. (G) inserted a comma after "annul".

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22. 1994, and not applicable with respect to cases commenced under Title 11. Bankruptcy. before Oct. 22, 1994, see section 702 of Pub. L. 103–394. set out as a note under section 101 of Title 11.

### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of this title.

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 158 of this title; title 11 section 524.

### § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals[1]

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—

(A) there are insufficient judicial resources available in the circuit; or

(B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

(2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).

(B) On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

(3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

(6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

(c)(1) Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—

(A) the appellant elects at the time of filing the appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

(2) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(Added Pub. L. 98–353, title I, §104(a), July 10, 1984, 98 Stat. 341; amended Pub. L. 101–650, title III, §305, Dec. 1, 1990, 104 Stat. 5105; Pub. L. 103–394, title I, §§102, 104(c), (d), Oct. 22, 1994, 108 Stat. 4108–4110.)

### REFERENCES IN TEXT

The Bankruptcy Rules, referred to in subsec. (c)(2), are set out in the Appendix to Title 11, Bankruptcy.

---

[1] So in original. Probably should be followed by a dash.

## AMENDMENTS

1994—Subsec. (a). Pub. L. 103–394, §102, which directed the amendment of subsec. (a) by striking "from" the first place it appears and all that follows through "decrees," and inserting pars. (1) to (3), was executed by making the insertion and striking after "appeals" "from final judgments, orders, and decrees.", which is through "decrees," the first place appearing, to reflect the probable intent of Congress.

Subsec. (b)(1). Pub. L. 103–394, §104(c)(3), added par. (1) and struck out former par. (1) which read as follows: "The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section."

Subsec. (b)(2). Pub. L. 103–394, §104(c)(3), added par. (2). Former par. (2) redesignated (4).

Subsec. (b)(3). Pub. L. 103–394, §104(c)(1), (3), added par. (3) and struck out former par. (3) which read as follows: "No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district."

Subsec. (b)(4). Pub. L. 103–394, §104(c)(1), (2), redesignated par. (2) as (4) and struck out former par. (4) which read as follows: "A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title."

Subsec. (b)(5), (6). Pub. L. 103–394, §104(c)(4), added pars. (5) and (6).

Subsec. (c). Pub. L. 103–394, §104(d), designated existing provisions as par. (1) and added par. (2).

1990—Subsec. (b)(2) to (4). Pub. L. 101–650 added par. (2) and redesignated former pars. (2) and (3) as (3) and (4), respectively.

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 157, 1334, 1452 of this title; title 11 section 305.

## CHAPTER 7—UNITED STATES COURT OF FEDERAL CLAIMS

| Sec. | |
|------|---|
| 171. | Appointment and number of judges; character of court; designation of chief judge. |
| 172. | Tenure and salaries of judges. |
| 173. | Times and places of holding court. |
| 174. | Assignment of judges; decisions. |
| 175. | Official duty station; residence. |
| 176. | Removal from office. |
| 177. | Disbarment of removed judges. |
| 178. | Retirement of judges of the Court of Federal Claims. |
| 179. | Personnel application and insurance programs. |
| [180. | Repealed.] |

### AMENDMENTS

2000—Pub. L. 106–518, title III, §307(b), Nov. 13, 2000, 114 Stat. 2420, substituted "Personnel application and insurance programs" for "Insurance and annuities programs" in item 179.

Pub. L. 106–398, §1 [[div. A], title VI, §654(b)(2)], Oct. 30, 2000, 114 Stat. 1654, 1654A–165, struck out item 180 "Military retirement pay for retired judges".

1992—Pub. L. 102–572, title IX, §§902(a), 903(b), Oct. 29, 1992, 106 Stat. 4516, 4517, substituted "UNITED STATES COURT OF FEDERAL CLAIMS" for "UNITED

STATES CLAIMS COURT" as chapter heading, substituted "Court of Federal Claims" for "Claims Court" in item 178, and added items 179 and 180.

1990—Pub. L. 101–650, title III, §306(a)(2), Dec. 1, 1990, 104 Stat. 5109, added item 178.

1982—Pub. L. 97–164, title I, §105(a), Apr. 2, 1982, 96 Stat. 26, substituted "UNITED STATES CLAIMS COURT" for "COURT OF CLAIMS" as chapter heading, inserted "; designation of chief judge" in item 171, substituted "Tenure and salaries of judges" for "Precedence of judges" in item 172, substituted "Times and places of holding court" for "Tenure and salaries of judges" in item 173, substituted "Assignment of judges; decisions" for "Terms" in item 174, substituted "Official duty station; residence" for "Assignment of judges; divisions; hearings; quorum; decisions" in item 175, and added items 176 and 177.

1966—Pub. L. 89–425, §3, May 11, 1966, 80 Stat. 140, substituted "Assignment of judges; divisions; hearings; quorum; decisions" for "Quorum" in item 175.

1954—Act Sept. 3, 1954, ch. 1263, §38, 68 Stat. 1240, inserted "; character of court" in item 171.

### RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

See Appendix to this title.

### CHAPTER REFERRED TO IN OTHER SECTIONS

This chapter is referred to in title 5 section 8331.

## §171. Appointment and number of judges; character of court; designation of chief judge

(a) The President shall appoint, by and with the advice and consent of the Senate, sixteen judges who shall constitute a court of record known as the United States Court of Federal Claims. The court is declared to be a court established under article I of the Constitution of the United States.

(b) The President shall designate one of the judges of the Court of Federal Claims who is less than seventy years of age to serve as chief judge. The chief judge may continue to serve as such until he reaches the age of seventy years or until another judge is designated as chief judge by the President. After the designation of another judge to serve as chief judge, the former chief judge may continue to serve as a judge of the court for the balance of the term to which appointed.

(June 25, 1948, ch. 646, 62 Stat 898; July 28, 1953, ch. 253, §1, 67 Stat. 226; Sept. 3, 1954, ch. 1263, §39(a), 68 Stat. 1240; Pub. L. 89–425, §1(b), May 11, 1966, 80 Stat. 140; Pub. L. 97–164, title I, §105(a), Apr. 2, 1982, 96 Stat. 27; Pub. L. 102–572, title IX, §902(a), Oct. 29, 1992, 106 Stat. 4516.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed. §241 (Mar. 3, 1911, ch. 231, §136, 36 Stat. 1135; Feb. 25, 1919, ch. 29, §4, 40 Stat. 1157; Dec. 13, 1926, ch. 6, §1 44 Stat. 919).

This section contains a part of section 241 of title 28, U.S.C., 1940 ed. The remainder of such section, relating to tenure, salaries and oath, is incorporated in sections 173 and 453 of this title.

The term "chief judge" was substituted for "Chief Justice." (See reviser's note under section 136 of this title.)

Words "a court of record known as" were added. For similar provision covering other Federal courts, see sections 132, 211, and 251 of this title.

The official status of the Chief Justice of the Court of Claims holding office on the effective date of this act is preserved by section·2 of the bill to enact revised title 28.

§ 6-11-6                        DAMAGES                      § 6-11-20

## § 6-11-6. Damages not affected.

Nothing in this article shall be construed to alter or affect the nature, elements, form, or amount of damages recoverable in any action. (Acts 1987, No. 87-183, p. 245, § 6.)

## § 6-11-7. Prior rights not affected.

This article shall not affect the rights of any person if such rights accrued prior to June 11, 1987. (Acts 1987, No. 87-183, p. 245, § 8.)

ARTICLE 2.

PUNITIVE DAMAGES.

## § 6-11-20. Punitive damages not to be awarded other than where clear and convincing evidence proven; definitions.

(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.

(b) As used in this article, the following definitions shall apply:

(1) FRAUD. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

(2) MALICE. The intentional doing of a wrongful act without just cause or excuse, either:

a. With an intent to injure the person or property of another person or entity, or

b. Under such circumstances that the law will imply an evil intent.

(3) WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.

(4) CLEAR AND CONVINCING EVIDENCE. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.

(5) OPPRESSION. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights. (Acts 1987, No. 87-185, p. 251, § 1.)

977



"Conscious" is defined as "perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." "having an awareness of one's own existence, sensations, and thoughts, and of one's environment; capable of complex response to environment; deliberate." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

The word "deliberate" is defined as "well-advised: carefully considered, not sudden or rash; circumspect; slow in determining; formed. arrived at. or determined upon as a result of careful thought and weighing of considerations; careful in considering the consequences of a step," "characterized by or resulting from careful and thorough consideration; characterized by awareness of the consequences; slow, unhurried, and steady as though allowing time for decision on each individual action involved," "careful and slow in deciding or determining; not rashly or hastily determined." This must be proven by "clear and convincing evidence." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

"Reckless" is defined as "careless, heedless, inattentive: indifferent to consequences," "marked by lack of proper caution: careless of consequence," "having no regard for consequences: uncontrolled: wild." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

Wanton conduct is the conscious doing of some act or the omission of some duty by one who has knowledge of the existing conditions, and who is conscious that from the doing of such act or omission of such duty injury will likely or probably result. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct and negligence. — A finding of wanton conduct depends upon circumstances, and must be based upon facts beyond mere negligence. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness are qualitatively different tort concepts of actionable culpability. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

When a party alleges wanton conduct and seeks only compensatory damages, the conduct, in all cases filed after June 11, 1987, must be proved by "substantial evidence" which is evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct by car dealer. — Evidence, that an automobile sales manager, who approved the sale of the automobile to plaintiff, actually saw a truck hit the automobile, yet failed to disclose this information to plaintiff or to the salesman who sold the car and that car dealer had failed to disclose prior damages to other purchasers, was sufficient to support an inference by the jury that car dealer "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to" plaintiff. King Motor Co. v. Wilson, 612 So. 2d 1153 (Ala. 1992).

An award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Punitive damages may be awarded by the jury in a fraud action if the plaintiff makes a sufficient evidentiary showing that he has been injured as a result of the fraud and that the defendant's conduct warrants punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Assault and battery claim. — A plaintiff may be awarded punitive damages on an assault and battery claim only where the plaintiff shows by clear and convincing evidence that the assault and battery was coupled with an insult or other circumstances of aggravation or shows by clear and convincing evidence that the defendant consciously or deliberately engaged in the kind of activity mentioned in this section. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

Particularized circumstances of aggravation or insult must appear in cases of assault and battery if punitive damages are to be properly awarded. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

When presented with a motion to set aside a verdict awarding punitive damages only, the appropriate inquiry for the trial court in a fraud case is not whether there has been an award of compensatory or nominal damages but, instead, whether the evidence is sufficient to support a finding by the jury that the plaintiff was injured, at least nominally, by the defendant's wrongful actions and that the defendant's conduct is deserving of punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

For an expansive discussion of punitive damages, focusing on procedural applications, state constitutional implications, and recent case history, see Fuller v. Preferred Risk Life Ins. Co., 577 So. 2d 878 (Ala. 1991).

Cited in Shoals Ford, Inc. v. Clardy, 588 So. 2d 879 (Ala. 1991); Tombrello v. USX Corp., 763 F. Supp. 541 (N.D. Ala. 1991); Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992); ·

Case 2:05-cv-04598-HB    Document 5-2    Filed 11/29/2005    Page 12 of 22

Reserve Nat'l Ins. Co. v. Crowell. 614 So. 2d 1005 (Ala. 1993).

**Collateral references.** — Punitive damages: power of equity court to award. 58 ALR4th 844.

Standard of proof as to conduct underlying punitive damage awards — modern status. 58 ALR4th 878.

Punitive damages: relationship to defendant's wealth as factor in determining propriety of award. 87 ALR4th 141.

Plaintiff's rights to punitive or multiple damages when cause of action renders both available. 2 ALR5th 449.

## § 6-11-21. Punitive damages not to exceed $250,000; exceptions.

An award of punitive damages shall not exceed $250,000, unless it is based upon one or more of the following:

(1) A pattern or practice of intentional wrongful conduct, even though the damage or injury was inflicted only on the plaintiff; or,

(2) Conduct involving actual malice other than fraud or bad faith not a part of a pattern or practice; or,

(3) Libel, slander, or defamation. (Acts 1987, No. 87-185, p. 251, § 2.)

**Cap does not represent apportionment of damages among joint tort-feasors.** — The punitive damages cap under this section does not represent an apportionment of damages among joint tort-feasors. The purpose of punitive damages is to deter wrongful conduct and to punish those who may profit by such conduct. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

**Intent of legislature.** — In adopting the term "pattern" the Alabama Legislature intended for the courts to draw upon the interpretation of that term as set forth by the federal courts in the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961(5), litigation. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

**Cap not intended to fall by wayside in joint tort-feasors situation.** — The legislature did not intend for the statutory cap to fall by the wayside in the situation of joint tort-feasors. when one joint tort-feasor fits beneath the statutory cap and the other does not. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

**Conduct forms a pattern if it embraces** criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

**The acts which form a pattern need not** occur in separate schemes, but can occur in one scheme if they are temporally separate within that scheme; that is to say, if the acts are distinct and separate. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

**Where joint tort-feasors act with differing degrees of culpability.** — In the situation where joint tort-feasors act with differing degrees of culpability, so that one tort-feasor's conduct falls within the statutory exception to the cap on punitive damages under this section and the other's does not, then the statutory cap may apply to one tort-feasor and not to the other, without violating the rule against apportionment between joint tort-feasors. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

**Cited** in Toole v. McClintock, 778 F. Supp. 1543 (M.D. Ala. 1991).

**Collateral references.** — Right to prejudgment interest on punitive or multiple damages awards. 9 ALR5th 63.

9



## Comparative Negligence Standards

Comparative Negligence: In states that utilize comparative negligence theories, individuals may sue another motorist whether or not their own negligence played any role in the accident. However, recovery for damages will be reduced by the percentage of fault attributable to them. This situation is often referred to as "apportionment of fault" or "allocation of fault." For example, in the above example, assume that the turning driver sues the speeding motorist for $100,000 in damages. At trial, a jury will be asked to determine what percentage of the accident was caused by the speeding and what percentage of the accident was caused by the turning driver's failure to operate the turn signal. Assume further that the jury finds that the turning driver's own negligence contributed to the accident by 30 percent and the negligence of the other motorist contributed to the accident by 70 percent. If the jury agrees that damages are worth $100,000 the turning driver would only be able to recover $70,000 in damages (or $100,000 reduced by 30 percent caused by that driver's own negligence). If, conversely, the negligence was found to have contributed 70 percent to the accident, the driver could only recover $30,000 for the 30 percent fault for which the other tortfeasor was responsible. Again, this is true in states that apply a "pure" theory of comparative negligence. Other states have modified comparative negligence principles to permit a lawsuit only if a person is were less than 50 percent negligent.

## No-Fault Liability Systems

No-Fault Systems: In states that have statutorily established a "no-fault" system of liability for negligence, each person's own insurance company pays for his or her injury or damage, regardless of who is at fault. No-fault insurance liability coverage does not apportion damages or fault. However, it usually does not cover damage to the automobile, and separate collision coverage is needed. In states with NO FAULT systems, individuals may file suit only if certain threshold injuries have occurred or damages exceed insurance coverages.

## Components of an Automobile Insurance Policy

Depending on the state, automobile liability insurance policy may contain some or all of the following:

• Bodily Injury Liability: The insurer will pay damages when other persons are injured or killed in an accident for which the insured are at fault.

• PERSONAL INJURY Protection (PIP): The insurer will pay for the insured's injuries and other related damages to the insured and to passengers.

• Property Damage Liability: The insurer will pay damages when the property of other persons has been harmed or destroyed by the insured's vehicle and the insured is at fault.

• Collision Coverage: The insurer will pay for damages to the insured's own vehicle, when the insured is at fault. If the insured's vehicle is financed, the loaner may require the insured to maintain collision coverage on the vehicle.

• Comprehensive Coverage: The insurer will pay for damages to the insured's automobile caused by fire, theft, VANDALISM, acts of God, riots, and certain other perils. If the insured's vehicle is financed, the loaner may require the insured to maintain comprehensive coverage on the vehicle.

• Uninsured/Underinsured Motorist (UM/UIM) Coverage: The insurer will pay for injury or death to the insured and the insured's passengers if caused by an uninsured or underinsured tortfeasor or a hit-and-run motorist. In some states, the insurer will also pay for damage to the insured's vehicle. An uninsured at-fault tortfeasor may be sued and his or her personal assets attached to satisfy any judgment.

## When Accidents Occur

The following points may assist individuals in the event that they are involved in a motor vehicle accident:

### In a Rental or Leased Vehicle

In a Rental or Leased Vehicle: In most states, individuals' own insurance policy will protect them for any automobile that they are driving. There is no need to purchase additional insurance from the automobile rental or leasing company unless they wish to increase their coverage, e.g., add collision coverage.

### When a Pedestrian or Bicyclist is Hit

When a Pedestrian or Bicyclist is Hit: In some states, there is a presumption of fault if drivers strike a pedestrian or bicyclist, for want of care and defen-

mind and indicates a particular reason why the person has failed to perform a duty—namely, because the person has not kept the duty in mind. See J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 108 n.1 (16th ed. 1952). See **negligence (A).**

**neglectful; neglective.** The latter is a NEEDLESS VARIANT that is rare or obsolete.

**negligible; negligeable.** The latter spelling should be avoided.

**negligence. A. Senses.** In general usage, *negligence* means "carelessness." But in legal usage, *negligence* = (1) the failure to exercise the standard of care that the doer as a reasonable person should have exercised in the circumstances; (2) undue indifference toward the consequences of one's act; or (3) a tort that includes the notions of duty, breach of that duty (unreasonable conduct), and resultant damage.

The term has various gradations: "Negligence in law ranges from inadvertence that is hardly more than accidental to sinful disregard of the safety of others." Patrick Devlin, *The Enforcement of Morals* 36 (1968). *Ordinary* or *simple negligence* is usu. sufficient to establish liability in a tort action. *Criminal* or *gross negligence* is usu. required before the court will impose a penalty. The phrase *gross negligence* has the disadvantage of applying both in civil actions (to increase damages) and in criminal actions (to establish criminal liability); many criminal lawyers therefore prefer *criminal negligence* in criminal-law contexts.

**B. And** *neglect.* See **neglect.**

**C. And** *negligency.* The word *negligency* is a NEEDLESS VARIANT of *negligence.*

**negligent neglect.** See **neglect.**

**negotiability; assignability.** These two terms are related but distinct. The two major ways in which *negotiability* differs from *assignability* are: (1) no notice need be given of the transfer of a negotiable instrument; and (2) the transfer of such an instrument is not subject to equitable remedies (i.e., from a claimant who might assert a right to or under the instrument). See **assignment & negotiable instrument.**

**negotiable instrument; commercial paper.** These terms are not interchangeable. *Commercial paper* is now the more widely used term in the U.S. because of its use in article three of the Uniform Commercial Code. As to the precise distinction, *commercial paper* is the broader term: it may include nonnegotiable as well as negotiable paper, whereas *negotiable instruments* are by definition negotiable ones only.

Generally, a writing is *negotiable* when it is signed by the maker or drawer; contains an unconditional promise or order to pay a sum certain in money, and no other promise, obligation, or power given by the maker or drawer; is payable on demand or at a definite time; and is payable to order or to bearer. The absence of any one of these elements makes commercial paper nonnegotiable.

**negotiate** = (1) to discuss or conduct a business transaction, such as a contract or sale; or (2) to transfer (a negotiable instrument [q.v.], such as a note or bond) in a way that makes the transferee the legal owner of the instrument. E.g., sense (2): "When a cheque is transferred, whether by delivery or endorsement, it is said to be negotiated, and negotiation is a kind of transfer [that] differs in important respects from the ordinary assignment of a contractual right." William Geldart, *Introduction to English Law* 124 (D.C.M. Yardley ed., 9th ed. 1984).

**neither . . . nor. A. Singular or Plural Verb.** When one of the two subjects is singular, and the other is plural, the verb takes its number from the closer subject. Thus, the verb is invariably singular if the second alternative is singular— e.g.: "*Neither the speed* at which the car was *traveling* [read *Neither the car's speed*] nor its operation through a red light *are* [read *is*] enough to make out a case against appellants provided there was no reckless disregard for the safety of others."/ "Neither of these views *are* [read *is*] acceptable." H.L.A. Hart, "Negligence, *Mens Rea,* and Criminal Responsibility," in *Punishment and Responsibility: Essays in the Philosophy of Law* 136, 150 (1968)./ "Neither hanging the governor in effigy nor hanging the governor *are* [read *is*] speech . . . ." Steven J. Burton, *An Introduction to Law and Legal Reasoning* 70 (1985). See SUBJECT-VERB AGREEMENT (E).

Moreover, the verb should match the nearest subject in number and person. Sometimes the correct form is admittedly awkward—e.g.: "Neither you nor I *is* [read *am*] likely to change the world . . . ." Jefferson D. Bates, *Writing with Precision* 82 (rev. ed. 1988).

**B. Number of Elements.** These CORRELATIVE CONJUNCTIONS should frame only two elements, not more; though it is possible to find modern and historical examples of *neither . . . nor* with more than two members, such constructions are, in Wilson Follett's words, "short of punctilious." E.g.,

11

EMERGENCY DEPARTMENT
NURSING RECORD

DATE: 3/13/03
TIME: 1327

JACKSON HOSPITAL

ACCOUNT# 10532029    H/R # 17-23-47
WILLIAMS,ANDREW
SEX - M  BORN 12/06/1949  F/C M EDM
G ARRISON,NORMAN A.    ROOM

## PRETX

| | | | |
|---|---|---|---|
| IV | cc/hr | ☐ 02 @ | ☐ BACKBOARD | ☐ SPLINT | ☐ Other |
| SITE | | ☐ ETT SIZE | ☐ COLLAR | ☐ BANDAGES | |
| ☐ PCR | | ☐ CPR | ☐ SANDBAGS | ☐ FOLEY SIZE | |

## MEDICAL/SOCIAL HX

**MEDICAL:**
☐ ASTHMA  ☐ HTN
☐ CANCER  ☐ RENAL DISEASE
☐ CARDIAC  ☐ NONE
☐ COPD
☐ CVA
☐ DIABETES
☐ FAMILY CARDIAC HISTORY

**MUSCULOSKELETAL:**
Status no problems /
arthritic disease / decrease
in strength / diminished
mobility

**PSYCHIATRIC:**
Prevalent Psychiatric history
/ Bipolar disorder / depression / suicidal / lives alone / family support

**SCREENINGS:**
Nutritional:
States no problems /
Normal nutrition /
recent weight loss /
weight gain /
appears well nourished /
Appears under nourished.

**SOCIAL:**
☐ ALCOHOL nearly
☐ DRUGS
☐ SMOKES

## CARDIOVASCULAR

MONITOR ☐ YES ☐ NO    RHYTHM _____ SEE STRIP

**SKIN CONDITION**
☐ INTACT    ☐ BROKEN
☐ WARM      ☐ COOL
☐ HOT.      ☐ CLAMMY
☐ MOIST     ☐ DRY
☐ DIAPHORETIC  ☐ DECUBITUS
☐ RASH

**EDEMA**
☐ LEGS  ☐ ANKLES
☐ OTHER  ☐ FEET

PULSES        R    L
PEDAL
POST TIBIAL
RADIAL

**SKIN COLOR**
☐ NORMAL
☐ DUSKY   ☐ PINK
☐ FLUSHED  ☐ CYANOTIC
☐ PALE    ☐ JAUNDICED

ABSENT - PRESENT +

CAPILLARY REFILL
<3 SEC ☐  >3 SEC. ☐

**SKIN TURGOR**
☐ GOOD    ☐ DECREASED
☐ POOR    ☐ OTHER

**AFFECTED AREA**
1. N/A
2. ABRASIONS
3. BURNS
4. CONTUSION
5. DECUBITUS
6. LACERATION
7. PAIN
8. PUNCTURE
9. RASH
10. OTHER

## RESPIRATORY

**RESPIRATIONS**
☐ NON-LABORED
☐ LABORED
☐ HYPERVENTILATION
☐ OTHER

**COUGH**
☐ NONE
☐ NON-PRODUCTIVE
☐ PRODUCTIVE
☐ HIGH RISK TB

**BREATH SOUNDS**
|  | R | L |  | R | L |
|---|---|---|---|---|---|
| CLEAR/EQUAL | ☐ | ☐ | ABSENT | ☐ | ☐ |
| WHEEZES | ☐ | ☐ | RALES/CRACKLES | ☐ | ☐ |
| DIMINISHED | ☐ | ☐ | RHONCHI | ☐ | ☐ |

## NEUROVASCULAR

**LOC**
☐ ALERT
☐ DROWSY
☐ UNRESPONSIVE
☐ ORIENTED
  ☐ PERSON  ☐ TIME
  ☐ PLACE   ☐ EVENT

**SPEECH**
☐ CLEAR
☐ SLURRED
☐ OTHER

**RESPONSE TO STIMULI**
☐ VERBAL
☐ TACTILE
☐ PAIN
☐ UNRESPONSIVE

**MOTOR/SENSORY**
| | RIGHT | | LEFT | |
|---|---|---|---|---|
| | M | S | M | S |
| GOOD | | | | |
| DECREASED | | | | |
| ABSENT | | | | |

**PUPILS**
2  3  4  5  6  7  8  9
|  | RIGHT | LEFT |
|---|---|---|
| REACTIVE | | |
| SIZE | | |

### GLASGOW COMA SCALE

| Areas of Response | Points |
|---|---|
| **Eye Opening** | |
| Eyes open spontaneously | 4 |
| Eyes open in response to voice | 3 |
| Eyes open in response to pain | 2 |
| **Best verbal response** | |
| Oriented, e.g., to person, place, time | 5 |
| Confused, speaks but is disoriented | 4 |
| Inappropriate, but comprehensible words | 3 |
| Incomprehensible sounds but no words are spoken | 2 |
| None | 1 |
| **Best Motor Response** | |
| Obeys command to move | 6 |
| Localizes painful stimulus | 5 |
| Withdraws from painful stimulus | 4 |
| Flexion, abnormal decorticate posturing | 3 |
| Extension, abnormal decerebrate posturing | 2 |
| No movement or posturing | 1 |
| **Total Possible Points** | 3-15 |
| Major Head Injury | ≤8 |
| Moderate Head Injury | 9-12 |
| Minor Head Injury | 13-15 |

## GI/GU

**BOWEL SOUNDS**
☐ NORMAL
☐ HYPOACTIVE
☐ HYPERACTIVE
☐ ABSENT

**ABDOMEN**
☐ SOFT
☐ FIRM
☐ DISTENDED
☐ TENDER
☐ NON-TENDER

**PAIN LOCATION**
☐ N/A
☐ RUQ
☐ LUQ
☐ RLQ
☐ LLQ

**BOWEL ACTIVITY**
☐ DENIES COMPLAINT
☐ DIARRHEA
☐ CONSTIPATION

**URINATION**
☐ DENIES COMPLAINT
☐ PAIN/BURNING
☐ FREQUENCY
☐ HEMATURIA
☐ INCONTINENCE

**GENITAL**
☐ DENIES COMPLAINT
☐ DISCHARGE
☐ LESION

## COMMENTS:

☐ N/A

## PLAN OF CARE

**NURSING DIAGNOSIS**
☐ ALTERED TEMP, ALT OF
☐ BODY TEMP, ALT OF
...

**NEURO STATUS,**
ALT OF
☐ NON-COMPLIANCE
☐ PAIN, ACUTE/CHRONIC
☐ INJURY, POTENTIAL FOR ...
☐ TISSUE PERFUSION
   ALT OF, POTENTIAL

**INTERVENTIONS**
☐ ACCUCHECK
☐ ANTIPYRETICS
☐ ASPIRATION PRECAUTIONS
☐ BLEEDING CONTROL
☐ COMFORT MEASURES
...

**SEIZURE PRECAUTION**
☐ SPLINT/SLING
☐ SUICIDE PRECAUTION
☐ TEACHING (ITEMIZE)
☐ VISUAL ACUITY

☐ ALERT     ☐ UNCOOPERATIVE
☐ ORIENTED  ☐ COMBATIVE
☐ CALM      ☐ OTHER
☐ COOPERATIVE
☐ CONFUSED
☐ ANXIOUS

**SIDE RAILS**
☐ 2 RESTRAINTS (See attached)
☐ SEE POSITION 2
☐ BED POSITION LOW
☐ FAMILY AT BEDSIDE
☐ OTHER

CODES

SAFETY EQUIPMENT

Unit 1 — 12 - Pedestrian / 13 - Rider of Domestic Animal / 14 - Occ. of Non-Motorized Vehicle / 15 - Victim of Other Circumstance/Codes Not Applicable

Other Involved Safety Equipment:

Unit 2 — 12 - Pedestrian / 13 - Rider of Domestic Animal / 14 - Occ. of Non-Motorized Vehicle / 15 - Victim of Other Circumstance/Codes Not Applicable

Other Involved Safety Equipment:

| | Unit No | Seat Pos | Injury Type | Age | Sex | Ejec- tion | First Aid By |
|---|---|---|---|---|---|---|---|
| Name | | | | | | | |
| Address | | | | | | | |
| Taken To | | Taken By | | | | | |

**Injury Type** — : - Killed / 1 - Bruise/Abrasion/Swelling / A - Visible or Carried from Scene / C - Not Visible—Has Pain/Faint

**Diagram**

Grassy Median

US 80-Westbound Lanes -23°

Diagram Not To Scale

Driver's Opinion of What Happened: Unit 1 and 2 were traveling west on US 80 in the right lane when Unit 1 misjudged his stopping distance and struck Unit 2 in the left lane...

**Vision Obscured By / Traffic Control / Light / Weather / Locale** (checkbox sections)

Time Notified: 12:39 MT   Time Police Arrived: 12:55 MT   Time EMS Arrived: N/A   Name of Photographer: N/A   Owner: N/A

Investigating Officer: N/A

Other Investigating Officer(s) at Scene: D. Allen   Officer ID: 350   Agency ORI: ALAST0300

58²

Date: 03/11/2003

13

# AL__MA UNIFORM TRAFFIC ACCIDENT REPORT

Sheet ___ of ___ Sheet(s)   Microfilm No. _____   Local Case No. _____

| Date | Time | Day of Week | County | City | Rural | Highway Classification | Local Zone |
|---|---|---|---|---|---|---|---|
| 13/11/2003 | 12:32 | S S | 03 | 00 | X | I—Interstate S—State M—Municipal F—Federal C—County P—Private Prop. O—Other | |

On Street, Road or Highway: **US 80**

At Intersection or Between (Node 1): **Felder Road**   And (Node 2): **Mitchell Young Rd.**

| Street or Road Code | Node Code | Node Code | | Feet From | | COLLISION EVENT |
|---|---|---|---|---|---|---|
| S008 | 7320 | 7319 | US 80 | | | |

| Intersection Related | Mile Post | Control Access | 1 - Main Rd | 3 - Interchange | 5 - Exit Ramp | Prime Contr. Circms | Prime Contr. Unit No |
|---|---|---|---|---|---|---|---|
| Node 1   Not Int. Related | V 2/4/0/0 | Hwvy 2 - Frontage Rd | 4 - Entrance Ramp | N/A | 25 | | |

First Harmful Event: **20**   Event Location: ___   Distance to Fixed Object: ___ FT.   No. Vehicles: **2**   No. Pedestrians: **0**   No. Injured: **1**   No. Fatalities: **0**   Unit: **1**   Type ___   No. Type ___

## Driver 1

Driver Full Name: **Hubert Braden**   Street Address: **773 Linwood Place**   City and State: **Forest Park, GA**   Zip: **30297**   Telephone No: **(770) 366-6447**

| DOB | Race | Sex | DL State | Driver License No. | DL Class | DL Status | List Restrictions Not Complied With | CDL Status | List Endorsements Not Complied With | Residence Less Than 25 Miles |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 05 1936 | W | M | GA | 049 327 149 | CM | C | | N | | Yes  No |

Place of Employment: **Retired**   Liability Insurance Co.: **None**   Social Security No.: **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**

| Driver Condition | Sobriety | Officer's Opinion | Alcohol | Drugs | Type Test Given | 1 - Blood Test | 2 - Breath Test | 3 - Urine Test | 4 - Unable to Administer | Refused Test | Test Results |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 - No Defect   2 - Apparently Asleep | | Yes No Unk | Yes No Unk | No Test | | | | | | | N/A |

| Maneuver/Action | Travel Road Name | Road Code | Travel Direction | Other Contr. Circumstances | Prime Harm Event | Event Loc. |
|---|---|---|---|---|---|---|
| 18 | US 80 | S008 | N E S W -Not on Rd U-Unk | 27 | 20 | |

| Year | Make | Model | Body | V.I.N. | License Tag Number | State | Year |
|---|---|---|---|---|---|---|---|
| 1992 | FORD | AER | VA | 1FMDA31X4NZB61753 | 432 SSF | GA | 2003 |

Owner's Name: **Same**   Street or R.F.D. ___ City ___ State ___ ZIP ___

| Type | Usage | Hazardous Cargo | Attachment | Contributing Defect | Circle areas Damaged On Diagram |
|---|---|---|---|---|---|
| 1 - Auto   11 - Moped   2 - Sta.Wagon   12 - M. Scooter   3 - Pick Up   13 - Pedal Cycle   4 - Van   14 - Farm Mach.   5 - Truck Tractor   15 - Train   6 - Other Truck   16 - Road Equip.   7 - Comm. Bus   17 - Ridden Animal   8 - School Bus   18 - M. Home (R.V.)   9 - Other Bus   19 - ATV   10 - Motorcycle   98 - Other | Personal   2 - Driver Trng.   3 - Construction   4 - Ambulance/Paramedical   5 - Military   6 - Taxi   7 - Transport Prop.   8 - Agriculture   9 - Wrecker/Tow   10 - Police   11 - Other Business   12 - Bus/Pass. Transport.   13 - Fire Fighting   98 - Other | None   1 - Explosive   2 - Missile Home   3 - Gas   4 - Flam./Combust Liq.   5 - Flammable Solids   6 - Oxidizer/Peroxide   7 - Poison   8 - Radioactive Matl.   9 - Corrosive Material   98 - Other | None   1 - Camper Trailer   2 - Towed Vehicle   3 - Semi Trailer   4 - Utility Trailer   5 - 4-Wheel Trailer   6 - Boat Trailer   98 - Other | None   1 - Brakes   2 - Steering   3 - Power Plant   4 - Suspension   5 - Tires   6 - Exhaust   7 - Lights   8 - Turn Signal   9 - Windows/W. Shield   10 - Restraint Sys.   11 - Wheels   12 - Truck Coupling   13 - Cargo   14 - Fuel System   98 - Other   99 - Unknown | Under Carriage |

| Oversize Load (Req. Permit) | If Yes, Did Owner Have Permit? | Occupants in Unit | Total Injuries In Unit | Enter Point of Initial Impact |
|---|---|---|---|---|
| Yes No | Yes No | 1 | 0 | 1 |

| Speed Limit | Est. Speed | Citation Offense Charged | Damage Severity | Vehicle Towed Away? | |
|---|---|---|---|---|---|
| 65 MPH | 50 MPH | No Liability Insurance | 1 - None Visible   1 - Disabled | Yes No | |

Vehicle Towed By Whom: **N/A**   To Where: **N/A**

## Driver 2

Driver/Pedestrian Full Name: **Andrew Jaddie Williams**   Street Address: **1259 Seth Johnson Drive**   City and State: **Montgomery AL**   Zip: **30116**   Telephone No.: **None**

| DOB | Race | Sex | DL State | Driver License No. | DL Class | DL Status | List Restrictions Not Complied With | CDL Status | List Endorsements Not Complied With | Residence Less Than 25 Miles |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 06 1944 | B | M | AL | 6241776 | | | | N | | Yes  No |

Place of Employment: **Retired**   Liability Insurance Co.: **None**   Social Security No.: **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**

| Driver/Ped Condition | Sobriety | Officer's Opinion | Alcohol | Drugs | Type Test | 1 - Blood Test | 2 - Breath Test | 3 - Urine Test | 4 - Unable to Administer | Refused Test | Test Results |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 - No Defect   2 - Apparently Asleep   3 - Fatigued   4 - Ill | | Yes No Unk | Yes No Unk | No Test | | | | | | | N/A |

| Maneuver/Action | Travel Road Name | Road Code | Travel Direction | Other Contr. Circumstances | Prime Harm Event | Event Loc. |
|---|---|---|---|---|---|---|
| | US 80 | S008 | N E S W -Not on Rd U-Unk | 27 | | |

| Year | Make | Model | Body | V.I.N. | License Tag Number | State | Year |
|---|---|---|---|---|---|---|---|
| 1993 | FORD | F150 | 20 | 1FTPT06H8P6100449 | 3B2540A | AL | 2003 |

Owner's Name: **Same**   Street or R.F.D. ___ City ___ State ___ ZIP ___

| Type | Usage | Hazardous Cargo | Attachment | Contributing Defect | Circle areas Damaged On Diagram |
|---|---|---|---|---|---|
| 1 - Auto   11 - Moped   2 - Sta.Wagon   12 - M. Scooter   3 - Pick Up   13 - Pedal Cycle   4 - Van   14 - Farm Mach.   5 - Truck Tractor   15 - Train   6 - Other Truck   16 - Road Equip.   7 - Comm. Bus   17 - Ridden Animal   8 - School Bus   18 - M. Home (R.V.)   9 - Other Bus   19 - ATV   98 - Other | Personal   2 - Driver Trng.   3 - Construction   4 - Ambulance/Paramedical   5 - Military   6 - Taxi   7 - Transport Prop.   8 - Agriculture   9 - Wrecker/Tow   10 - Police   11 - Other Business   12 - Bus/Pass. Transport.   13 - Fire Fighting   98 - Other | None   1 - Explosive   2 - Mobile Home   3 - Gas   4 - Flam./Combust Liq.   5 - Flammable Solids   6 - Oxidizer/Peroxide   7 - Poison   8 - Radioactive Matl.   9 - Corrosive Material   98 - Other | None   1 - Camper Trailer   2 - Towed Vehicle   3 - Semi Trailer   4 - Tanker   5 - 4-Wheel Trailer   6 - Boat Trailer   98 - Other | None   1 - Brakes   2 - Steering   3 - Power Plant   4 - Suspension   5 - Tires   6 - Exhaust   7 - Lights   8 - Turn Signal   9 - Windows/W. Shield   10 - Restraint Sys.   11 - Wheels   12 - Truck Coupling   13 - Cargo   14 - Fuel System   99 - Unknown | Under Carriage |

| Oversize Load (Req. Permit) | If Yes, Did Owner Have Permit? | Occupants in Unit | Total Injuries In Unit | Enter Point of Initial Impact |
|---|---|---|---|---|
| Yes No | Yes No | 1 | 1 | 5 |

| Speed Limit | Est. Speed | Citation Offense Charged | Damage Severity | Vehicle Towed Away? | |
|---|---|---|---|---|---|
| 65 MPH | 30 MPH | No Liability Insurance | 1 - None Visible   Disabled | Yes No | |

Vehicle Towed By Whom: **Wildin's Wrecker Service**   To Where: **Montgomery, AL**



jurisdiction" are placed before clause (1) rather than at the end of clause (4), as in the source provision, to reflect the probable intent of Congress.

AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26101 of this title as this section.

## § 28102. Limit on certain accident or incident liability

(a) GENERAL.—When a publicly financed commuter transportation authority established under Virginia law makes a contract to indemnify Amtrak for liability for operations conducted by or for the authority or to indemnify a rail carrier over whose tracks those operations are conducted, liability against Amtrak, the authority, or the carrier for all claims (including punitive damages) arising from an accident or incident in the District of Columbia related to those operations may not be more than the limits of the liability coverage the authority maintains to indemnify Amtrak or the carrier.

(b) MINIMUM REQUIRED LIABILITY COVERAGE.— A publicly financed commuter transportation authority referred to in subsection (a) of this section must maintain a total minimum liability coverage of at least $200,000,000.

(c) EFFECTIVENESS.—This section is effective only after Amtrak or a rail carrier seeking an indemnification contract under this section makes an operating agreement with a publicly financed commuter transportation authority established under Virginia law to provide access to its property for revenue transportation related to the operations of the authority.

(Pub. L. 103–272, § 1(e), July 5, 1994, 108 Stat. 940, § 26102; renumbered § 28102, Pub. L. 103–440, title I, § 103(a)(1), Nov. 2, 1994, 108 Stat. 4616.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 26102(a) ...... | 45:649(a) (1st sentence). | Oct. 30, 1970, Pub. L. 91–518, 84 Stat. 1327, §810; added July 6, 1990, Pub. L. 101–322, §3, 104 Stat. 295. |
| 26102(b) ...... | 45:649(a) (last sentence). | |
| 26102(c) ...... | 45:649(b). | |

In subsection (a), the words "Notwithstanding any other provision of law", "whether for compensatory or", and "occurring" are omitted as surplus.

In subsection (c), the words "an indemnification contract" are substituted for "coverage" for clarity.

AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26102 of this title as this section.

## § 28103. Limitations on rail passenger transportation liability

(a) LIMITATIONS.—(1) Notwithstanding any other statutory or common law or public policy, or the nature of the conduct giving rise to damages or liability, in a suit for personal injury to a passenger, death of a passenger, or damage to property of a passenger arising from or in connection with the provision of rail passenger transportation, or from or in connection with any rail passenger transportation operations over, or rail passenger transportation use of

right-of-way or facilities owned, leased, or maintained by any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State, punitive damages, to the extent permitted by applicable State law, may be awarded in connection with any such claim only if the plaintiff establishes by clear and convincing evidence that the harm that is the subject of the action was the result of conduct carried out by the defendant with a conscious, flagrant indifference to the rights or safety of others. If, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, this paragraph shall not apply.

(2) The aggregate allowable awards to all rail passengers, against all defendants, for all claims, including claims for punitive damages, arising from a single accident or incident, shall not exceed $200,000,000.

(b) CONTRACTUAL OBLIGATIONS.—A provider of rail passenger transportation may enter into contracts that allocate financial responsibility for claims.

(c) MANDATORY COVERAGE.—Amtrak shall maintain a total minimum liability coverage for claims through insurance and self-insurance of at least $200,000,000 per accident or incident.

(d) EFFECT ON OTHER LAWS.—This section shall not affect the damages that may be recovered under the Act of April 27, 1908 (45 U.S.C. 51 et seq.; popularly known as the "Federal Employers' Liability Act") or under any workers compensation Act.

(e) DEFINITION.—For purposes of this section—

(1) the term "claim" means a claim made—

(A) against Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State; or

(B) against an officer, employee, affiliate engaged in railroad operations, or agent, of Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, or any rail carrier, or any State;

(2) the term "punitive damages" means damages awarded against any person or entity to punish or deter such person or entity, or others, from engaging in similar behavior in the future; and

(3) the term "rail carrier" includes a person providing excursion, scenic, or museum train service, and an owner or operator of a privately owned rail passenger car.

(Added Pub. L. 105–134, title I, § 161(a), Dec. 2, 1997, 111 Stat. 2577.)

REFERENCES IN TEXT

The Federal Employers' Liability Act, referred to in subsec. (d), is act Apr. 22, 1908, ch. 149, 35 Stat. 65, as amended, which is classified generally to chapter 2 (§ 51 et seq.) of Title 45, Railroads. For complete classification of this Act to the Code, see Short Title note set out under section 51 of Title 45 and Tables.

## CHAPTER 283—STANDARD WORK DAY

Sec.
28301.          General.
28302.          Penalties.

## § 28301. General

(a) EIGHT HOUR DAY.—In contracts for labor and service, 8 hours shall be a day's work and the standard day's work for determining the compensation for services of an employee employed by a common carrier by railroad subject to subtitle IV of this title and actually engaged in any capacity in operating trains used for transporting passengers or property on railroads from—

(1) a State of the United States or the District of Columbia to any other State or the District of Columbia;

(2) one place in a territory or possession of the United States to another place in the same territory or possession;

(3) a place in the United States to an adjacent foreign country; or

(4) a place in the United States through a foreign country to any other place in the United States.

(b) APPLICATION.—Subsection (a) of this section—

(1) does not apply to—

(A) an independently owned and operated railroad not exceeding one hundred miles in length;

(B) an electric street railroad; and

(C) an electric interurban railroad; but

(2) does apply to an independently owned and operated railroad less than one hundred miles in length—

(A) whose principal business is leasing or providing terminal or transfer facilities to other railroads; or

(B) engaged in transfers of freight between railroads or between railroads and industrial plants.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28301 | 45:65. (uncodified). | Sept. 3, 5, 1916, ch. 436, § 1, 39 Stat. 721. Sept. 3, 5, 1916, ch. 436, §§ 2, 3, 39 Stat. 721. |

In subsection (a), the word "determining" is substituted for "reckoning" for clarity. The words "who are not or may hereafter be employed" are omitted as surplus. In clause (1), the words "or territory" are omitted because the existing territories of the United States are now connected to the United States by rail. In clause (2), the words "or possession of the United States" are added for consistency in the revised title and with other titles of the United States Code.

The text of sections 2 and 3 of the Act of September 3, 5, 1916 (ch. 436, 39 Stat. 721), is omitted to eliminate executed provisions.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 28302 of this title.

## § 28302. Penalties

A person violating section 28301 of this title shall be fined under title 18, imprisoned not more than one year, or both.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28302 | 45:66. | Sept. 3, 5, 1916, ch. 436, § 4, 39 Stat. 722. |

The words "shall be guilty of a misdemeanor" are omitted, and the words "shall be fined under title 18" are substituted for "shall be fined not less than $100 and not more than $1,000," for consistency with title 18. The words "upon conviction" are omitted as surplus.

# SUBTITLE VI—MOTOR VEHICLE AND DRIVER PROGRAMS

## PART A—GENERAL

| Chapter | | Sec. |
|---|---|---|
| 301. | Motor Vehicle Safety | 30101 |
| 303. | National Driver Register | 30301 |
| 305. | National Motor Vehicle Title Information System | 30501 |

### PART B—COMMERCIAL

| | | |
|---|---|---|
| 311. | Commercial Motor Vehicle Safety | 31101 |
| 313. | Commercial Motor Vehicle Operators | 31301 |
| 315. | Motor Carrier Safety | 31501 |
| 317. | Participation in International Registration Plan and International Fuel Tax Agreement | 31701 |

### PART C—INFORMATION, STANDARDS, AND REQUIREMENTS

| | | |
|---|---|---|
| 321. | General | 32101 |
| 323. | Consumer Information | 32301 |
| 325. | Bumper Standards | 32501 |
| 327. | Odometers | 32701 |
| 329. | Automobile Fuel Economy | 32901 |
| 331. | Theft Prevention | 33101 |

AMENDMENTS

1997—Pub. L. 105–102, § 2(17), Nov. 20, 1997, 111 Stat. 2205, substituted "National Motor Vehicle Title Information System" for "National Automobile Title Information System" in item for chapter 305.

## PART A—GENERAL

## CHAPTER 301—MOTOR VEHICLE SAFETY

SUBCHAPTER I—GENERAL

| Sec. | |
|---|---|
| 30101. | Purpose and policy. |
| 30102. | Definitions. |
| 30103. | Relationship to other laws. |
| 30104. | Authorization of appropriations. |
| 30105. | Restriction on lobbying activities. |

SUBCHAPTER II—STANDARDS AND COMPLIANCE

| | |
|---|---|
| 30111. | Standards. |
| 30112. | Prohibitions on manufacturing, selling, and importing noncomplying motor vehicles and equipment. |
| 30113. | General exemptions. |
| 30114. | Special exemptions. |
| 30115. | Certification of compliance. |
| 30116. | Defects and noncompliance found before sale to purchaser. |
| 30117. | Providing information to, and maintaining records on, purchasers. |
| 30118. | Notification of defects and noncompliance. |
| 30119. | Notification procedures. |
| 30120. | Remedies for defects and noncompliance. |
| 30121. | Provisional notification and civil actions to enforce. |

However, after studying the case, President Adams pardoned him and the other insurgents. Soon after his pardon, Fries was promoted from captain to lieutenant colonel in the Montgomery County, Pennsylvania, militia.

Justice Chase's conduct in Fries's second trial was harshly criticized as indirectly depriving Fries of counsel. The justice's actions were used against him in 1805, in an unsuccessful IMPEACHMENT proceeding.

FURTHER READINGS

Elsmere, Jane Shaffer. 1979. "The Trials of John Fries." *Pennsylvania Magazine of History and Biography* 103 (October).

Presser, Stephen. 1978. "A Tale of Two Judges. . . ." *Northwestern University Law Review* 73 (March/April).

CROSS-REFERENCES

Whiskey Rebellion.

## FRISK

*A term used in* CRIMINAL LAW *to refer to the superficial running of the hands over the body of an individual by a law enforcement agent or official in order to determine whether such individual is holding an illegal object, such as a weapon or narcotics. A frisk is distinguishable from a search, which is a more extensive examination of an individual.*

CROSS-REFERENCES

Stop and Frisk.

## FRIVOLOUS

*Of minimal importance; legally worthless.*

A *frivolous suit* is one without any legal merit. In some cases, such an action might be brought in bad faith for the purpose of harrassing the defendant. In such a case, the individual bringing the frivolous suit might be liable for damages for MALICIOUS PROSECUTION.

A *frivolous appeal* is one that is completely lacking merit, since no reviewable question has been raised therein.

## FROLIC

*Activities performed by an employee during working hours that are not considered to be in the course of his or her employment, since they are for the employee's personal purposes only.*

The doctrine of RESPONDEAT SUPERIOR makes a principal liable for the TORTS of his or her agent occurring during the course of employment. This is based on the concept that a principal has control over his or her agent's behavior. If an agent was hired to drive from point A to point B, and, through reckless driving, hit a pedestrian along the way, the principal would ordinarily be held liable. If, however, the agent was engaged in frolic, the principal would not be liable. This might occur, for example, if an employee were hired to transport goods from point A to point B and made several detours along the way for personal reasons. If the employee became involved in an accident while on a frolic, the employer would not be liable unless it could be established that he or she was negligent in the hiring or supervision of the employee.

## FRONTIERO V. RICHARDSON

The fight to end gender discrimination in the U.S. began in the nineteenth century with the women's suffrage movement and the enactment of laws that protected the property that women brought into marriages. By the 1960s, the focus had shifted to ending pay and benefit discrimination based on gender. By the early 1970s, Congress had passed the EQUAL RIGHTS AMENDMENT (ERA) of the U.S. Constitution, which proclaimed equality between the genders. Ratification appeared close by 1973, as 38 states had ratified the ERA. The court system also became an arena for the issue of gender discrimination. The U.S. Supreme Court began to consider cases of gender discrimination but hesitated to place gender in the same category as race or ethnicity as a SUSPECT CLASSIFICATION inviting the most rigorous constitutional review. However, a plurality of the court endorsed gender as a suspect classification in *Frontiero v. Richardson,* 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed.2d 583 (1973). This important case pushed the Court, and society in general, to recognize the legal disabilities that women had lived with for centuries. Though not a landmark decision, *Frontiero* signaled the willingness of the high court to take gender issues seriously.

The facts of the case illustrated the disparate treatment built into U.S. society concerning the role of women. Sharron Frontiero was a U.S. Air Force officer who was married to Joseph Frontiero, a full-time student at a college near the Alabama base where Sharron was stationed. Congress had passed a law that provided fringe

**IMMEDIATE** *(Not distant), adjective*
abutting, adjacent, adjoining, at hand, bordering, bounding, close, close at hand, conjoining, conterminous, contiguous, handy, juxtapositional, near, near by, neighboring, next to, proximate, verging
ASSOCIATED CONCEPTS: immediate beneficiaries, immediate benefit, immediate cause, immediate consequences, immediate control, immediate damage, immediate delivery, immediate irreparable harm, immediate legatees, immediate need, immediate transferor

**IMMERSE** *(Engross), verb*
absorb, attend, be attentive, bury, engage, enthrall, fascinate, grip, hold, hold spellbound, interest, involve, monopolize, occupy, overwhelm, preoccupy, submerge, take up

**IMMERSE** *(Plunge into), verb*
bathe, cover with water, deluge, dip, douse, drench, drown, duck, dunk, engulf, flood, insert, inundate, place under a liquid, plunge into a liquid, put under water, send to the bottom, sink, soak, souse, steep, submerge, submerse, swamp, thrust under

**IMMIGRATION**, *noun*
admission of foreigners, *adventus*, change of national location, colonization, entry of aliens, establishment of foreign residence, expatriation, foreign influx, incoming population, ingress, migration, movement of population, transmigration
ASSOCIATED CONCEPTS: issuance of visas, passports

**IMMINENT**, *adjective*
about to be, about to happen, alarming, approaching, at hand, brewing, closing in, coming, destined, drawing near, expected, following, forecasted, forthcoming, future, *imminere*, impendent, *impendere*, impending, in store, in the offing, in the wind, in view, instant, likely to happen, looming, menacing, minatorial, minatory, near, near at hand, nearing, next, ominous, on the way, oncoming, overhanging, portentous, *praesens*, predicted, prospective, threatening, threatening harm, upcoming
ASSOCIATED CONCEPTS: imminent danger, imminent irreparable harm, imminent peril

**IMMORAL**, *adjective*
amoral, arrant, bad, base, conscienceless, corrupt, criminal, debauched, degenerate, depraved, dishonest, dishonorable, disreputable, dissipated, dissolute, evil, exploitative, false, flagitious, graceless, heinous, ignoble, illaudable, illegal, illicit, improper, impure, indecent, iniquitous, knavish, lacking morals, lecherous, lewd, libidinous, licentious, *male moratus*, miscreant, nefarious, objectionable, *perditus*, pernicious, perverted, pettifogging, *pravus*, profligate, promiscuous, prurient, reprobate, roguish, salacious, shameless, shocking, sinful, unchaste, unconscionable, unethical, unjustifiable, unlawful, unmoral, unprincipled, unrighteous, unscrupulous, unvirtuous, unwholesome, wicked, without integrity, wrong
ASSOCIATED CONCEPTS: immoral act, immoral agreement, immoral conduct, immoral consideration, immoral contract, obscenity
FOREIGN PHRASES: *Ex turpi causa non oritur actio.* No cause of action arises out of an immoral or illegal consideration.

**IMMOVABLE**, *noun*
affixed property, fixed assets, fixed chattel, fixed property, fixture, *immobilis, immotus*, land, property permanently affixed to the realty, real estate, real property, *stabilis*

**IMMUNE**, *adjective*
absolved, armored, clear, excused, exempt, free, granted amnesty, *immunis*, immunized, impregnable, inaccessible, inexpugnable, inviolable, invulnerable, not accountable, not answerable, not liable, not responsible, not subject, possessed of immunity, privileged, protected, released, safe, screened, sheltered, shielded, spared, unaccountable, unaffected by, unanswerable, unassailable, unattackable, under shelter, unencumbered, unexposed, unliable, unpunishable, unrestrained, unrestricted, unsubject, unsusceptible, unthreatened, untouchable, untouched, without risk
ASSOCIATED CONCEPTS: immune from prosecution

**IMMUNITY**, *noun*
absolution, acquittal, charter, commutation, discharge, exception, exculpation, exemption, exemption from punishment, franchise, freedom, freedom from exemption, freedom from obligation, freedom from prosecution, *immunitas*, liberation, liberty, license, nonliability, privilege, protection, release, release from charge, release from duty, relief, reprieve, respite, safety from prosecution, special privilege, *vacatio*
ASSOCIATED CONCEPTS: absolute immunity, complete immunity, derivative immunity, full transactional immunity, full waiver, governmental immunity, immunity from arrest, immunity from prosecution, immunity from service of process, limited immunity, limited waiver, partial immunity, privileges and immunities, qualified immunity, state immunity, transactional immunity, use and derivative immunity, use immunity, waiver of immunity

**IMMURE**, *verb*
cast into prison, commit to an institution, commit to prison, confine, constrain, detain, encage, enclose, enclose within walls, entomb, gate, hold, hold captive, hold in captivity, hold in check, hold within bounds, impound, imprison, incarcerate, *includere*, isolate, keep in, keep in captivity, keep in check, keep in custody, keep in detention, keep prisoner, keep under arrest, keep within bounds, lay under restraint, lead into captivity, lock in, lock up, make captive, put under arrest, quarantine, restrain, seal up, seclude, send to prison, shelter, shut up, take captive, take into custody, throw into prison, wall up

**IMMUTABLE**, *adjective*
adamant, ageless, confirmed, *constans*, constant, continual, continuous, durable, eternal, firm, fixed, immovable, *immutabilis*, implacable, incontrovertible, indestructible, inexorable, inflexible, intractable, invariable, irremovable, irrevocable, never changing, never varying, nonelastic, not to be changed, not to be moved, obstinate, perennial, permanent, perpetual, persistent, relentless, riveted, rooted, settled, *stabilis*, static, steadfast, steady, stiff, unaging, unalterable, unbending, unchangeable, unchanging, uncompromising, undeviating, undying, unending, unmalleable, unpliable, unrelenting, untractable, unyielding, vested
ASSOCIATED CONCEPTS: immutable principle of law

FEDREAL RULE z509 FROM THE AMERICAN JURISPRUDENCE
FACTORS AND MERCHANT COMMISSION
FEDERAL RULE BOOK 1-664

x509
GENERALLY
  AN APPLICATION FOR LEAVE TO PRECEED IN FORMA PAUPERIS MUST BE AC
COMPANIED BY AN AFFIDVVIT SHOWING (1) THE APPLICANTS INABILITY TO
PAY FEES AND COST, OR GIVE SECURITY THEREFORE: (20 A STATEMENT OF
THE NATURE OF THE ACTION , DEFENSE OR APPEAL: AND (30 A STATEMENT
OF THE APPLLICANTS BELIEF THAT HE IS ENTITLED TO REDRESS. WHERE N
O AFFIDAVIT IS MADE LEAVE TO PRECEED IN FORME PAUPERIS WILL BE DE
NIED: ONE WHO MAKE AN AFFIDAVIT EXPOSES HIMSELF TO THE PAINS OF P
ERJURY IN THE CASE OF BAD FAITH: THEREFORE IT IS ESSENTIAL THAT T
HE AFFIDAVIT STATE THE FACT AS TO THE APPLICANTS POVERTY WITH SOM
E PARTICULARITY DEFINITENETS, AND CERTAINTY.