RECEIVED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

2005 DEC -8  P 1: 35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

2:05cv1080

**Plaintiff,**
ANDREW WILLIAMS
       vs.
NIX HOLTSFORGS GILLIAND
& HIGGINS & HITSON,P.C.

**Defendant.**

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. <u>LOWER COURT</u>
2;cv1080-F

<u>NOTICE OF APPEAL</u>

Notice is hereby given that ___<u>ANDREW WILLIAMS</u>_____

above named, hereby appeals to the United States Court of Appeals for the Eleventh

Circuit from the <u>ORDER_____</u> entered in this action on the __5___ day of

<u>DECEMBER_____</u>, 19 <u>2005</u>

*Andrew Williams*
Signature

*December 8 2006*
Date of Signature

*3886 Christine Elizabeth Curve #701*

*Montgomery Alabama 36116*
Address

1.

TABLE OF CONTENT

PAGE

1. COVER SHEET UNITED STATES DISTRICT COURT
2. LEAD SHEET: APPELLENT
3. GROUNDS FOR APPEAL
4. APPELLENTS COMPLIANT
5. motion to proceed in forma pauperis
6. APPLICATION TO PROCEED WITHOUT PREPAYMENT
7. APPLICATION CONTINUE
8. RULE 1291, GROUNDS FOR U.S. COURT OF APPEAL JURISDICTION
9. JURISDICTION RIGHTS CONTINUE
10. CONSTITUTIONAL RIGHTS TO APPEAL INTO U.S. DISTRICT COURT
11. JURISDICTION RIGHTS TO APPEAL U.S. DICTRICT COURT CONTINUE
12. APPELLENTS OBJECTION TO U.S. DISTRICT COURT ORDER DATED NOV18, 05.
13. OBJECTION MIGISTRATEORDER CONTINUE
14. APPELLENTS COMPLIANT U.S. DISTRICT COURT
15. RELIEF REQUESTED U.S. DISTRICT COURT
16 MOTION TO PROCEED U.S. DISTRICT COURT
17. APPLICATION TO PROCEED U.S. DISTRICT COURT
18. APPLICATION TO PROCEED CONTINUE
20. STATURES PUNITIVE DAMAGES 6-11-20 ALABAMA STATE CODES
21. ALABAMA STATE CODES 611-20 CONTINUS
22. PUNITIVE DAMAGES STATURES 6-11-21 ALABAMA STATE CODES
23. 6-11-21 ALABAMA STATES CODES CONTINUE
24. CODES CONTINUE
25. MEDICAL REPORT FROM THE JACKSON HOSPITAL
26. policeman accident report of the auto wreckage
27, POLICEMAN REPORT OF WRECKAGE CONTINUE
28. CONSTITUTIONAL REGULATIONGOVERNING AUTO ACCIDENT LIABILITY
29. LIABILITY CONTINUE
30. EXSPLAINATION OF FRIVOLOUS CASES
31. EXSPLAINATION CASES INVOLVING IMMUNE
32. FEDERAL RULE 509 GROUNDING AFFIDAVIT TO PROCEED
33. UNITED STATES DISTRICT COURT ORDER DATED DECEMBER 5.2005
34. ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE
35. MAGISTRATE ORDER CONTINUE
36, MAGISTRATE ORDER CONTINUE

PROOF OF SERVE

I ANDREW WILLIAMS DO CERTIFY THAT I SERVED A COPY OF THE ENCLOSED
DOCUMENT ON DECEMBER 8 ,2006 BY PLACING IT INTO MAILING POSTAGE P
REPAID TO: NIX HOLTSFORD GILLILAND
          HIGGINS & HITSON P.C.
          P.O. BOX 4128
          montgomery alabama 36103-4128


*Andrew Williams*
*December 8, 2006*

IN THE UNITED STATES
COURT OF APPEAL

ANDREW WILLIAMS
3886 CHRISTINE ELIZABETH CURVE
APT 101
MONTGOMERY ALABAMA 36116
  PLAINTIFF

VERSES                                LOWER COURT NO. 2.cv1080-F

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON P.C.
p. o. bOX 4128
MONTGOMERY ALABAMA 36103-4128
  DEFENDENT

---

APPELLENTS COMPLIANT

ON MARCH 11,2003 PLAINTIFF WAS DRIVING ON HIGHWAY 80 GOING WEST D
IRECTION, APPROXAMATLY ONE MILE WEST OF THE OLD HAYNEVILLIE ROAD
WHEN A LONG CAME THE DEFENDENT DRIVING ABOUT 90 TO 100 MILES PER
OUR AND CRASHED INTO THE REAR END OF MY VEHICLES, THE DEFENDENT W
AS DRIVING IN THE SAME RIGHT SIDE LANE AS PLAINTIFF. HIS AUTOMOBI
LE CRASHED DIRECTLY INTO THE CENTER OF MY REAR END. THE DEFENDENT
DID DID NOT APPLY BRAKES AT ANY TIME BEFORE THE COLLISION IMPACT.
THE CRASHED KNOCKED MYVEHICLE FORWARD ABOUT FIFTY FEET AND SPINNE
D IT AROUND TO THE EAST DIRECTION. THR DEFENDENT WAS DRIVING A FO
RD MINI VAN THAT WEIGHT 7000 POUNDS. PLAINTIFF AUTOMOBILE WEIGHT
WAS 4300 pounds. plaintiff REPORTED TO THE JACKSON HOSPITAL ON MA
RCH 12th 2003. A CERTIFIED COPY OF THESE RECORD SHOULD BE ORDREED
FROM THE HOSPITAL LOCATED ON PINE STREET HERE IN MONTGOMERY ALABA
MA. MY AUTOMOBILE WAS A TOTALLY WRECKAGE. A COPY OF THE POLICEMAN
REPORT OF THE ACCIDENT ARE ATTACHED. MY AUTOMOBILE WAS TOWED TO T
O THE WALDRIF WRECKAGE SERVICE INC: LOCATED AT 1540 NORTH RIPLEY
STREET. PLAINTIFF ARE SUFFERING FROM NECK BONE PROBLEMS BACKBONE
PROBLEMS KNEEBONE PROBLEMS, DRIVING PARANOIA, WITH LOSS OF MOMEMO
RY.

*Andrew Williams*
*December 8 2006*

4.

Sec.
[1293. Repealed.]
1294. Circuits in which decisions reviewable.
1295. Jurisdiction of the United States Court of Appeals for the Federal Circuit.
1296. Review of certain agency actions.

AMENDMENTS

1996—Pub. L. 104–331, §3(a)(2), Oct. 26, 1996, 110 Stat. 4069, added item 1296.

1984—Pub. L. 98–620, title IV, §402(29)(C), Nov. 8, 1984, 98 Stat. 3359, struck out item 1296 "Precedence of cases in the United States Court of Appeals for the Federal Circuit".

1982—Pub. L. 97–164, title I, §127(b), Apr. 2, 1982, 96 Stat. 39, added items 1295 and 1296.

1978—Pub. L. 95–598, title II, §236(b), Nov. 6, 1978, 92 Stat. 2667, directed the addition of item 1293, "Bankruptcy appeals", which amendment did not become effective pursuant to section 402(b) of Pub. L. 95–598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

1961—Pub. L. 87–189, §4, Aug. 30, 1961, 75 Stat. 417, struck out item 1293 "Final decisions of Puerto Rico and Hawaii Supreme Courts".

CHAPTER REFERRED TO IN OTHER SECTIONS

This chapter is referred to in title 22 section 1631e; title 29 sections 1813, 1853, 1854; title 42 section 300gg–22.

§ 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, §48, 65 Stat. 726; Pub. L. 85–508, §12(e), July 7, 1958, 72 Stat. 348; Pub. L. 97–164, title I, §124, Apr. 2, 1982, 96 Stat. 36.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§225(a), 933(a)(1), and section 1356 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions, and sections 61 and 62 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §128, 36 Stat. 1133; Aug. 24, 1912, ch. 390, §9, 37 Stat. 566; Jan. 28, 1915, ch. 22, §2, 38 Stat. 804; Feb. 7, 1925, ch. 150, 43 Stat. 813; Sept. 21, 1922, ch. 370, §3, 42 Stat. 1006; Feb. 13, 1925, ch. 229, §1, 43 Stat. 936; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54; May 17, 1932, ch. 190, 47 Stat. 158; Feb. 16, 1933, ch. 91, §3, 47 Stat. 817; May 31, 1935, ch. 160, 49 Stat. 313; June 20, 1938, ch. 526, 52 Stat. 779; Aug. 2, 1946, ch. 753, §412(a)(1), 60 Stat. 844).

This section rephrases and simplifies paragraphs "First", "Second", and "Third" of section 225(a) of title 28, U.S.C., which referred to each Territory and Possession separately, and to sections 61 and 62 of the Canal Zone Code. section 933(a)(1) of said title relating to jurisdiction of appeals in tort claims cases, and the provisions of section 1356 of title 48, U.S.C., 1940 ed., relating to jurisdiction of appeals from final judgments of the district court for the Canal Zone.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.)

Paragraph "Fourth" of section 225(a) of title 28, U.S.C., 1940 ed., is incorporated in section 1293 of this title.

Words "Fifth. In the United States Court for China, in all cases" in said section 225(a) were omitted. (See reviser's note under section 411 of this title.)

Venue provisions of section 1356 of title 48, U.S.C., 1940 ed., are incorporated in section 1295 of this title.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1295 of this title.

In addition to the jurisdiction conferred by this chapter, the courts of appeals also have appellate jurisdiction in proceedings under Title 11, Bankruptcy, and jurisdiction to review:

(1) Orders of the Secretary of the Treasury denying an application for, suspending, revoking, or annulling a basic permit under chapter 8 of title 27;

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title 33, U.S.C., 1940 ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;

(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title 19, U.S.C., 1940 ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.

AMENDMENTS

1982—Pub. L. 97–164, §124, inserted "(other than the United States Court of Appeals for the Federal Cir-

cuit)'' after ''The court of appeals'' and inserted provision that the jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

1958—Pub. L. 85–508 struck out provisions which gave courts of appeals jurisdiction of appeals from District Court for Territory of Alaska. See section 81A of this title which establishes a United States District Court for the State of Alaska.

1951—Act Oct. 31, 1951, inserted reference to District Court of Guam.

EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c.16 as required by sections 1 and 8(c) of Pub. L. 85–508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the ''transition period'', being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 1295, 1334, 1452, 2072 of this title; title 11 section 305; title 15 sections 29, 57b–1, 78aa, 79y, 80a–43, 80b–14, 1314, 1719; title 16 sections 825p, 1456; title 18 section 3145; title 31 section 3733; title 39 section 3016; title 42 sections 2000e–5, 3414; title 45 sections 153, 719, 743, 1105; title 50 App. section 17.

§ 1292. Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

(2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4)(A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the Dis-

Case 2:05-cv-01080-MEF-DRB    Document 7    Filed 12/08/2005    Page 7 of 32

a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 340; amended Pub. L. 99–554, title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 103–394, title I, § 112, Oct. 22, 1994, 108 Stat. 4117.)

### AMENDMENTS

1994—Subsec. (e). Pub. L. 103–394 added subsec. (e).

1986—Subsec. (b)(2). Pub. L. 99–554, in subpar. (B) substituted "interests" for "interest" and inserted reference to chapter 12, and in subpar. (G) inserted a comma after "annul".

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of this title.

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 158 of this title; title 11 section 524.

## § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals[1]
   (1) from final judgments, orders, and decrees;
   (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
   (3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—
   (A) there are insufficient judicial resources available in the circuit; or
   (B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

   (2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).
   (B) On the request of a majority of the district judges in a circuit for which a bankruptcy appel-

late panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

   (C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

   (D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

   (3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

   (4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

   (5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

   (6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

   (c)(1) Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—
   (A) the appellant elects at the time of filing the appeal; or
   (B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

   (2) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

   (d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 341; amended Pub. L. 101–650, title III, § 305, Dec. 1, 1990, 104 Stat. 5105; Pub. L. 103–394, title I, §§ 102, 104(c), (d), Oct. 22, 1994, 108 Stat. 4108–4110.)

### REFERENCES IN TEXT

The Bankruptcy Rules, referred to in subsec. (c)(2), are set out in the Appendix to Title 11, Bankruptcy.

---
[1] So in original. Probably should be followed by a dash.

## AMENDMENTS

1994—Subsec. (a). Pub. L. 103–394, §102, which directed the amendment of subsec. (a) by striking "from" the first place it appears and all that follows through "decrees." and inserting pars. (1) to (3), was executed by making the insertion and striking after "appeals" "from final judgments, orders, and decrees.", which is through "decrees." the first place appearing, to reflect the probable intent of Congress.

Subsec. (b)(1). Pub. L. 103–394, §104(c)(3), added par. (1) and struck out former par. (1) which read as follows: "The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section."

Subsec. (b)(2). Pub. L. 103–394, §104(c)(3), added par. (2). Former par. (2) redesignated (4).

Subsec. (b)(3). Pub. L. 103–394, §104(c)(1), (3), added par. (3) and struck out former par. (3) which read as follows: "No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district."

Subsec. (b)(4). Pub. L. 103–394, §104(c)(1), (2), redesignated par. (2) as (4) and struck out former par. (4) which read as follows: "A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title."

Subsec. (b)(5), (6). Pub. L. 103–394, §104(c)(4), added pars. (5) and (6).

Subsec. (c). Pub. L. 103–394, §104(d), designated existing provisions as par. (2) and added par. (1).

1990—Subsec. (b)(2) to (4). Pub. L. 101–650 added par. (2) and redesignated former pars. (2) and (3) as (3) and (4), respectively.

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 157, 1334, 1452 of this title; title 11 section 305.

## CHAPTER 7—UNITED STATES COURT OF FEDERAL CLAIMS

Sec.
171.   Appointment and number of judges; character of court; designation of chief judge.
172.   Tenure and salaries of judges.
173.   Times and places of holding court.
174.   Assignment of judges; decisions.
175.   Official duty station; residence.
176.   Removal from office.
177.   Disbarment of removed judges.
178.   Retirement of judges of the Court of Federal Claims.
179.   Personnel application and insurance programs.
[180.   Repealed.]

### AMENDMENTS

2000—Pub. L. 106–518, title III, §309(b), Nov. 13, 2000, 114 Stat. 2420, substituted "Personnel application and insurance programs" for "Insurance and annuities programs" in item 179.

Pub. L. 106–398, §1 [[div. A], title VI, §654(b)(2)], Oct. 30, 2000, 114 Stat. 1654, 1654A–165, struck out item 180 "Military retirement pay for retired judges".

1992—Pub. L. 102–572, title IX, §§902(a), 903(b), Oct. 29, 1992, 106 Stat. 4516, 4517, substituted "UNITED STATES COURT OF FEDERAL CLAIMS" for "UNITED

STATES CLAIMS COURT" as chapter heading, substituted "Court of Federal Claims" for "Claims Court" in item 178, and added items 179 and 180.

1990—Pub. L. 101–650, title III, §306(a)(2), Dec. 1, 1990, 104 Stat. 5109, added item 178.

1982—Pub. L. 97–164, title I, §105(a), Apr. 2, 1982, 96 Stat. 26, substituted "UNITED STATES CLAIMS COURT" for "COURT OF CLAIMS" as chapter heading, inserted "; designation of chief judge" in item 171, substituted "Tenure and salaries of judges" for "Precedence of judges" in item 172, substituted "Times and places of holding court" for "Tenure and salaries of judges" in item 173, substituted "Assignment of judges; decisions" for "Terms" in item 174, substituted "Official duty station; residence" for "Assignment of judges; divisions; hearings; quorum; decisions" in item 175, and added items 176 and 177.

1966—Pub. L. 89–425, §3, May 11, 1966, 80 Stat. 140, substituted "Assignment of judges; divisions; hearings; quorum; decisions" for "Quorum" in item 175.

1954—Act Sept. 3, 1954, ch. 1263, §38, 68 Stat. 1240, inserted "; character of court" in item 171.

### RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS

See Appendix to this title.

### CHAPTER REFERRED TO IN OTHER SECTIONS

This chapter is referred to in title 5 section 8331.

## §171. Appointment and number of judges; character of court; designation of chief judge

(a) The President shall appoint, by and with the advice and consent of the Senate, sixteen judges who shall constitute a court of record known as the United States Court of Federal Claims. The court is declared to be a court established under article I of the Constitution of the United States.

(b) The President shall designate one of the judges of the Court of Federal Claims who is less than seventy years of age to serve as chief judge. The chief judge may continue to serve as such until he reaches the age of seventy years or until another judge is designated as chief judge by the President. After the designation of another judge to serve as chief judge, the former chief judge may continue to serve as a judge of the court for the balance of the term to which appointed.

(June 25, 1948, ch. 646, 62 Stat 898; July 28, 1953, ch. 253, §1, 67 Stat. 226; Sept. 3, 1954, ch. 1263, §39(a), 68 Stat. 1240; Pub. L. 89–425, §1(b), May 11, 1966, 80 Stat. 140; Pub. L. 97–164, title I, §105(a), Apr. 2, 1982, 96 Stat. 27; Pub. L. 102–572, title IX, §902(a), Oct. 29, 1992, 106 Stat. 4516.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed. §241 (Mar. 3, 1911, ch. 231, §136, 36 Stat. 1135; Feb. 25, 1919, ch. 29, §4, 40 Stat. 1157; Dec. 13, 1926, ch. 6, §1 44 Stat. 919).

This section contains a part of section 241 of title 28, U.S.C., 1940 ed. The remainder of such section, relating to tenure, salaries and oath, is incorporated in sections 173 and 453 of this title.

The term "chief judge" was substituted for "Chief Justice." (See reviser's note under section 136 of this title.)

Words "a court of record known as" were added. For similar provision covering other Federal courts, see sections 132, 211, and 251 of this title.

The official status of the Chief Justice of the Court of Claims holding office on the effective date of this act is preserved by section 2 of the bill to enact revised title 28.

IN THE UNITED STATES
DISTRICT COURT

ANDREW WILLIAMS
3886 CHRISTINE ELIZABETH CURVE
MONTGOMERY ALABAMA 36116
APT. 101
    APPELLENT

RECEIVED

2005 NOV 29  A 11: 56

VERSES

CASE NO. 2:05cv1080-MEF__
DRB

NIX HOLTSFORD GILLILAND
HIGGINS & HITSON, P.C.
P.O.BOX 4128
MONTGOMERY ALABAMA 36103-4128
    DEFENDENT

---

OBJECTION
TO MAGISTRATE ORDER

1. APPELLENT OBJECTION TO UNITED STATES MAGISTRATE RECOMMENDATION
   ORDER DATED NOVEMBER 18,2005, ON GROUND OF PLAIN ERROR AND MAN
   IFEST INJECTICE. CASE EXAMPLE ARE NETTLES V. WAINWRIGHT, 667F.
   2d404(5thCURCUIT.1982) SEE STEIN V. REYNOLDS SECURITIES,INC. 6
   67 F.2d 33 (11th circuit 1982). SEE ALSO BONNER V. CITY OF PIC
   HARD, 661F.2d 1206 (11th CIRCUIT 1981,en banc0), ADOPTING AS B
   INDING PRECENT.

2. THE ROOKER FELDMAN DOCTRINE HAS NOT ANY VALIDATION WHEN COMPAR
   E WITH UNITED STATES CONSTITUTION RULE 158 WHICH DEFINES APPEL
   LENT JURISDICTION TO A UNITED STATES DISTRICT COURT FOR APPEAL
   S OF FINAL JUDGEMENT OR DECREES. PLEASE SEE U,S. RULE ATTACHED

3. THE U. S. DISTRICT COURT GROUNDS FOR DISMISSAL ARE RULE 1915(e
   0)(2)(B). THESE GROUNDS INVALIDATES THE ATTACHED RULES FOR PUN
   ITIVE DAMAGES THAT OCCURR IN INTENTIONAL AUTOMOBILE WRECKAGE.
   SEE RULE 6-11-20 AND 6-11-21 IN THIS FILING.

4. THE ATTACHED REGULATION  6-11-20 AND 6-11-21 LOCATED ON PAGES
   7,8,9,10, and 11 STATES APPELLENT CLAIMS FOR RELEIF. ALSO REDE
   FER TO MEDICAL REPORT FROM THE JACKSON HOSPITAL OF MONTGOMERY
   ON PAGE 12, ALSO SE POLICE REPORT OF ACCIDENT ON PAGE 13. SEE
   ATTACHMENT CALLED APPELLENTS COMPLIANT.

5. PLAINTIFF FILING INTO U.S. DISTRICT COURT SEEKS A SEPERATE RUL
   ING IN THIS CASE, AND NOT REQUESTING THE COURT TO DISENTANGLED
   LOWER COURT FILING, BY PLACING IMMEADITLY ON TOP PAGE A COMPLI
   ANT INTO UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT
   OF ALABAMA.

12.

IN THE UNITED STATES
DISTRICT COURT

OBJECTION TO MAGISTRATE ORDER CONTINUES

6. DEFENDENT ARE NOT ELIGIBILITY FOR IMMUNE"
   SEE PAGE 16

7. TO IDENTIFY FRIVOLOUS CASES SEE PAGE 17

8. PLEASE REFER TO PAGE 6 FOR A DETAILED COMPLIANT OF THE AUTOMOB

   ILE WRECKAGE.

Andrew Williams
11-25-2005

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

RECEIVED

2005 NOV -9 A 10: 45

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| ANDREW JODDIE WILLIAMS ) | |
| 3886 CHRISTINE E. CURVE APT. 101 ) | |
| MONTGOMERY ALABAMA 36116 ) | |
| Plaintiff(s), ) | CIVIL ACTION NO. |
| ) | |
| v. ) | |
| NIX HOLTSFORD GILLILAND ) | |
| P.O. 4128 BOX ) | |
| MONTGOMERY ALABAMA 36103-4128 ) | |
| Defendant(s). ) | |

## COMPLAINT

1.    Plaintiff(s)' address and telephone number: # 3886 CHRISTINE E. CURVE
APARTMENT 101, MONTGOMERY ALABAMA 36116.  NO TELEPHONE NUMBER


2.    Name and address of defendant(s): NIX HOLTSFORD GILLILAND, HIGGINS
& HITSON P.C. P. O. BOX 4128 MONTGOMERY ALABAMA 36103-4128
334-215-8585


3.    Place of alleged violation of civil rights: 80 ROAD WEST, ONE MILE WEST OF
HAYNEVILLIE ROAD, HAYNEVILLIE ALABAMA.  AUTOMOBILE WREKAGE, A

4.    Date of alleged violation of civil rights: MARCH 11,2003

5.    State the facts on which you base your allegation that your constitutional rights have been
violated: NOT ANY RELIEF SOUGHT AFTER FILING THIS CASE INTO THRE
E LOWER COURT. PLAINTIFF PETITIONS THAT HIM RIGHTS WAS VIOLATED
WHEN DEFENDENT CRASHED INTO THE REAR END OF HIS AUTOMOBILE AND
KNOCKED IT 50 FT. FORWARD DAMAGEING NECK LOWER BACKBONE AND KNEES
ALSO LOSS OF MEMORY AND DRIVING PARANOIA. 9 PLEASE SEE APPELLENT
COMPLIANT)


1

6.   - Relief requested:   ONE HUNDRED MILLIOM DOLLARS

Date: November 9 2005

Andrew Williams
Andrew Williams
**Plaintiff(s) Signature**

2

15.

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

RECEIVED

2005 NOV -9  A 10: 46

ANDREW WILLIAMS                    )
3886 CHRISTINE E. CURVE            )
MONTGOMERY ALA  36116 APT 10       )
_____             )
            Plaintiff(s)            )
                                    )
          v.                        )
                                    )
NIX HOLTSFORDS GILLILAND           )
P.O. BOX 4128                       )
MONTGOMERY ALABAMA 36103-4128      )
_____             )
            Defendant(s)            )

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff(s)_____ANDREW WILLIAMS_____

moves this Honorable Court for an order allowing her/him to proceed in this case without

prepayment of fees, costs, or security therefor, and for grounds therefor submits the attached

sworn affidavit in support of the motion.

_Andrew Williams_____
            Plaintiff(s) signature

16

Ọ 240 (Rev. 10/03)

# UNITED STATES DISTRICT COURT  RECEIVED

ALABAMA _____ **District of** ~~OF UNITED STATES~~

2005 NOV -9  A 10: 45

ANDREW WILLIAMS

Plaintiff

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT**

V.

NIX HOLTSFORDS GILLILAND

CASE NUMBER:

Defendant

_AndRew WilliAmS_ _____ declare that I am the (check appropriate box)

◼ petitioner/plaintiff/movant         ☐ other

the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs nder 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief ught in the complaint/petition/motion.

support of this application, I answer the following questions under penalty of perjury:

. Are you currently incarcerated?     ☐ Yes      ☒ No      (If "No," go to Part 2)

If "Yes," state the place of your incarceration _____ _NONE_

Are you employed at the institution? _NO_ Do you receive any payment from the institution? _NO_

Attach a ledger sheet from the institution(s) of your incarceration showing at least the past **six** months' transactions.

. Are you currently employed?     ☐ Yes      ☒ No

a.   If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.   _NONE_

b.   If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.
     _JuNE 1984     2000 moNTHly_

3.   In the past 12 twelve months have you received any money from any of the following sources?

|  | | Yes | No |
|---|---|---|---|
| a. | Business, profession or other self-employment | ☐ Yes | ☒ No |
| b. | Rent payments, interest or dividends | ☐ Yes | ☒ No |
| c. | Pensions, annuities or life insurance payments | ☐ Yes | ☒ No |
| d. | Disability or workers compensation payments | ☒ Yes | ☐ No |
| e. | Gifts or inheritances | ☐ Yes | ☒ No |
| f. | Any other sources | ☐ Yes | ☒ No |

If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

17.

240 Reverse (Rev. 10/03)

1110. DOLLARS A MONTH
SOCIAL SECURITY DISABILITY

Do you have any cash or checking or savings accounts?    ☐ Yes    ☒ No

If "Yes," state the total amount.    NONE

Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value?    ☐ Yes    ☒ No

If "Yes," describe the property and state its value.

NONE

List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

NONE

I declare under penalty of perjury that the above information is true and correct.

NOVEMBER 9 -05                    Andrew Williams
Date                               Signature of Applicant

**NOTICE TO PRISONER:** A Prisoner seeking to proceed without prepayment of fees shall submit an affidavit stating all assets. In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

18.

§ 6-11-6                          DAMAGES                          § 6-11-20

### § 6-11-6. Damages not affected.

Nothing in this article shall be construed to alter or affect the nature, elements, form, or amount of damages recoverable in any action. (Acts 1987, No. 87-183, p. 245, § 6.)

### § 6-11-7. Prior rights not affected.

This article shall not affect the rights of any person if such rights accrued prior to June 11, 1987. (Acts 1987, No. 87-183, p. 245, § 8.)

ARTICLE 2.

PUNITIVE DAMAGES.

### § 6-11-20. Punitive damages not to be awarded other than where clear and convincing evidence proven; definitions.

(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.

(b) As used in this article, the following definitions shall apply:

(1) FRAUD. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

(2) MALICE. The intentional doing of a wrongful act without just cause or excuse, either:

a. With an intent to injure the person or property of another person or entity, or

b. Under such circumstances that the law will imply an evil intent.

(3) WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.

(4) CLEAR AND CONVINCING EVIDENCE. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.

(5) OPPRESSION. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights. (Acts 1987, No. 87-185, p. 251, § 1.)

977

7          20.

"Conscious" is defined as "perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." "having an awareness of one's own existence, sensations, and thoughts, and of one's environment; capable of complex response to environment; deliberate." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

The word "deliberate" is defined as "well-advised; carefully considered, not sudden or rash; circumspect; slow in determining; formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; careful in considering the consequences of a step," "characterized by or resulting from careful and thorough consideration; characterized by awareness of the consequences; slow, unhurried, and steady as though allowing time for decision on each individual action involved," "careful and slow in deciding or determining; not rashly or hastily determined." This must be proven by "clear and convincing evidence." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

"Reckless" is defined as "careless, heedless, inattentive; indifferent to consequences," "marked by lack of proper caution: careless of consequence," "having no regard for consequences: uncontrolled; wild." Berry v. Fife, 590 So. 2d 884 (Ala. 1991).

Wanton conduct is the conscious doing of some act or the omission of some duty by one who has knowledge of the existing conditions, and who is conscious that from the doing of such act or omission of such duty injury will likely or probably result. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct and negligence. — A finding of wanton conduct depends upon circumstances, and must be based upon facts beyond mere negligence. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness are qualitatively different tort concepts of actionable culpability. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

When a party alleges wanton conduct and seeks only compensatory damages, the conduct, in all cases filed after June 11, 1987, must be proved by "substantial evidence" which is evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. Rommell v. Automobile Racing Club of Am., Inc., 964 F.2d 1090 (11th Cir. 1992).

Wanton conduct by car dealer. — Evidence, that an automobile sales manager, who approved the sale of the automobile to plaintiff, actually saw a truck hit the automobile, yet failed to disclose this information to plaintiff or to the salesman who sold the car and that car dealer had failed to disclose prior damages to other purchasers, was sufficient to support an inference by the jury that car dealer "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to" plaintiff. King Motor Co. v. Wilson, 612 So. 2d 1153 (Ala. 1992).

An award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Punitive damages may be awarded by the jury in a fraud action if the plaintiff makes a sufficient evidentiary showing that he has been injured as a result of the fraud and that the defendant's conduct warrants punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

Assault and battery claim. — A plaintiff may be awarded punitive damages on an assault and battery claim only where the plaintiff shows by clear and convincing evidence that the assault and battery was coupled with an insult or other circumstances of aggravation or shows by clear and convincing evidence that the defendant consciously or deliberately engaged in the kind of activity mentioned in this section. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

Particularized circumstances of aggravation or insult must appear in cases of assault and battery if punitive damages are to be properly awarded. Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992).

When presented with a motion to set aside a verdict awarding punitive damages only, the appropriate inquiry for the trial court in a fraud case is not whether there has been an award of compensatory or nominal damages but, instead, whether the evidence is sufficient to support a finding by the jury that the plaintiff was injured, at least nominally, by the defendant's wrongful actions and that the defendant's conduct is deserving of punishment. First Bank v. Fielder, 590 So. 2d 893 (Ala. 1991).

For an expansive discussion of punitive damages, focusing on procedural applications, state constitutional implications, and recent case history, see Fuller v. Preferred Risk Life Ins. Co., 577 So. 2d 878 (Ala. 1991).

Cited in Shoals Ford, Inc. v. Clardy, 588 So. 2d 879 (Ala. 1991); Tombrello v. USX Corp., 763 F. Supp. 541 (N.D. Ala. 1991); Delchamps, Inc. v. Morgan, 601 So. 2d 442 (Ala. 1992);

978

8

21.

Reserve Nat'l Ins. Co. v. Crowell. 614 So. 2d 1005 (Ala. 1993).

Collateral references. — Punitive damages: power of equity court to award. 58 ALR4th 844.

Standard of proof as to conduct underlying punitive damage awards — modern status. 58 ALR4th 878.

Punitive damages: relationship to defendant's wealth as factor in determining propriety of award. 87 ALR4th 141.

Plaintiff's rights to punitive or multiple damages when cause of action renders both available. 2 ALR5th 449.

## § 6-11-21. Punitive damages not to exceed $250,000; exceptions.

An award of punitive damages shall not exceed $250,000, unless it is based upon one or more of the following:

(1) A pattern or practice of intentional wrongful conduct, even though the damage or injury was inflicted only on the plaintiff; or,

(2) Conduct involving actual malice other than fraud or bad faith not a part of a pattern or practice; or,

(3) Libel, slander, or defamation. (Acts 1987, No. 87-185, p. 251, § 2.)

Cap does not represent apportionment of damages among joint tort-feasors. — The punitive damages cap under this section does not represent an apportionment of damages among joint tort-feasors. The purpose of punitive damages is to deter wrongful conduct and to punish those who may profit by such conduct. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Intent of legislature. — In adopting the term "pattern" the Alabama Legislature intended for the courts to draw upon the interpretation of that term as set forth by the federal courts in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(5), litigation. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

Cap not intended to fall by wayside in joint tort-feasors situation. — The legislature did not intend for the statutory cap to fall by the wayside in the situation of joint tort-feasors. when one joint tort-feasor fits beneath the statutory cap and the other does not. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are inter-

related by distinguishing characteristics and are not isolated events. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

The acts which form a pattern need not occur in separate schemes, but can occur in one scheme if they are temporally separate within that scheme: that is to say, if the acts are distinct and separate. Youngblood v. Lawyers Title Ins. Corp., 746 F. Supp. 71 (S.D. Ala. 1989), rev'd on other grounds. 923 F.2d 161 (11th Cir. 1991).

Where joint tort-feasors act with differing degrees of culpability. — In the situation where joint tort-feasors act with differing degrees of culpability, so that one tort-feasor's conduct falls within the statutory exception to the cap on punitive damages under this section and the other's does not, then the statutory cap may apply to one tort-feasor and not to the other, without violating the rule against apportionment between joint tort-feasors. Reserve Nat'l Ins. Co. v. Crowell, 614 So. 2d 1005 (Ala. 1993).

Cited in Toole v. McClintock, 778 F. Supp. 1543 (M.D. Ala. 1991).

Collateral references. — Right to prejudgment interest on punitive or multiple damages awards. 9 ALR5th 63.

9

22.

## Comparative Negligence Standards

Comparative Negligence: In states that utilize comparative negligence theories, individuals may sue another motorist whether or not their own negligence played any role in the accident. However, recovery for damages will be reduced by the percentage of fault attributable to them. This situation is often referred to as "apportionment of fault" or "allocation of fault." For example, in the above example, assume that the turning driver sues the speeding motorist for $100,000 in damages. At trial, a jury will be asked to determine what percentage of the accident was caused by the speeding and what percentage of the accident was caused by the turning driver's failure to operate the turn signal. Assume further that the jury finds that the turning driver's own negligence contributed to the accident by 30 percent and the negligence of the other motorist contributed to the accident by 70 percent. If the jury agrees that damages are worth $100,000 the turning driver would only be able to recover $70,000 in damages (or $100,000 reduced by 30 percent caused by that driver's own negligence). If, conversely, the negligence was found to have contributed 70 percent to the accident, the driver could only recover $30,000 for the 30 percent fault for which the other tortfeasor was responsible. Again, this is true in states that apply a "pure" theory of comparative negligence. Other states have modified comparative negligence principles to permit a lawsuit only if a person is were less than 50 percent negligent.

### No-Fault Liability Systems

No-Fault Systems: In states that have statutorily established a "no-fault" system of liability for negligence, each person's own insurance company pays for his or her injury or damage, regardless of who is at fault. No-fault insurance liability coverage does not apportion damages or fault. However, it usually does not cover damage to the automobile, and separate collision coverage is needed. In states with NO FAULT systems, individuals may file suit only if certain threshold injuries have occurred or damages exceed insurance coverages.

### Components of an Automobile Insurance Policy

Depending on the state, automobile liability insurance policy may contain some or all of the following:

* Bodily Injury Liability: The insurer will pay damages when other persons are injured or killed in an accident for which the insured are at fault.

* PERSONAL INJURY Protection (PIP): The insurer will pay for the insured's injuries and other related damages to the insured and to passengers.

* Property Damage Liability: The insurer will pay damages when the property of other persons has been harmed or destroyed by the insured's vehicle and the insured is at fault.

* Collision Coverage: The insurer will pay for damages to the insured's own vehicle, when the insured is at fault. If the insured's vehicle is financed, the loaner may require the insured to maintain collision coverage on the vehicle.

* Comprehensive Coverage: The insurer will pay for damages to the insured's automobile caused by fire, theft, VANDALISM, acts of God, riots, and certain other perils. If the insured's vehicle is financed, the loaner may require the insured to maintain comprehensive coverage on the vehicle.

* Uninsured/Underinsured Motorist (UM/UIM) Coverage: The insurer will pay for injury or death to the insured and the insured's passengers if caused by an uninsured or underinsured tortfeasor or a hit-and-run motorist. In some states, the insurer will also pay for damage to the insured's vehicle. An uninsured at-fault tortfeasor may be sued and his or her personal assets attached to satisfy any judgment.

## When Accidents Occur

The following points may assist individuals in the event that they are involved in a motor vehicle accident:

### In a Rental or Leased Vehicle

In a Rental or Leased Vehicle: In most states, individuals' own insurance policy will protect them for any automobile that they are driving. There is no need to purchase additional insurance from the automobile rental or leasing company unless they wish to increase their coverage, e.g., add collision coverage.

### When a Pedestrian or Bicyclist is Hit

When a Pedestrian or Bicyclist is Hit: In some states, there is a presumption of fault if drivers strike a pedestrian or bicyclist, for want of care and defen-

mind and indicates a particular reason why the person has failed to perform a duty—namely, because the person has not kept the duty in mind. See J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 108 n.1 (16th ed. 1952). See **negligence (A)**.

**neglectful; neglective.** The latter is a NEEDLESS VARIANT that is rare or obsolete.

**negligible; negligeable.** The latter spelling should be avoided.

**negligence. A. Senses.** In general usage, *negligence* means "carelessness." But in legal usage, *negligence* = (1) the failure to exercise the standard of care that the doer as a reasonable person should have exercised in the circumstances; (2) undue indifference toward the consequences of one's act; or (3) a tort that includes the notions of duty, breach of that duty (unreasonable conduct), and resultant damage.

The term has various gradations: "Negligence in law ranges from inadvertence that is hardly more than accidental to sinful disregard of the safety of others." Patrick Devlin, *The Enforcement of Morals* 36 (1968). *Ordinary* or *simple negligence* is usu. sufficient to establish liability in a tort action. *Criminal* or *gross negligence* is usu. required before the court will impose a penalty. The phrase *gross negligence* has the disadvantage of applying both in civil actions (to increase damages) and in criminal actions (to establish criminal liability); many criminal lawyers therefore prefer *criminal negligence* in criminal-law contexts.

**B. And *neglect*.** See **neglect**.

**C. And *negligency*.** The word *negligency* is a NEEDLESS VARIANT of *negligence*.

**negligent neglect.** See **neglect**.

**negotiability; assignability.** These two terms are related but distinct. The two major ways in which *negotiability* differs from *assignability* are: (1) no notice need be given of the transfer of a negotiable instrument; and (2) the transfer of such an instrument is not subject to equitable remedies (i.e., from a claimant who might assert a right to or under the instrument). See **assignment & negotiable instrument**.

**negotiable instrument; commercial paper.** These terms are not interchangeable. *Commercial paper* is now the more widely used term in the U.S. because of its use in article three of the Uniform Commercial Code. As to the precise distinction, *commercial paper* is the broader term: it may include nonnegotiable as well as negotiable paper, whereas *negotiable instruments* are by definition negotiable ones only.

Generally, a writing is *negotiable* when it is signed by the maker or drawer; contains an unconditional promise or order to pay a sum certain in money, and no other promise, obligation, or power given by the maker or drawer; is payable on demand or at a definite time; and is payable to order or to bearer. The absence of any one of these elements makes commercial paper nonnegotiable.

**negotiate** = (1) to discuss or conduct a business transaction, such as a contract or sale; or (2) to transfer (a negotiable instrument [q.v.], such as a note or bond) in a way that makes the transferee the legal owner of the instrument. E.g., sense (2): "When a cheque is transferred, whether by delivery or endorsement, it is said to be negotiated, and negotiation is a kind of transfer [that] differs in important respects from the ordinary assignment of a contractual right." William Geldart, *Introduction to English Law* 124 (D.C.M. Yardley ed., 9th ed. 1984).

**neither . . . nor. A. Singular or Plural Verb.** When one of the two subjects is singular, and the other is plural, the verb takes its number from the closer subject. Thus, the verb is invariably singular if the second alternative is singular—e.g.: "Neither the speed at which the car was traveling [read Neither the car's speed] nor its operation through a red light *are* [read *is*] enough to make out a case against appellants provided there was no reckless disregard for the safety of others."/ "Neither of these views *are* [read *is*] acceptable." H.L.A. Hart, "Negligence, Mens Rea, and Criminal Responsibility," in *Punishment and Responsibility: Essays in the Philosophy of Law* 136, 150 (1968)./ "Neither hanging the governor in effigy nor hanging the governor *are* [read *is*] speech . . . ." Steven J. Burton, *An Introduction to Law and Legal Reasoning* 70 (1985). See SUBJECT-VERB AGREEMENT (E).

Moreover, the verb should match the nearest subject in number and person. Sometimes the correct form is admittedly awkward—e.g.: "Neither you nor I *is* [read *am*] likely to change the world . . . ." Jefferson D. Bates, *Writing with Precision* 82 (rev. ed. 1988).

**B. Number of Elements.** These CORRELATIVE CONJUNCTIONS should frame only two elements, not more; though it is possible to find modern and historical examples of *neither . . . nor* with more than two members, such constructions are, in Wilson Follett's words, "short of punctilious." E.g.,

11

EMERGENCY DEPARTMENT
NURSING RECORD
DATE: 3/13/03
TIME: 1327



JACKSON HOSPITAL

ACCOUNT# 10532029    M/R # 17-23-47
WILLIAMS, ANDREW
SEX - M  BORN 12/06/1949  F/C M EDM
GARRISON, NORMAN A.    ROOM

**FIRST TX**
CPR N/A
IV _____ @ _____ cc/h:
SITE _____
PCR _____
☐ O2 @ _____
☐ ETT SIZE _____
☐ CPR
☐ BACKBOARD
☐ COLLAR
☐ SANDBAGS
☐ SPLINT
☐ BANDAGES
☐ FOLEY SIZE
☐ Other _____

**MEDICAL / SOCIAL HX**

MEDICAL:
☐ ASTHMA
☐ CANCER
☐ CARDIAC
☐ COPD
☐ CVA
☐ DIABETES
☐ FAMILY CARDIAC HISTORY
☑ HTN
☐ RENAL DISEASE
☐ NONE

MUSCULOSKELETAL:
Slates no problems /
arthritic disease / decrease
in strength / diminished
mobility

PSYCHIATRIC:
Previous psychiatric history
/ bipolar disorder /
depression / suicidal / lives
alone / family support

SCREENINGS:
Nutritional:
States no problems /
Normal nutrition /
recent weight loss /
weight gain / _____
appears well nourished. /
Appears under nourished.

SOCIAL:
☑ ALCOHOL *nearly*
☐ DRUGS
☐ SMOKES

**CARDIOVASCULAR**

MONITOR ☐ YES ☐ NO   RHYTHM _____   SEE STRIP
SKIN CONDITION
☑ INTACT
☑ WARM
☐ HOT
☑ MOIST
☐ DIAPHORETIC
☐ RASH
☐ BROKEN
☐ COOL
☐ CLAMMY
☑ DRY
☐ DECUBITUS

EDEMA
☐ LEGS
☐ OTHER NOB
☐ ANKLES
☐ FEET

PULSES      R   L
PEDAL
POST TIBIAL
RADIAL

SKIN COLOR
☑ NORMAL
☐ DUSKY
☐ FLUSHED
☐ PALE
☐ PINK
☐ CYANOTIC
☐ JAUNDICED

ABSENT · PRESENT ·

CAPILLARY REFILL
<3 SEC ☐ >3 SEC ☐

SKIN TURGOR
☑ GOOD
☐ POOR
☐ DECREASED
☐ OTHER

AFFECTED AREA
1. N/A
2. ABRASIONS
3. BURNS
4. CONTUSION
5. DECUBITUS
6. LACERATION
7. PAIN _____
8. PUNCTURE
9. RASH
10. OTHER _____

**RESPIRATION**

RESPIRATIONS
☑ NON-LABORED
☐ LABORED
☐ HYPERVENTILATION
☐ OTHER

COUGH
☐ NONE
☐ NON-PRODUCTIVE
☐ PRODUCTIVE
☐ HIGH RISK TB

BREATH SOUNDS
R  L
☐ ☐ CLEAR/EQUAL
☐ ☐ WHEEZES
☐ ☐ DIMINISHED

R  L
☐ ☐ ABSENT
☐ ☐ RALES/CRACKLES
☐ ☐ RHONCHI

**NEUROLOGICAL**

LOC
☑ ALERT
☐ DROWSY
☐ UNRESPONSIVE
☐ ORIENTED
☐ PERSON
☐ PLACE
N/A
☐ TIME
☐ EVENT

SPEECH
☐ CLEAR
☐ SLURRED
☐ OTHER

RESPONSE TO STIMULI
☐ VERBAL
☐ TACTILE
☐ PAIN ·
☐ UNRESPONSIVE

MOTOR/SENSORY
GOOD
DECREASED
ABSENT
RIGHT LEFT
M S M S
ARMS
LEGS

PUPILS
2 3 4 5 6 7 8 9
RIGHT LEFT
REACTIVE
SIZE

**GLASGOW COMA SCALE**

| Areas of Response | Points |
|---|---|
| Eye Opening | |
| Opens spontaneously | 4 |
| Eyes open in response to voice | 3 |
| Eyes open in response to pain | 2 |
| Eyes open in response to pain | 1 |
| **Best verbal response** | |
| Oriented, e.g., to person, place, time | 5 |
| Confused, speaks but is disoriented | 4 |
| Inappropriate, but comprehensible words | 3 |
| Incomprehensible sounds but no words are spoken | 2 |
| None | 1 |
| **Best Motor Response** | |
| Obeys command to move | 6 |
| Localizes painful stimulus | 5 |
| Withdraws from painful stimulus | 4 |
| Flexion, abnormal decorticate posturing | 3 |
| Extension, abnormal decerebrate posturing | 2 |
| No movement or posturing | 1 |
| **Total Possible Points** | 3-15 |
| Major Head Injury | ≤ 8 |
| Moderate Head Injury | 9-12 |
| Minor Head Injury | 13-15 |

**GI / GU**

BOWEL SOUNDS
☐ NORMAL
☐ HYPOACTIVE
N/A ☐ HYPERACTIVE
☐ ABSENT

ABDOMEN
☐ SOFT
☐ FIRM
☐ DISTENDED
☐ TENDER
☐ NON-TENDER

PAIN LOCATION
☐ N/A
☐ RUQ
☐ LUQ
☐ RLQ
☐ LLQ

BOWEL ACTIVITY
☐ DENIES COMPLAINT
☐ DIARRHEA
☐ CONSTIPATION

URINATION
☐ DENIES COMPLAINT
☐ PAINFUL/BURNING
N/A ☐ FREQUENCY
☐ HEMATURIA
☐ INCONTINENCE

GENITAL
☐ DENIES COMPL. ABIT
☐ DISCHARGE
☐ LESION

**COMMENTS**

COMMENTS: _____
_____
_____
_____
☐ N/A

TIME ___ SCORE ___
TIME ___ SCORE ___
N/A TIME ___ SCORE ___
TIME ___ SCORE ___

☑ ALERT
☐ ORIENTED
☐ CALM
☐ COOPERATIVE
☐ UNCOOPERATIVE
☐ COMBATIVE
☐ OTHER
☐ CONFUSED
☐ ANXIOUS

SIDERAILS
☐ RESTRAINTS (See Flowsheet)
☐ BED POSITION LOW
☐ HALEY AT BEDSIDE
☐ OTHER

**PLAN OF CARE**

NURSING DIAGNOSES
[illegible list of nursing diagnoses]

NEURO STATUS,
ALL OF

INTERVENTIONS
[illegible list of interventions]

[illegible]

[form # E-27-A (Rev 6/02)]

**CODES**

| SAFETY EQUIPMENT |
|---|
| 01 - None Installed |
| 99 - Not Applicable |
| 99 - Unknown (Any Type) |
| Lap Belt Only |
| 11 - Fastened |
| 12 - Not Fastened |
| Lap/Shoulder Harness |
| 21 - Lap Only Used |
| 22 - Neither Used |
| 23 - Shoulder Only Used |
| 24 - Both Used |
| Motorcycle Helmet |
| 31 - None Used |
| 37 - Used |
| Air Bags |
| 41 - Deployed, Belts Used |
| 42 - Not Deployed, Belts Used |
| 43 - Deployed Belts Not Used |
| 44 - Not Deployed, Belts Not Used |
| Child Restraints |
| 81 - Child Restraint Used |
| 82 - Other Restraint Used |
| 83 - None Used |
| Proper Cryle /Pedestrian |
| 91 - Concealing Clothing |
| 92 - Non-concealing Clothing |

**Unit 1** — Other Involved Unit (Circle One): 42 / 24
12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance / Codes Not Applicable
Other Involved Safety Equipment

**Unit 2** — Other Involved Unit (Circle One): 2 / 24
12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstances / Codes Not Applicable
Other Involved Safety Equipment

| | Unit No | Seat Pos | Injury Type | Age | Sex | Ejection | First Aid By |
|---|---|---|---|---|---|---|---|
| Name | | | | | | | |
| Address | | | | | | | |
| Taken To | | | | | | | |
| Taken By | | | | | | | |
| Name | | | | | | | |
| Address | | | | | | | |
| Taken To | | | | | | | |
| Taken By | | | | | | | |

**Injury Type:** 1 - Killed / 2 - Bruise/Abrasion/Swelling — A - Visible or Carried from Scene / B - Not Visible—Has Pain/Faint / C - Visible or Carried from Scene

**Ejected:** N - Not / P - Partially / T - Trapped / U - Unknown / A - Not Applicable

**First Aid By:** A - Ambulance Attended / D - Doctor / M - Paramedic / O - Other / P - Police / U - Unknown / N - None

---



Grassy Median

US 80 - Westbound Lanes - 23°

Diagram Not To Scale

---

**Officer's Opinion of What Happened:** Unit 1 and 2 were traveling west on US 80 in the right lane, when Unit 1 misjudged his stopping distance and struck Unit 2 in the rear, causing Unit 2 to spin around and stop in the left lane, facing east. Unit 2 driver stated "Going about 25, going west, cap up from behind got hit too." Unit 1 driver stated "I/we were driving long, cars in front and behind me. I looked back, there he was. I got on my brakes, caught comin."

---

**Exec. Roadway Environment Field, Circle One Entry (e): Each Involved Unit**

| Contributing Road Defects | Surface Construction | Condition | Accident In Or Related To Road Construction Zone? | Material In Roadway (Contributing) | Material Source | Character |
|---|---|---|---|---|---|---|
| 0 - None | 1 - Asphalt | 1 - Dry | | 0 - None | 0 - Not Applicable | 1 - Straight—Level |
| 1 - Shoulders Low | 2 - Concrete | 2 - Wet | | 1 - Mud | 1 - Natural Environment | 2 - Straight—Down Grade |
| 2 - Shoulders High | 3 - Brick | 3 - Icy | Yes    Yes | 2 - Rocks    6 - Dirt/Petro | 2 - Dropped From Vehicle | 3 - Straight—Up Grade |
| 3 - Holes, Bumps, Etc | 4 - Unpaved | 4 - Snowy/Slushy | | 3 - Trees/Limbs  8 - Other | 4 - Already in Road But Fell From Vehicle | 4 - Straight—Hillcrest |
| 8 - Other | 8 - Other | 5 - Muddy | | 4 - Dirt | 8 - Other | 5 - Curve—Level |
| | | 8 - Other | | | 9 - Unknown | 6 - Curve—Down Grade / 7 - Curve—Up Grade / 8 - Curve—Hillcrest |

**Vision Obscured By:**
0 - Not Obscured
1 - Buildings
2 - Signboard
3 - Trees, Crops, Bushes
4 - Blowing Snow/Sand
5 - Hillcrest
6 - Curve in Road
7 - Fog
8 - Parked Vehicle
9 - Moving Vehicle(s)
10 - Blinded by Sunlight
11 - Fire/Smoke
12 - Dust
13 - Blinded by Headlights
14 - Embankment
15 - Rain on Windshield
16 - Snow on Windshield
98 - Other
99 - Unknown

**Traffic Control:**
1 - Police Officer
2 - R.R. Crossing Gates
3 - R.R. Flashing Lights
4 - R.R. Cross Bucks/Pave Mark
5 - Pedestrian Control
6 - Traffic Signal
7 - Flashing Beacon
8 - Stop Sign
9 - Yield Sign
10 - Lane Control Device
11 - Flagger
12 - No Passing Zone
98 - Other

**Traffic Control Functioning:** Yes / No

DOT Railroad Crossing No — N/A

**Opposing Lanes Separated By:**
97 - Not Applicable
1 - Paved Surface
2 - Unpaved Surface
3 - Broken Painted Line
4 - Solid Painted Line
5 - Concrete Barrier
6 - Metal Guard Rail
7 - Fence
98 - Other Barrier

**Trafficway Lanes:**
1 - One Lane
2 - Two Lanes
3 - Three Lanes
4 - Four Lanes
5 - Five Lanes
6 - Six Lanes or More

**One-Way Street:** Yes / No

---

| Light | Weather | Locale | Non-Vehicular Property Damage | Property Damage Description |
|---|---|---|---|---|
| 1 - Daylight  4 - Darkness—Road Not Lit | 1 - Clear  5 - Sleet/Hail | 1 - Open Country  5 - School | 0 - None Visible  3 - Moderate | N/A |
| 2 - Dawn | 2 - Cloudy  6 - Crosswind | 2 - Residential  6 - Playground | 1 - Light  4 - Severe | |
| 3 - Dusk  5 - Darkness—Road Lit | 3 - Rain  7 - Fog | 3 - Shop'g or Business  8 - Other | | |
| | 4 - Snow  8 - Other | 4 - Mfg. or Industrial | Owner | |

| Police Notified | Time Police Arrived | Time EMS Arrived | Name of Photographer | |
|---|---|---|---|---|
| 12:39 MT | 12:55 MT | N/A | N/A | Address |

| Witness Full Name | Address | Telephone |
|---|---|---|
| N/A | | |
| N/A | | |

| Name of Investigating Officer | Officer ID | Agency ORI | Supervisor Reviewed |
|---|---|---|---|
| D. Allens | 360 | ALASTO300 | |
| Name of Other Investigating Officer(s) at Scene | Officer ID | Agency ORI | 58° |

This report reflects my best knowledge, opinion and belief covering the accident, but no warrant is made as to the factual accuracy thereof.

Signature of Investigating Officer: D. Allen    Date: 03/11/2003

13

26.

**ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT**

AR1-82003

| Date | Time | Day of Week | County | City | | Rural | Highway Classification | Local Zone |
|---|---|---|---|---|---|---|---|---|
| 13 11 2003 | 12:22 | M SU TH / F S S | 03 | | X 00 | I—Interstate S—State M—Municipal F—Federal C—County P—Private Prop. O—Other | |

On Street, Road or Highway: **US 80**
At Intersection or Between (Node 1): **Felder Road** And (Node 2): **Mitchell Young Rd.**

Street or Road Code: **S008** 73-20 Node Code: 7319

Driver Full Name: **Hubert Breaden** 773 Lynwood Place
City and State: **Forest Park, GA** ZIP: **30297** Telephone No. (770) 966-4447

DOB: 10 05 1930 Race: W Sex: M DL State: GA Driver License No.: 049327149 DL Class: CM DL Status: C
Place of Employment: **Retired**
Liability Insurance Co.: **None** Social Security No.: 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

Travel Road Name: **US 80** Road Code: **S008**
Year: 1992 Make: **FORD** Model: **AER** V.I.N.: 1FMDA31X4NZ B617 53 License Tag Number: 432 SSF State: GA Year: 2003
Owner's Name: **Same**

Speed Limit: 65 MPH Est. Speed: 55 MPH Citation Offense Charged: **No Liability Insurance**
Vehicle Towed By Whom: N/A To Where: N/A

Driver/Pedestrian Full Name: **Andrew Eddie Williams** 1259 Seth Johnson Drive
City and State: **Montgomery, AL** ZIP: 36116 Telephone No.: None

DOB: 02 06 1944 Race: B Sex: M DL State: AL Driver License No.: 6241776
Place of Employment: **Retired**
Liability Insurance Co.: **None** Social Security No.: 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

Travel Road Name: **US 80** Road Code: **S008**
Year: 1973 Make: **FORD** Model: **F150** Body: 20 V.I.N.: KNJTPT06H8PG100449 License Tag Number: 3B2540A State: AL Year: 2003
Owner's Name: **Same**

Speed Limit: 65 MPH Est. Speed: 30 MPH Citation Offense Charged: **No Liability Insurance**
Vehicle Towed By Whom: **Waldrip's Wrecker Service** To Where: **Montgomery, AL**

13    27.


TITLE 49—TRANSPORTATION

jurisdiction'' are placed before clause (1) rather than at the end of clause (4), as in the source provision, to reflect the probable intent of Congress.

#### AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26101 of this title as this section.

### § 28102. Limit on certain accident or incident liability

(a) GENERAL.—When a publicly financed commuter transportation authority established under Virginia law makes a contract to indemnify Amtrak for liability for operations conducted by or for the authority or to indemnify a rail carrier over whose tracks those operations are conducted, liability against Amtrak, the authority, or the carrier for all claims (including punitive damages) arising from an accident or incident in the District of Columbia related to those operations may not be more than the limits of the liability coverage the authority maintains to indemnify Amtrak or the carrier.

(b) MINIMUM REQUIRED LIABILITY COVERAGE.—A publicly financed commuter transportation authority referred to in subsection (a) of this section must maintain a total minimum liability coverage of at least $200,000,000.

(c) EFFECTIVENESS.—This section is effective only after Amtrak or a rail carrier seeking an indemnification contract under this section makes an operating agreement with a publicly financed commuter transportation authority established under Virginia law to provide access to its property for revenue transportation related to the operations of the authority.

(Pub. L. 103–272, §1(e), July 5, 1994, 108 Stat. 940, §26102; renumbered §28102, Pub. L. 103–440, title I, §103(a)(1), Nov. 2, 1994, 108 Stat. 4616.)

#### HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 26102(a) ...... | 45:649(a) (1st sentence). | Oct. 30, 1970, Pub. L. 91–518, 84 Stat. 1327, §810; added July 6, 1990, Pub. L. 101–322, §3, 104 Stat. 295. |
| 26102(b) ...... | 45:649(a) (last sentence). | |
| 26102(c) ...... | 45:649(b). | |

In subsection (a), the words "Notwithstanding any other provision of law", "whether for compensatory or", and "occurring" are omitted as surplus.

In subsection (c), the words "an indemnification contract" are substituted for "coverage" for clarity.

#### AMENDMENTS

1994—Pub. L. 103–440 renumbered section 26102 of this title as this section.

### § 28103. Limitations on rail passenger transportation liability

(a) LIMITATIONS.—(1) Notwithstanding any other statutory or common law or public policy, or the nature of the conduct giving rise to damages or liability, in a claim for personal injury to a passenger, death of a passenger, or damage to property of a passenger arising from or in connection with the provision of rail passenger transportation, or from or in connection with any rail passenger transportation operations over, or rail passenger transportation use of

right-of-way or facilities owned, leased, or maintained by any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State, punitive damages, to the extent permitted by applicable State law, may be awarded in connection with any such claim only if the plaintiff establishes by clear and convincing evidence that the harm that is the subject of the action was the result of conduct carried out by the defendant with a conscious, flagrant indifference to the rights or safety of others. If, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, this paragraph shall not apply.

(2) The aggregate allowable awards to all rail passengers, against all defendants, for all claims, including claims for punitive damages, arising from a single accident or incident, shall not exceed $200,000,000.

(b) CONTRACTUAL OBLIGATIONS.—A provider of rail passenger transportation may enter into contracts that allocate financial responsibility for claims.

(c) MANDATORY COVERAGE.—Amtrak shall maintain a total minimum liability coverage for claims through insurance and self-insurance of at least $200,000,000 per accident or incident.

(d) EFFECT ON OTHER LAWS.—This section shall not affect the damages that may be recovered under the Act of April 27, 1908 (45 U.S.C. 51 et seq.; popularly known as the "Federal Employers' Liability Act") or under any workers compensation Act.

(e) DEFINITION.—For purposes of this section—

(1) the term "claim" means a claim made—

(A) against Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State; or

(B) against an officer, employee, affiliate engaged in railroad operations, or agent, of Amtrak, any high-speed railroad authority or operator, any commuter authority or operator, any rail carrier, or any State;

(2) the term "punitive damages" means damages awarded against any person or entity to punish or deter such person or entity, or others, from engaging in similar behavior in the future; and

(3) the term "rail carrier" includes a person providing excursion, scenic, or museum train service, and an owner or operator of a privately owned rail passenger car.

(Added Pub. L. 105–134, title I, §161(a), Dec. 2, 1997, 111 Stat. 2577.)

#### REFERENCES IN TEXT

The Federal Employers' Liability Act, referred to in subsec. (d), is act Apr. 22, 1908, ch. 149, 35 Stat. 65, as amended, which is classified generally to chapter 2 (§51 et seq.) of Title 45, Railroads. For complete classification of this Act to the Code, see Short Title note set out under section 51 of Title 45 and Tables.

## CHAPTER 283—STANDARD WORK DAY

Sec.
28301.    General.
28302.    Penalties.

28.

## § 28301. General

(a) EIGHT HOUR DAY.—In contracts for labor and service, 8 hours shall be a day's work and the standard day's work for determining the compensation for services of an employee employed by a common carrier by railroad subject to subtitle IV of this title and actually engaged in any capacity in operating trains used for transporting passengers or property on railroads from—

(1) a State of the United States or the District of Columbia to any other State or the District of Columbia;

(2) one place in a territory or possession of the United States to another place in the same territory or possession;

(3) a place in the United States to an adjacent foreign country; or

(4) a place in the United States through a foreign country to any other place in the United States.

(b) APPLICATION.—Subsection (a) of this section—

(1) does not apply to—

(A) an independently owned and operated railroad not exceeding one hundred miles in length;

(B) an electric street railroad; and

(C) an electric interurban railroad; but

(2) does apply to an independently owned and operated railroad less than one hundred miles in length—

(A) whose principal business is leasing or providing terminal or transfer facilities to other railroads; or

(B) engaged in transfers of freight between railroads or between railroads and industrial plants.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28301 | 45:65. (uncodified). | Sept. 3, 5, 1916, ch. 436, § 1, 39 Stat. 721. Sept. 3, 5, 1916, ch. 436, §§ 2, 3, 39 Stat. 721. |

In subsection (a), the word "determining" is substituted for "reckoning" for clarity. The words "who are not or may hereafter be employed" are omitted as surplus. In clause (1), the words "or territory" are omitted because the existing territories of the United States are now connected to the United States by rail. In clause (2), the words "or possession of the United States" are added for consistency in the revised title and with other titles of the United States Code.

The text of sections 2 and 3 of the Act of September 3, 5, 1916 (ch. 436, 39 Stat. 721), is omitted to eliminate executed provisions

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 28302 of this title.

## § 28302. Penalties

A person violating section 28301 of this title shall be fined under title 18, imprisoned not more than one year, or both.

(Added Pub. L. 104–287, § 5(56)(A), Oct. 11, 1996, 110 Stat. 3394.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 28302 | 45:66. | Sept. 3, 5, 1916, ch. 436, § 4, 39 Stat. 722. |

The words "shall be guilty of a misdemeanor" are omitted, and the words "shall be fined under title 18" are substituted for "shall be fined not less than $100 and not more than $1,000", for consistency with title 18. The words "upon conviction" are omitted as surplus.

# SUBTITLE VI—MOTOR VEHICLE AND DRIVER PROGRAMS

PART A—GENERAL

| Chapter | | Sec. |
|---|---|---|
| 301. | Motor Vehicle Safety | 30101 |
| 303. | National Driver Register | 30301 |
| 305. | National Motor Vehicle Title Information System | 30501 |

PART B—COMMERCIAL

| 311. | Commercial Motor Vehicle Safety | 31101 |
| 313. | Commercial Motor Vehicle Operators | 31301 |
| 315. | Motor Carrier Safety | 31501 |
| 317. | Participation in International Registration Plan and International Fuel Tax Agreement | 31701 |

PART C—INFORMATION, STANDARDS, AND REQUIREMENTS

| 321. | General | 32101 |
| 323. | Consumer Information | 32301 |
| 325. | Bumper Standards | 32501 |
| 327. | Odometers | 32701 |
| 329. | Automobile Fuel Economy | 32901 |
| 331. | Theft Prevention | 33101 |

AMENDMENTS

1997—Pub. L. 105–102, § 2(17), Nov. 20, 1997, 111 Stat. 2205, substituted "National Motor Vehicle Title Information System" for "National Automobile Title Information System" in item for chapter 305.

PART A—GENERAL

## CHAPTER 301—MOTOR VEHICLE SAFETY

SUBCHAPTER I—GENERAL

| Sec. | |
|---|---|
| 30101. | Purpose and policy. |
| 30102. | Definitions. |
| 30103. | Relationship to other laws. |
| 30104. | Authorization of appropriations. |
| 30105. | Restriction on lobbying activities. |

SUBCHAPTER II—STANDARDS AND COMPLIANCE

| 30111. | Standards. |
| 30112. | Prohibitions on manufacturing, selling, and importing noncomplying motor vehicles and equipment. |
| 30113. | General exemptions. |
| 30114. | Special exemptions. |
| 30115. | Certification of compliance. |
| 30116. | Defects and noncompliance found before sale to purchaser. |
| 30117. | Providing information to, and maintaining records on, purchasers. |
| 30118. | Notification of defects and noncompliance. |
| 30119. | Notification procedures. |
| 30120. | Remedies for defects and noncompliance. |
| 30121. | Provisional notification and civil actions to enforce. |

However, after studying the case, President Adams pardoned him and the other insurgents. Soon after his pardon, Fries was promoted from captain to lieutenant colonel in the Montgomery County, Pennsylvania, militia.

Justice Chase's conduct in Fries's second trial was harshly criticized as indirectly depriving Fries of counsel. The justice's actions were used against him in 1805, in an unsuccessful IMPEACHMENT proceeding.

FURTHER READINGS

Elsmere, Jane Shaffer. 1979. "The Trials of John Fries." *Pennsylvania Magazine of History and Biography* 103 (October).

Presser, Stephen. 1978. "A Tale of Two Judges. . . ." *Northwestern University Law Review* 73 (March/April).

CROSS-REFERENCES

Whiskey Rebellion.

## FRISK

*A term used in* CRIMINAL LAW *to refer to the superficial running of the hands over the body of an individual by a law enforcement agent or official in order to determine whether such individual is holding an illegal object, such as a weapon or narcotics. A frisk is distinguishable from a search, which is a more extensive examination of an individual.*

CROSS-REFERENCES

Stop and Frisk.

## FRIVOLOUS

*Of minimal importance; legally worthless.*

A *frivolous suit* is one without any legal merit. In some cases, such an action might be brought in bad faith for the purpose of harrassing the defendant. In such a case, the individual bringing the frivolous suit might be liable for damages for MALICIOUS PROSECUTION.

A *frivolous appeal* is one that is completely lacking merit, since no reviewable question has been raised therein.

## FROLIC

*Activities performed by an employee during working hours that are not considered to be in the course of his or her employment, since they are for the employee's personal purposes only.*

The doctrine of RESPONDEAT SUPERIOR makes a principal liable for the TORTS of his or her agent occurring during the course of employment. This is based on the concept that a principal has control over his or her agent's behavior. If an agent was hired to drive from point A to point B, and, through reckless driving, hit a pedestrian along the way, the principal would ordinarily be held liable. If, however, the agent was engaged in frolic, the principal would not be liable. This might occur, for example, if an employee were hired to transport goods from point A to point B and made several detours along the way for personal reasons. If the employee became involved in an accident while on a frolic, the employer would not be liable unless it could be established that he or she was negligent in the hiring or supervision of the employee.

## FRONTIERO V. RICHARDSON

The fight to end gender discrimination in the U.S. began in the nineteenth century with the women's suffrage movement and the enactment of laws that protected the property that women brought into marriages. By the 1960s, the focus had shifted to ending pay and benefit discrimination based on gender. By the early 1970s, Congress had passed the EQUAL RIGHTS AMENDMENT (ERA) of the U.S. Constitution, which proclaimed equality between the genders. Ratification appeared close by 1973, as 38 states had ratified the ERA. The court system also became an arena for the issue of gender discrimination. The U.S. Supreme Court began to consider cases of gender discrimination but hesitated to place gender in the same category as race or ethnicity as a SUSPECT CLASSIFICATION inviting the most rigorous constitutional review. However, a plurality of the court endorsed gender as a suspect classification in *Frontiero v. Richardson*, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed.2d 583 (1973). This important case pushed the Court, and society in general, to recognize the legal disabilities that women had lived with for centuries. Though not a landmark decision, *Frontiero* signaled the willingness of the high court to take gender issues seriously.

The facts of the case illustrated the disparate treatment built into U.S. society concerning the role of women. Sharron Frontiero was a U.S. Air Force officer who was married to Joseph Frontiero, a full-time student at a college near the Alabama base where Sharron was stationed. Congress had passed a law that provided fringe

**IMMEDIATE** *(Not distant),* **adjective**
abutting, adjacent, adjoining, at hand, bordering, bounding, close, close at hand, conjoining, conterminous, contiguous, handy, juxtapositional, near, near by, neighboring, next to, proximate, verging
**ASSOCIATED CONCEPTS:** immediate beneficiaries, immediate benefit, immediate cause, immediate consequences, immediate control, immediate damage, immediate delivery, immediate irreparable harm, immediate legatees, immediate need, immediate transferor

**IMMERSE** *(Engross),* **verb**
absorb, attend, be attentive, bury, engage, enthrall, fascinate, grip, hold, hold spellbound, interest, involve, monopolize, occupy, overwhelm, preoccupy, submerge, take up

**IMMERSE** *(Plunge into),* **verb**
bathe, cover with water, deluge, dip, douse, drench, drown, duck, dunk, engulf, flood, insert, inundate, place under a liquid, plunge into a liquid, put under water, send to the bottom, sink, soak, souse, steep, submerge, submerse, swamp, thrust under

**IMMIGRATION, noun**
admission of foreigners, *adventus,* change of national location, colonization, entry of aliens, establishment of foreign residence, expatriation, foreign influx, incoming population, ingress, migration, movement of population, transmigration
**ASSOCIATED CONCEPTS:** issuance of visas, passports

**IMMINENT, adjective**
about to be, about to happen, alarming, approaching, at hand, brewing, closing in, coming, destined, drawing near, expected, following, forecasted, forthcoming, future, *imminere,* impendent, *impendere,* impending, in store, in the offing, in the wind, in view, instant, likely to happen, looming, menacing, minatorial, minatory, near, near at hand, nearing, next, ominous, on the way, oncoming, overhanging, portentous, *praesens,* predicted, prospective, threatening, threatening harm, upcoming
**ASSOCIATED CONCEPTS:** imminent danger, imminent irreparable harm, imminent peril

**IMMORAL, adjective**
amoral, arrant, bad, base, conscienceless, corrupt, criminal, debauched, degenerate, depraved, dishonest, dishonorable, disreputable, dissipated, dissolute, evil, exploitative, false, flagitious, graceless, heinous, ignoble, illaudable, illegal, illicit, improper, impure, indecent, iniquitous, knavish, lacking morals, lecherous, lewd, libidinous, licentious, *male moratus,* miscreant, nefarious, objectionable, *perditus,* pernicious, perverted, pettifogging, *pravus,* profligate, promiscuous, prurient, reprobate, roguish, salacious, shameless, shocking, sinful, unchaste, unconscionable, unethical, unjustifiable, unlawful, unmoral, unprincipled, unrighteous, unscrupulous, unvirtuous, unwholesome, wicked, without integrity, wrong
**ASSOCIATED CONCEPTS:** immoral act, immoral agreement, immoral conduct, immoral consideration, immoral contract, obscenity
**FOREIGN PHRASES:** *Ex turpi causa non oritur actio.* No cause of action arises out of an immoral or illegal consideration.

**IMMOVABLE, noun**
affixed property, fixed assets, fixed chattel, fixed property, fixture, *immobilis, immotus,* land, property permanently affixed to the realty, real estate, real property, *stabilis*

**IMMUNE, adjective**
absolved, armored, clear, excused, exempt, free, granted amnesty, *immunis,* immunized, impregnable, inaccessible, inexpugnable, inviolable, invulnerable, not accountable, not answerable, not liable, not responsible, not subject, possessed of immunity, privileged, protected, released, safe, screened, sheltered, shielded, spared, unaccountable, unaffected by, unanswerable, unassailable, unattackable, under shelter, unencumbered, unexposed, unliable, unpunishable, unrestrained, unrestricted, unsubject, unsusceptible, unthreatened, untouchable, untouched, without risk
**ASSOCIATED CONCEPTS:** immune from prosecution

**IMMUNITY, noun**
absolution, acquittal, charter, commutation, discharge, exception, exculpation, exemption, exemption from punishment, franchise, freedom, freedom from exemption, freedom from obligation, freedom from prosecution, *immunitas,* liberation, liberty, license, nonliability, privilege, protection, release, release from charge, release from duty, relief, reprieve, respite, safety from prosecution, special privilege, *vacatio*
**ASSOCIATED CONCEPTS:** absolute immunity, complete immunity, derivative immunity, full transactional immunity, full waiver, governmental immunity, immunity from arrest, immunity from prosecution, immunity from service of process, limited immunity, limited waiver, partial immunity, privileges and immunities, qualified immunity, state immunity, transactional immunity, use and derivative immunity, use immunity, waiver of immunity

**IMMURE, verb**
cast into prison, commit to an institution, commit to prison, confine, constrain, detain, encage, enclose, enclose within walls, entomb, gate, hold, hold captive, hold in captivity, hold in check, hold within bounds, impound, imprison, incarcerate, *includere,* isolate, keep in, keep in captivity, keep in check, keep in custody, keep in detention, keep prisoner, keep under arrest, keep within bounds, lay under restraint, lead into captivity, lock in, lock up, make captive, put under arrest, quarantine, restrain, seal up, seclude, send to prison, shelter, shut up, take captive, take into custody, throw into prison, wall up

**IMMUTABLE, adjective**
adamant, ageless, confirmed, *constans,* constant, continual, continuous, durable, eternal, firm, fixed, immovable, *immutabilis,* implacable, incontrovertible, indestructible, inexorable, inflexible, intractable, invariable, irremovable, irrevocable, never changing, never varying, nonelastic, not to be changed, not to be moved, obstinate, perennial, permanent, perpetual, persistent, relentless, riveted, rooted, settled, *stabilis,* static, steadfast, steady, stiff, unaging, unalterable, unbending, unchangeable, unchanging, uncompromising, undeviating, undying, unending, unmalleable, unpliable, unrelenting, untractable, unyielding, vested
**ASSOCIATED CONCEPTS:** immutable principle of law

FEDREAL RULE z509 FROM THE AMERICAN JURISPRUDENCE
FACTORS AND MERCHANT COMMISSION
FEDERAL RULE BOOK 1-664

x509
GENERALLY
 AN APPLICATION FOR LEAVE TO PRECEED IN FORMA PAUPERIS MUST BE AC
COMPANIED BY AN AFFIDVVIT SHOWING (1) THE APPLICANTS INABILITY TO
PAY FEES AND COST, OR GIVE SECURITY THEREFORE: (20 A STATEMENT OF
THE NATURE OF THE ACTION , DEFENSE OR APPEAL: AND (30 A STATEMENT
OF THE APPLLICANTS BELIEF THAT HE IS ENTITLED TO REDRESS. WHERE N
O AFFIDAVIT IS MADE LEAVE TO PRECEED IN FORME PAUPERIS WILL BE DE
NIED: ONE WHO MAKE AN AFFIDAVIT EXPOSES HIMSELF TO THE PAINS OF P
ERJURY IN THE CASE OF BAD FAITH: THEREFORE IT IS ESSENTIAL THAT T
HE AFFIDAVIT STATE THE FACT AS TO THE APPLICANTS POVERTY WITH SOM
E PARTICULARITY DEFINITENETS, AND CERTAINTY.

21

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDREW JODIE WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05cv1080-F |
| | ) | |
| NIX HOLTSFORD GILLILAND | ) | |
| HIGGINS & HITSON, PC, | ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

After an independent review of the file, it is the ORDER, JUDGMENT and DECREE
of the Court:

(1)    That the objection filed by Plaintiff on November 29, 2005 (Doc. #5) is

OVERRULED;

(2)    That the Recommendation of the United States Magistrate Judge entered on

November 8, 2005 (Doc. #4) is ADOPTED;

(3)    That this case is therefore DISMISSED in accordance with the Magistrate

Judge's Recommendation.

DONE this 5th day of December, 2005.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

33.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDREW JODDIE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05cv1080-MEF-DRB |
| | ) | |
| NIX HOLTSFORD GILLILAND | ) | |
| HIGGINS & HITSON, PC, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This action is presently before the court on plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 2), filed November 9, 2005. Upon consideration of the motion, it is hereby

**ORDERED** that the motion is GRANTED.

However, upon review of the complaint filed in this case (Doc. 1), the court concludes that dismissal of the complaint prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B).[1] Plaintiff appears to be seeking review of an automobile accident case for which the Alabama Supreme Court denied certiorari on the grounds that his appeal was untimely filed. He has attached to his complaint documentation from state court proceedings involving this case, including a copy of the Alabama Court of Civil Appeals order affirming the decision of the Montgomery Circuit Court and a certificate of judgment from the

---

[1] The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal– (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Alabama Supreme Court denying plaintiff's petition for writ of certiorari. In the present case, plaintiff seeks "to appeal a decision from the Alabama State Supreme Cou[r]t dated September 3, 2004." (*See* Doc. 1-2, Attachment to Complaint.)

Under the *Rooker-Feldman* doctrine, this court lacks jurisdiction to consider claims that are "inextricably intertwined" with a state court judgment. Dale v. Moore, 121 F.3d 624 (11th Cir. 1997). "The essence of the *Rooker-Feldman* doctrine is that 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" Narey v. Dean, 32 F.3d 1521, 1524 (11th Cir. 1994) (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). This court lacks jurisdiction to review the certificate of judgment entered by the Alabama Supreme Court in this case, as well as the decisions rendered by the lower Alabama courts.

Accordingly, it is the **RECOMMENDATION of the Magistrate Judge that this action be DISMISSED prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B) for lack of jurisdiction.**

It is further **ORDERED** that Plaintiff file any objections to this Recommendation not later than December 5, 2005. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

2

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 18th day of November, 2005.

/s/ **Delores R. Boyd**
DELORES BOYD
UNITED STATES MAGISTRATE JUDGE